## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| *In re Chevrolet Bolt EV Battery Litigation* | Case No. 2:20-cv-13256-TGB-CI<br><br>Hon. Terrence G. Berg<br>Magistrate Judge Curtis Ivy |

## GENERAL MOTORS LLC'S MOTION TO COMPEL CERTAIN PLAINTIFFS' CLAIMS TO ARBITRATION

Defendant General Motors LLC moves to compel arbitration of all claims brought by sixteen of the plaintiffs—Andrew Barrett, Christine Chung, Linda Connelly, Daniel Corry, Vincent Corry, John DeRosa, William Dornetto, Russell Ives, Michael and Denise Holbrook, Frederic Kass, Keith Khorey, Robert Kuchar, Evi Schulz, Jeanne Sterba, and Tony Verzura—under the Federal Arbitration Act, 9 U.S.C. §§ 1-16. In support, GM relies on the attached memorandum and accompanying exhibits.

Pursuant to Local Rule 7.1(a), counsel for GM conferred with plaintiffs' counsel and explained the nature of and legal bases for this Motion, but did not obtain concurrence in the relief sought.

GM therefore respectfully requests that the Court grant its motion.

Date:  December 17, 2021                    Respectfully submitted,

MAYER BROWN LLP

By:____/s/ John Nadolenco
    John Nadolenco
    MAYER BROWN LLP
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA 90071
    Tel: 213.229.9500
    Fax: 213.625.0248
    jnadolenco@mayerbrown.com

    Archis A. Parasharami
    MAYER BROWN LLP
    1909 K Street, NW
    Washington, DC 20006-1101
    Tel: 202.263.3328
    Fax: 202.263.3300
    aparasharami@mayerbrown.com

    Andrew S. Rosenman (P54869)
    MAYER BROWN LLP
    71 S. Wacker Driver
    Chicago, IL 60606
    Tel: 312.782.0600
    Fax: 312.701.7711
    arosenman@mayerbrown.com

    Attorneys for Defendant
    General Motors LLC

# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

*In re Chevrolet Bolt EV Battery Litigation*

Case No. 2:20-cv-13256-TGB-CI

Hon. Terrence G. Berg
Magistrate Judge Curtis Ivy

## MEMORANDUM OF LAW IN SUPPORT OF GENERAL MOTORS LLC'S MOTION TO COMPEL CERTAIN PLAINTIFFS' CLAIMS TO ARBITRATION

John Nadolenco
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213.229.9500
Fax: 213.625.0248
jnadolenco@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006-1101
Tel: 202.263.3328
Fax: 202.263.3300
aparasharami@mayerbrown.com

Andrew S. Rosenman (P54869)
MAYER BROWN LLP
71 S. Wacker Driver
Chicago, IL 60606
Tel: 312.782.0600
Fax: 312.701.7711
arosenman@mayerbrown.com

*Attorneys for Defendant*
*General Motors LLC*

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED.............................................................. VII

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITY ..................................................................................... VIII

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

A. Plaintiffs Agree To Arbitrate Disputes Relating To Their
Vehicles By Signing Dealer Agreements............................................. 2

B. Plaintiffs Sue GM Notwithstanding Their Arbitration
Agreements........................................................................................... 3

ARGUMENT ....................................................................................................... 5

I. THE FAA REQUIRES ENFORCEMENT OF PLAINTIFFS'
ARBITRATION AGREEMENTS ...................................................... 5

A. Plaintiffs Agreed To Arbitrate ................................................. 6

B. Plaintiffs' Arbitration Agreements Require Individual
Arbitration ................................................................................ 7

C. Plaintiffs' Agreements Delegated Questions Of
Arbitrability To The Arbitrator ................................................ 8

D. If This Court Reaches The Questions Of Arbitrability, It
Should Compel Individual Arbitration of Plaintiffs'
Claims Against GM ................................................................ 12

1. Plaintiffs' Claims Are Within The Scope Of Their
Arbitration Agreements .............................................. 13

2. GM Is Entitled To Enforce Plaintiffs' Arbitration
Agreements. ................................................................ 16

a. GM Is Entitled To Enforce Plaintiff
Barrett's Arbitration Agreement As A
Third-Party Beneficiary ...................................... 16

b. GM Is Entitled To Enforce The Other
Plaintiffs' Arbitration Agreements Under
The Doctrine Of Equitable Estoppel. .................. 17

II. Plaintiffs' Claims Should Be Stayed Pending Arbitration................. 24

i

CONCLUSION ........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnew v. Honda Motor Co.*,
  2009 WL 1813783 (S.D. Ind. May 20, 2009)....................................................24

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) .................................................................8

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)........................................................................1, 6

*Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw Florida, Inc.*,
  158 So. 3d 644 (Fla. Dist. Ct. App. 2014)....................................................19, 21

*Apollo Computer v. Berg*,
  886 F.2d 469 (1st Cir. 1989)................................................................12

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
  495 F. Supp. 3d 541 (E.D. Mich. 2020) .........................................................24

*Arnold v. Arnold Corp.-Printed Communications For Business*,
  920 F.2d 1269 (6th Cir. 1990) ...............................................................17

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)..........................................................................17

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..........................................................................5

*In re Automotive Parts Antitrust Litig.*,
  2017 WL 3579753 (E.D. Mich. April 18, 2017) .........................................17, 19

*Baylor Univ. v. Sonnichsen*,
  221 S.W.3d 632 (Tex. 2007) .................................................................7

*Blanton v. Domino's Pizza Franchising, LLC*,
  962 F.3d 842 (6th Cir. 2020) ..............................................................9, 12

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*,
  866 F.3d 709 (5th Cir. 2017) ................................................................12

*Camarillo v. Balboa Thrift & Loan Ass'n*,
2021 WL 409726 (S.D. Cal. Feb. 4, 2021) ...........................................................6

*CEFCO v. Odom*,
278 So. 3d 347 (Fla. Dist. Ct. App. 2019) ...........................................................7

*David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. Ltd. Liab. Co.*,
463 P.3d 117 (Wash. Ct. App. 2020) ..................................................................20

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ..............................................................................................5

*Decisive Analytics Corp. v. Chikar*,
27 Va. Cir. 337, 2008 WL 6759965 (Va. Cir. 2008) ..........................................20

*Eckert/Wordell Architects, Inc. v. FJM Props. Of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) ............................................................................11

*Edwards v. Costner*,
979 So.2d 757 (Ala. 2007) ....................................................................................6

*Ehresman v. Bultynck & Co., P.C.*,
511 N.W.2d 724 (Mich. Ct. App. 1994) ...............................................................7

*El-Hage v. Comerica Bank*,
2020 WL 7389041 (E.D. Mich. Dec. 16, 2020) .................................................19

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ..........................................................................................5

*Felisilda v. FCA US LLC*,
266 Cal. Rptr. 3d 640 (Ct. App. 2020) .........................................................18, 22

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ...........................................................................................1, 6

*Goldman v. KPMG, LLP*,
92 Cal. Rptr. 3d 534 (Ct. App. 2009) .................................................................18

*Hergenreder v. Bickford Senior Living Grp., LLC*,
656 F.3d 411 (6th Cir. 2011) ................................................................................6

*Hess v Positive Energy Fleet, LLC*,
   2021 WL 5492827 (E.D. Mich. Nov. 18, 2021).................................................13

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan,*
   *Inc.*,
   350 F.3d 568 (6th Cir. 2003) ..............................................................13

*Humble Oil & Ref. Co. v. Cox*,
   148 S.E.2d 756 (Va. 1966) ....................................................................7

*Javitch v. First Union Sec., Inc.*,
   315 F.3d 619 (6th Cir. 2003) ..............................................................15

*Katz v. BMW of N. Am., LLC*,
   2019 WL 4451014 (N.D. Cal. Sept. 17, 2019) (N.D. Cal. Sep. 17,
   2019) .........................................................................................24

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
   137 S. Ct. 1421 (2017)..........................................................................7

*Koechli v. BIP Int'l, Inc.*,
   870 So.2d 940 (Fla. 1st DCA 2004) ....................................................19

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)....................................................................8, 15

*Lanning v. BMW of N. Am., LLC*,
   2019 WL 5748518 (S.D. Cal. Nov. 5, 2019).......................................24

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*
   734 F.3d 594 (6th Cir. 2013) ............................................................7, 8

*Metalclad Corp. v. Ventana Envtl. Organazational P'ship*,
   1 Cal. Rptr. 3d 328 (Ct. App. 2003) ..................................................18

*Monster Energy Co. v. Schechter*,
   444 P.3d 97 (2019)..............................................................................7

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)..............................................................................15

*Mother Waddles Perpetual Mission, Inc. v. Frazier*,
   904 F. Supp. 603 (E.D. Mich. 1995) ...................................................6

*In re Palm Harbor Homes, Inc.*,
    195 S.W.3d 672 (Tex. 2006) ...............................................................16

*Pio v. John B. Gilliland Const.*,
    560 P.2d 247 (Or. 1976) .......................................................................7

*Reykhel v. BMW of N. Am. LLC*,
    2019 WL 10056984 (N.D. Cal. Aug. 12, 2019) ...................................23

*Rodriguez v. Texas Leaguer Brewing Co. L.L.C.*,
    586 S.W.3d 423 (Tex. App. 2019), *review denied* (Dec. 6, 2019).....................14

*Roman v. Atl. Coast Constr. & Dev., Inc.*,
    44 So.3d 222 (Fla. 4th DCA 2010).....................................................19

*In re StockX Customer Data Security Breach Litig.*,
    --- F.4th ----, 2021 WL 5710939 (6th Cir. Dec. 2, 2021)...................11

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021) ...........................................9, 10, 11, 12

*T-Mobile USA, Inc. v. Montijo*,
    2012 WL 6194204 (W.D. Wash. Dec. 11, 2012) .............................20

*Toca v Tutco, LLC*,
    430 F. Supp. 3d 1313 (S.D. Fla. 2020)............................................21

*Watson Wyatt & Co. v. SBC Holdings, Inc.*,
    513 F.3d 646 (6th Cir. 2008) ...........................................................13

**Statutes**

9 U.S.C. §§ 1-16.....................................................................1, 5, 17, 24

## STATEMENT OF ISSUES PRESENTED

1.      Whether this Court should refer the disputes between sixteen plaintiffs (Andrew Barrett, Christine Chung, Linda Connelly, Daniel Corry, Vincent Corry, John DeRosa, William Dornetto, Russell Ives, Michael and Denise Holbrook, Frederic Kass, Keith Khorey, Robert Kuchar, Evi Schulz, Jeanne Sterba, and Tony Verzura) and GM to arbitration under those plaintiffs' agreements to arbitrate— including any dispute as to arbitrability, such as whether their claims are within the scope of their respective arbitration agreements and whether GM may enforce the agreements as a non-signatory?

Answer: Yes.

2.      Alternatively, if the Court reaches questions of arbitrability, whether the Court should find the above plaintiffs' claims subject to arbitration, and allow GM to enforce the arbitration agreements as a non-signatory, whether as a third-party beneficiary or under the doctrine of equitable estoppel?

Answer: Yes.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority for the relief that GM seeks includes:

1. *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594 (6th Cir. 2013)

2. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)

3. *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021)

4. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)

5. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 674 (Tex. 2006)

6. *Felisilda v. FCA US LLC*, 266 Cal. Rptr. 3d 640 (Ct. App. 2020)

# INTRODUCTION

Sixteen of the plaintiffs[1] purchased, leased or financed a Chevrolet Bolt Electric Vehicle ("Bolt EV") under agreements that require arbitration of the claims they now seek to litigate. In its contemporaneously filed motion to dismiss, GM explains the myriad flaws in plaintiffs' claims on the merits. But as a threshold matter, the claims of the plaintiffs who agreed to arbitrate do not belong in this Court, because the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires plaintiffs to honor their arbitration agreements.

As Justice Breyer has explained in an opinion for the Supreme Court, "arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995). That is the case here with respect to the 16 plaintiffs who entered into arbitration agreements. They are required to arbitrate for two reasons.

*First*, these plaintiffs' agreements contain arbitration provisions that expressly delegate the determination of arbitrability questions (including scope) to the arbitrator. Binding Sixth Circuit precedent requires the enforcement of this type of

---

[1] Andrew Barrett, Christine Chung, Linda Connelly, Daniel Corry, Vincent Corry, John DeRosa, William Dornetto, Russell Ives, Michael and Denise Holbrook, Frederic Kass, Keith Khorey, Robert Kuchar, Evi Schulz, Jeanne Sterba, and Tony Verzura.

delegation; this Court should therefore compel arbitration of plaintiffs' claims and leave questions of arbitrability for the arbitrator in each plaintiff's individual arbitration.

*Second*, if the Court reaches questions of arbitrability, the arbitration provisions in these plaintiffs' agreements both are broad enough to cover plaintiffs' claims and are enforceable by GM. Specifically, GM is a third-party beneficiary of the arbitration agreement signed by Texas plaintiff Barrett, and it is entitled to enforce the remaining arbitration agreements under the doctrine of equitable estoppel.

## BACKGROUND

### A.    Plaintiffs Agree To Arbitrate Disputes Relating To Their Vehicles By Signing Dealer Agreements

Plaintiffs purchased or leased their Bolt EVs from various local dealers rather than from GM directly. As part of their purchase or lease transaction, at least 16 plaintiffs signed agreements containing a broad arbitration provision.

Plaintiff Barrett entered an arbitration agreement that provides:

Any controversy or claim arising out of or relating to this Motor Vehicle Retail Installment Sales Contract or the breach thereof shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA). . . .

The parties further agree that this Arbitration Provision inures to the benefit of, and is intended for the benefit of, the parties hereto as well as the manufacturer of the vehicle which is the subject of the Motor Vehicle Retail Installment Sales Contract as fully as if the manufacturer

was a signatory to the Motor Vehicle Retail Installment Sales Contract. . . .

The parties agree that any contests to the validity or enforceability of this Arbitration Provision, or any other part of the Motor Vehicle Retail Installment Sales contract or related documentation, will be determined by arbitration in accordance with the terms of this Arbitration Provision.

Declaration of Janine LaMore, Ex. 1.

Plaintiffs Chung, Connelly, D. Corry, V. Corry, DeRosa, Dornetto and Ives, Kass, Khorey, Kuchar, Holbrooks, Schulz, Sterba, and Verzura all signed Retail Installment Sale Contracts containing arbitration provisions that provide in relevant part as follows:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase [or lease] or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .

*Id.* Exs. 2-16.

Plaintiffs all signed and agreed to be bound by these arbitration provisions as part of the purchase or lease of their Bolt vehicles. *See id.* Exs. 1-16.

**B.      Plaintiffs Sue GM Notwithstanding Their Arbitration Agreements**

Despite their agreements to arbitrate, plaintiffs filed the present putative class action asserting claims against GM for breach of express and implied warranty,

3

fraud, unjust enrichment, and violation of various state consumer protection statutes.

As explained more fully in GM's concurrently filed motion to dismiss, GM announced a voluntary recall of 2017-2022 model year Chevrolet Bolt vehicles upon learning that a limited number of the vehicles' batteries were at risk of catching fire. Amended Consolidated Class Action Complaint, ECF No. 27 ("FACC"), Ex. BF (PageID.2089); FACC Ex. I (PageID.1549–1552). GM's investigation revealed that certain batteries manufactured by LG Chem could possess two raremanufacturing defects—a torn anode tab and a folded separator—that, if present simultaneously in the same battery cell, can cause the battery to catch fire when the battery is charged to full, or nearly full, capacity. This defect has manifested very rarely—in only 16 vehicles.  Of the 16 plaintiffs who are the subject of this motion, only one (Chung) has allegedly experienced manifestation of the defect.

Plaintiffs complain that, prior to the purchase or lease of their respective vehicles, "neither [GM] nor any of their agents, dealers or other representatives informed [them] of the Defective Battery." *Id.* ¶¶ 45, 77, 83, 91, 99, 113, 121, 148, 156, 165, 182, 206, 222, 260. Certain plaintiffs, such as plaintiff Chung, allege that sales representatives at local dealerships misrepresented that their vehicles' batteries can and should be fully charged. *Id.* ¶ 77 (PageID.1185). Plaintiffs allege that, had GM *or its dealers* informed them of the battery defect, they either would not have purchased or leased their vehicles, or would have paid less for them. *See, e.g.*, *id.*

¶¶ 49, 79, 87, 95, 109, 117, 129, 152, 161, 169, 186, 218, 227, 263, 423, 431, 529, 549, 566, 624, 942, 1111, 1117, 1136, 1182, 1264, 1271.

ARGUMENT

## I. THE FAA REQUIRES ENFORCEMENT OF PLAINTIFFS' ARBITRATION AGREEMENTS

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quotation marks and citation omitted). The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 4; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (reiterating the FAA's "emphatic directions" that arbitration agreements be enforced according to their terms).

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme

Court has explained that the FAA "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce*, 513 U.S. at 277.

Plaintiffs' signed dealer agreements satisfy both criteria. The agreements include a written arbitration provision. LaMore Decl. Exs. 1-16. And contracts for the sale, lease, or financing of vehicles easily satisfy the commerce requirement. *See, e.g.*, *Mother Waddles Perpetual Mission, Inc. v. Frazier*, 904 F. Supp. 603, 611 (E.D. Mich. 1995) (interstate commerce affected where "cars sold by Defendants likely compete with other cars sold in interstate commerce" and "their business extends beyond the borders of Michigan); *Camarillo v. Balboa Thrift & Loan Ass'n,* 2021 WL 409726, at *10 (S.D. Cal. Feb. 4, 2021) ("retail sales contract for the purchase and financing of an automobile affects interstate commerce"); *Edwards v. Costner*, 979 So.2d 757, 761 (Ala. 2007) (holding it is "unquestionable" that the sale of new or used automobiles involves interstate commerce such that the FAA applies). And each arbitration agreement expressly specifies that the agreement "involves interstate commerce" (Barrett) or is governed by the FAA (remaining plaintiffs). LaMore Decl., Exs. 1-16.

## A.    Plaintiffs Agreed To Arbitrate

To determine whether a valid arbitration agreement exists, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hergenreder v. Bickford Senior*

*Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). Those principles must be generally applicable, however; the FAA forbids States from imposing heightened standards on the formation of arbitration agreements that do not apply to other types of contracts. *See Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1428-29 (2017).

Here, plaintiffs cannot credibly dispute the existence of their arbitration agreements because they signed their dealer agreements. Unsurprisingly, every state at issue recognizes the bedrock principle that signing an agreement manifests assent to its terms. *Monster Energy Co. v. Schechter*, 444 P.3d 97, 102 (2019); *CEFCO v. Odom*, 278 So. 3d 347, 351 (Fla. Dist. Ct. App. 2019); *Ehresman v. Bultynck & Co., P.C.*, 511 N.W.2d 724, 726 (Mich. Ct. App. 1994); *Pio v. John B. Gilliland Const.*, 560 P.2d 247, 250 (Or. 1976); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *Humble Oil & Ref. Co. v. Cox*, 148 S.E.2d 756, 760 (Va. 1966). Under that generally applicable principle, plaintiffs all validly accepted the arbitration provision found in their respective agreements when they signed to accept the terms of those agreements.[2]

### B.   Plaintiffs' Arbitration Agreements Require Individual Arbitration

Under established law, this Court should hold that the applicable arbitration

---

[2] Jeanne Sterba's husband, Mark Sterba, signed the agreement pertaining to the vehicle that she allegedly owns.

agreements require arbitration on an individual basis. Under the Sixth Circuit's decision in *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, "the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" 734 F.3d 594, 598-99 (6th Cir. 2013) (emphasis added). Where, as here, "the arbitration clause is 'silent as to whether an arbitrator or court should determine the question of classwide arbitrability, . . . the determination lies with [the] court." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) (quoting *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398 (6th Cir. 2014)). This is true even if the clause "incorporat[es] [] the AAA's rules." *Id.*

The Court's answer on this question is similarly controlled by precedent. As the U.S. Supreme Court has held, "a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Thus, under *Lamps Plus*, the agreements' arbitration clauses here require individual arbitration because they do not expressly authorize class arbitration. LaMore Decl. Exs. 1-16.

### C. Plaintiffs' Agreements Delegated Questions Of Arbitrability To The Arbitrator

Each arbitration provision in plaintiffs' agreements delegates issues of arbitrability to the arbitrator. Specifically, plaintiffs agreed to arbitrate:

- "[A]ny contests to the validity or enforceability of this Arbitration Provision" (Barrett)[3]; or

- Disputes regarding "the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute" (Chung, Connelly, D. Corry, V. Corry, DeRosa, Dornetto and Ives, the Holbrooks, Kass, Khorey, Kuchar, Schulz, Sterba, Verzura).

LaMore Decl. Exs. 1-16.

Under the Sixth Circuit's recent holding in *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021), these delegation provisions require that the arbitrator—not the Court—decide whether plaintiffs' claims fall within the scope of arbitration and whether GM can enforce the arbitration agreement as a non-signatory.[4] In *Swiger*, the plaintiff executed a loan contract with online lender Plain Green, which contained an arbitration clause stating that "any dispute . . . related to this agreement

---

[3] Barrett's arbitration agreement also calls for application of the Commercial Arbitration Rules of the American Arbitration Association, which in turn provide that the Consumer Arbitration Rules should apply to this consumer dispute. LaMore Decl. Ex. 1. Because the AAA Rules call for an arbitrator to decide arbitrability, the Sixth Circuit has held that incorporating those rules into an arbitration agreement suffices to delegate the types of arbitrability questions raised by this motion. *See Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 846-52 (6th Cir. 2020); AAA Consumer Arbitration Rule 14.

[4] As explained above, however, whether each plaintiff's arbitration agreement requires individual arbitration is a gateway matter reserved for judicial determination.

will be resolved through binding arbitration." 989 F.3d at 503. The agreement defined "dispute" as "any claim or controversy of any kind between you and Plain Green or otherwise involving this Agreement or the Loan," including "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate." *Id.* After the plaintiff sued individual defendant Kenneth Rees for this role in extending the loan with a predatory interest rate, Rees moved to compel arbitration under the arbitration provision contained in the contract between the plaintiff and Plain Green. The district court denied the motion, but the Sixth Circuit reversed, holding that the arbitration clause delegated issues of arbitrability to the arbitrator—*including whether a non-signatory could enforce the arbitration agreement. Id.* at 503.

The Sixth Circuit explained that the FAA allows "delegation clauses" in arbitration agreements, and that those clauses "allow[] parties to agree that an arbitrator, rather than a court, will determine gateway questions of arbitrability," provided there is "clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability." *Id.* at 505 (quotation marks and citations omitted). The Sixth Circuit then highlighted the enforceability of delegation clauses under U.S. Supreme Court precedent, regardless of whether the court has doubts about the arbitrability of the dispute: "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly

groundless.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).

Applying that standard, the Sixth Circuit concluded that the plaintiff's agreement to arbitrate "any issue concerning the validity, enforceability, or scope of this . . . Agreement to Arbitrate" constituted a delegation clause that "clearly and unmistakably" showed that the parties agreed to arbitrate arbitrability. *Id.* at 506. The court then held that a non-signatory's ability to invoke the arbitration agreement is "an issue of enforceability that 'must be considered by an arbitrator in the presence of a delegation provision." *Id.* at 507 (citing *Blanton*, 962 F.3d at 848, which held that the question whether non-signatory Domino's Pizza could invoke an arbitration clause between a franchisee and the franchisee's employee was a question of arbitrability for the arbitrator); *see also In re StockX Customer Data Security Breach Litig.*, --- F.4th ----, 2021 WL 5710939, at *8-9 (6th Cir. Dec. 2, 2021) (enforcing delegation clause under the same principles and requiring the arbitrator to decide plaintiffs' challenges to the enforceability or validity of their arbitration agreements).

Decisions from other circuits have likewise held that a non-signatory's ability to enforce an arbitration agreement is a question of arbitrability. *See Eckert/Wordell Architects, Inc. v. FJM Props. Of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration

between a signatory and a nonsignatory is a threshold question of arbitrability."); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) ("the language of the agreement clearly and unmistakably delegates arbitrability, even with regard to" plaintiff's dispute with non-signatories); *Apollo Computer v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) (finding that whether individual executives of the defendant company could enforce the arbitration agreement between plaintiff and the defendant company should be decided by the arbitrator in light of the delegation clause).

Here, the delegation clauses in the agreements that plaintiffs signed are at least as explicit as the clause that the *Swiger* court found "clearly and unmistakably" showed an intent to arbitrate issues of arbitrability. *See Swiger*, 989 F.3d at 506 (issues concerning "validity, enforceability, or scope" of arbitration agreement must be arbitrated). Thus, under *Swiger* and *Blanton*, whether the scope of the arbitration provisions in these plaintiffs' dealer agreements includes their claims against GM, and whether GM can enforce the arbitration provision, are both questions that are reserved for the arbitrator.

### D.    If This Court Reaches The Questions Of Arbitrability, It Should Compel Individual Arbitration of Plaintiffs' Claims Against GM

If this Court considers the arbitrability of plaintiffs' claims—despite the delegation language in plaintiffs' arbitration agreements and binding Sixth Circuit precedent requiring enforcement of that delegation—it should still compel

arbitration here. Each of the plaintiffs at issue entered into a valid arbitration agreement that (i) covers his or her claims in this litigation; and (ii) GM may enforce as a third-party beneficiary or under the doctrine of equitable estoppel.

### 1.    Plaintiffs' Claims Are Within The Scope Of Their Arbitration Agreements

Each of plaintiffs' claims falls within the scope of the arbitration provision in plaintiffs' respective agreements. "[T]o ascertain whether the subject matter of a dispute is of the type that parties intended to submit to arbitration," the Court begins with "the plain language of the arbitration clause." *Hess v Positive Energy Fleet, LLC*, 2021 WL 5492827, at *4 (E.D. Mich. Nov. 18, 2021). The Sixth Circuit has said that "broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008). Where an arbitration provision is written broadly, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003).

Here, the plain language of the arbitration provisions is broad and squarely encompasses plaintiffs' claims. Plaintiff Barrett's arbitration agreement provides for arbitration of "[a]ny controversy or claim arising out of or relating to this Motor Vehicle Retail Installment Sales Contract or the breach thereof." LaMore Decl. Ex.

1. Barrett's claims, which allege that he would not have entered into the sales contract or would have negotiated a lower price (FACC ¶¶ 49, 1111, 1136, 1151, 1163, 1167), fall within the scope of this broad provision. Indeed, the Texas Court of Appeals has held that an arbitration clause embracing claims "arising out of or relating to [an] agreement" is "easily broad enough to encompass" claims alleging that the defendant's misrepresentation and the omission of material facts induced a plaintiff to enter an agreement. *Rodriguez v. Texas Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 433 (Tex. App. 2019), *review denied* (Dec. 6, 2019).

The other plaintiffs' agreements extend to:

- "Any claim or dispute between you and us or our employees, agents, successors or assigns, which arises out of or relates to your . . . purchase [or lease] or condition of this vehicle, this contract *or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract*" (Chung, Connelly, D. Corry, DeRosa, Dornetto and Ives, Kass, Khorey, Kuchar, the Holbrooks, Sterba, Verzura); and

- Claims "arising from Purchaser/Dealership Dealings," including claims arising from "purchasing or leasing [the] vehicle," "[c]laims relating to any representations, promises, undertakings, warranties, covenants or service," and "[c]laims arising out of . . . any resulting transaction, service, or relationship, including that with the Dealership, *or any relationship with third*

14

*parties who do not sign this Agreement* that arises out of the Purchaser/Dealership Dealings" (Schulz);

LaMore Decl. Exs. 1-16.

These plaintiffs' claims also fall squarely within the scope of their arbitration agreements. Plaintiffs' claims against GM plainly arise out of the "purchase" or "lease" of their vehicles. And their agreements expressly cover claims arising out of their purported "relationship with third parties who do not sign this contract," including non-signatory GM.

Moreover, to the extent there is any doubt that plaintiffs' claims here are within the scope of their arbitration agreements (and there should be none, given the agreements' expansive language), those doubts must be "resolved in favor of arbitration." *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). As the Supreme Court recently reiterated, the FAA dictates, as a matter of substantive federal law, that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc.*, 139 S. Ct. at 1418.

2. **GM Is Entitled To Enforce Plaintiffs' Arbitration Agreements.**

   a. **GM Is Entitled To Enforce Plaintiff Barrett's Arbitration Agreement As A Third-Party Beneficiary**

The arbitration provision in plaintiff Barrett's dealer agreement makes it clear that third-party companies like GM can enforce the arbitration provisions that he accepted before purchasing his Bolt vehicle. It does not matter that GM is not a signatory to the plaintiffs' dealer agreements. In signing the purchase agreement, Barrett assented to GM's right to enforce the arbitration provisions as third-party beneficiaries. This assent was explicit, as the agreement states: "The parties further agree that this Arbitration Provision inures to the benefit of, and is intended for the benefit of, the parties hereto as well as the *manufacturer of the vehicle* which is the subject of the Motor Vehicle Retail Installment Sales Contract as fully as if the manufacturer was a signatory to the Motor Vehicle Retail Installment Sales Contract." Ex. A (emphasis added). The Texas Supreme Court has held that where, as here, a written arbitration agreement between purchasers and the retailer "specified that it inured to the benefit of the manufacturer," the purchasers must arbitrate their claims breach of contract and warranty claims against the manufacturer. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 674, 677 (Tex. 2006). Under this clear and authoritative statement of Texas law, Barrett must arbitrate his claims against GM.

      **b.**    **GM Is Entitled To Enforce The Other Plaintiffs' Arbitration Agreements Under The Doctrine Of Equitable Estoppel.**

GM may enforce the arbitration provision in the remaining plaintiffs' dealer agreements as a non-signatory under principles of equitable estoppel. Whether GM "may compel a signatory to arbitrate pursuant to equitable estoppel is governed by state law." *In re Automotive Parts Antitrust Litig.*, 2017 WL 3579753, at *3 (E.D. Mich. April 18, 2017); *accord Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("It suffices to say that no federal law bars the State from allowing petitioners to enforce the arbitration agreement against respondents and that [FAA] § 3 would require a stay in this case if it did.").

Courts around the country have applied equitable estoppel to require signatory plaintiffs to arbitrate disputes against non-signatory automobile manufacturers where a plaintiff entered into an agreement with a related third-party, such as a dealer, lessor, or financing company. This rule makes sense. As the Sixth Circuit has observed, if a plaintiff could "avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint," then the "effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.-Printed Communications For Business*, 920 F.2d 1269, 1281 (6th Cir. 1990). Indeed, California, Florida, Michigan, Virginia and Washington all permit a

non-signatory to an arbitration agreement to compel a signatory plaintiff to arbitrate his or her claims in circumstances present here.

**California (Chung, Connelly, D. Corry, V. Corry, Kass, Khorey, Kuchar, Sterba):** In California, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Felisilda v. FCA US LLC*, 266 Cal. Rptr. 3d 640, 647 (Ct. App. 2020) (internal quotation marks and citation omitted). "By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." *Id.* (quoting *Boucher v. Alliance Title Co., Inc.*, 25 Cal. Rptr. 3d 440, 446 (Ct. App. 2005)). In addition, "the equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Envtl. Organazational P'ship*, 1 Cal. Rptr. 3d 328, 334 (Ct. App. 2003) (quotation marks and citation omitted). Equitable estoppel applies where plaintiffs makes "allegations of interdependent misconduct [that are] founded in or intimately connected with the obligations of the underlying agreement." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 541 (Ct. App. 2009).

18

**Florida (*Schulz, Verzura*)**: Florida courts similarly permit a non-signatory to an arbitration agreement to compel a signatory to arbitrate his claims when (1) "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory" or (2) "there are allegations of concerted action by both a nonsignatory and one or more of the signatories to the contract." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw Florida, Inc.*, 158 So. 3d 644, 646 (Fla. Dist. Ct. App. 2014); *Koechli v. BIP Int'l, Inc.*, 870 So.2d 940, 944 (Fla. 1st DCA 2004); *Roman v. Atl. Coast Constr. & Dev., Inc.*, 44 So.3d 222, 224 (Fla. 4th DCA 2010).

**Michigan (*the Holbrooks*)**: Under Michigan law, equitable estoppel permits a nonsignatory defendant to compel a signatory's claims to arbitration where the defendant "has a close relationship with one of the signatories and . . . the claims raised by the plaintiff are related to the agreement containing an arbitration clause." *In re Auto. Parts Antitrust Litig.*, 2017 WL 3579753, at *3 (E.D. Mich. Apr. 18, 2017); *El-Hage v. Comerica Bank*, 2020 WL 7389041, at *10 (E.D. Mich. Dec. 16, 2020) (same).

**Virginia (*Dornetto and Ives*):** Virginia courts have allowed nonsignatories to compel arbitration under principles of equitable estoppel in two circumstances. First, "[e]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in

asserting its claims against the nonsignatory," meaning the claims "make[] reference to or presume[] the existence of the written agreement." *Decisive Analytics Corp. v. Chikar*, 27 Va. Cir. 337, 2008 WL 6759965, at *7-8 (Va. Cir. 2008). Second, "equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.*

**Washington (DeRosa)**: In Washington, a nonsignatory defendant can compel arbitration of a signatory plaintiff's claim when (1) the subject matter of the dispute is intertwined with the contract providing for arbitration and (2) there is a close relationship between a signatory party and the nonsignatory party seeking to compel arbitration. *T-Mobile USA, Inc. v. Montijo*, 2012 WL 6194204, at *2 (W.D. Wash. Dec. 11, 2012); *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. Ltd. Liab. Co.*, 463 P.3d 117, 124 (Wash. Ct. App. 2020).

Under each of these state's laws, the plaintiffs' allegations satisfy the requirements for estoppel. To begin with, plaintiffs allege concerted misconduct between GM and the signatory dealers. Plaintiffs' theory of this case is that GM— through authorized dealerships—sold plaintiffs their vehicles, failed to disclose any alleged transmission defect, failed to repair the vehicles under the express warranty, and as a result, plaintiffs overpaid for their vehicles. *See generally* ECF No. 27; *see*

*also* page 4-5, *supra* (noting that each plaintiff alleges that GM authorized dealers failed to disclose the alleged defect). Those allegations demonstrate that the subject matter of the lawsuit is intertwined with the contract providing for arbitration, which covers any claim arising out of or relating to plaintiffs' vehicle purchase or lease "or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract." LaMore Decl. Exs. 2-16.

In addition, plaintiffs' claims rely on their purchase, lease, or finance agreements. Here plaintiffs have alleged that GM breached the express New Vehicle warranty, the implied warranty of merchantability, and state law consumer protection statutes. Central to these claims is the assertion that the purchase or lease transaction was improper—because GM and the dealers allegedly withheld information prior to plaintiffs purchasing or leasing their vehicles. Absent an agreement to purchase or lease the vehicles, plaintiffs would not have any injury in contract, tort, or statute. *See Allscripts Healthcare Sols., Inc v Pain Clinic of Nw Florida, Inc*, 158 So 3d 644, 647 (Fla. Dist. Ct. App. 2014).[5] Entering into the purchase or lease agreement with their local dealership was the action that put plaintiffs' claims in motion.  Indeed, plaintiffs all allege that had they known about

---

[5] Under Florida law, for example, even plaintiffs' claims for implied warranty of merchantability must be tied to a specific contract. *See*, *e.g.*, *Toca v Tutco, LLC*, 430 F. Supp. 3d 1313, 1325 (S.D. Fla. 2020) ("Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty of merchantability.").

the battery defect, they would not have purchased or leased their Bolt vehicles or would have paid less for them. The bargain that plaintiffs claim they did not receive, stems directly from, and is codified in, their purchase and lease agreements.

Finally, the agreements of several of the plaintiffs (Chung, Connelly, D. Corry, the Holbrooks, and Kass) expressly provide that the purchase or lease of the vehicle includes the warranty provided by the manufacturer, GM. *See* LaMore Decl. Exs. 2, 3, 4, 7, 11. Those plaintiffs cannot selectively rely on their purchase or lease agreements to assert claims based on GM's warranty while simultaneously repudiating the arbitration provision contained in the same contract.

For the above reasons, courts around the country have applied equitable estoppel to compel signatory plaintiffs to arbitrate disputes against non-signatory automobile manufacturers where a plaintiff entered into an agreement with a related third-party, such as a dealer, lessor, or financing company. For example, in *Felisilda*, the plaintiff purchased a vehicle under a sales contract with a Dodge dealer. When the plaintiff brought a breach of warranty claim under California's Song-Beverly Consumer Warranty Act against the manufacturer (FCA US LLC), FCA moved to compel arbitration under the sales contract, which contained an arbitration clause with a virtually identical scope to the arbitration agreements at issue here. *See Felisilda*, 266 Cal. Rptr. at 642. The trial court granted the motion and the California Court of Appeal affirmed, holding that FCA could enforce the arbitration clause

based on equitable estoppel. The appellate court reasoned that "[t]he Felisildas' claim against FCA directly relates to the condition of the vehicle that they allege to have violated warranties they received as a consequence of the sales contract." *Id.* at 648. The court further explained that "[b]ecause the Felisildas expressly agreed to arbitrate claims arising out of the condition of the vehicle—even against third party nonsignatories to the sales contract—they are estopped from refusing to arbitrate their claim against FCA." *Id.*

Similarly, in *Reykhel v. BMW of N. Am. LLC*, 2019 WL 10056984 (N.D. Cal. Aug. 12, 2019), the court held that the manufacturer's duty to comply with its warranty obligations arose only when the buyer signed the contract containing the arbitration agreement—a lease with the BMW dealer—so the buyer could "not evade one contract term in seeking to enforce others." *Id.* at *3. The *Reykhel* court further highlighted that the warranties section of the lease provided that the vehicle was subject to the manufacturer's warranty. Thus, the plaintiffs' claims "rel[ied] on the manufacturer's express warranty and on the implied warranties created by the Lease Agreement and the fact of the vehicle's sale." *Id.* In other words, without the sale effectuated by the lease, there could be no express or implied warranties, so the plaintiffs' warranty-related claims necessarily arose "directly out of the Lease Agreement, and allowing Defendant to enforce the Lease Agreement's arbitration clause [was] justified under principles of equitable estoppel." *Id.*

These courts are not alone. *See, e.g.*, *Lanning v. BMW of N. Am., LLC*, 2019 WL 5748518, at *2-3 (S.D. Cal. Nov. 5, 2019) (compelling arbitration where, "absent the purchase contract with the dealer, there would be no vehicle purchase, and absent that purchase, there would be no manufacturer's warranty"); *Katz v. BMW of N. Am., LLC*, 2019 WL 4451014, at *5 (N.D. Cal. Sept. 17, 2019) (citing provision of lease that provided purchase was subject to warranty); *Agnew v. Honda Motor Co.*, 2009 WL 1813783, at *4 (S.D. Ind. May 20, 2009) (holding that "any relevant duties" arose under contract with the dealer that contained an arbitration clause, so plaintiff's "purchase of the auto was essential to all of the other claims").

The same result is warranted here. GM is entitled to enforce plaintiffs' arbitration agreements under the doctrine of equitable estoppel.

## II. PLAINTIFFS' CLAIMS SHOULD BE STAYED PENDING ARBITRATION.

Section 3 of the FAA provides that "'on application of one of the parties,' a district court 'shall stay the trial of the action' if the action involves 'any issue' that is 'referable to arbitration.'" *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 495 F. Supp. 3d 541, 542 (E.D. Mich. 2020) (quoting 9 U.S.C. § 3). As discussed, not only are the underlying issues referable to arbitration, the question of arbitration is also referable to arbitration. A stay is therefore appropriate.

## CONCLUSION

For all these reasons, GM requests that the Court (i) compel plaintiffs Andrew

24

Barrett, Christine Chung, Linda Connelly, Daniel Corry, John DeRosa, William

Dornetto, Russell Ives, Michael and Denise Holbrook, Frederic Kass, Keith Khorey,

Robert Kuchar, Evi Schulz, Jeanne Sterba, and Tony Verzura to arbitrate their claims

on an individual basis and (ii) stay this action as to those plaintiffs, pending the

outcome of any arbitration.

Respectfully submitted,                    December 17, 2021

MAYER BROWN LLP

/s/ John Nadolenco
John Nadolenco
350 South Grand Avenue, 25th Floor      Andrew S. Rosenman (P54869)
Los Angeles, CA 90071                   71 S. Wacker Driver
Tel: 213.229.9500                       Chicago, IL 60606
jnadolenco@mayerbrown.com               Tel: 312.782.0600
                                        arosenman@mayerbrown.com

Archis A. Parasharami
1909 K Street, NW                       *Counsel for Defendant General Motors*
Washington, DC 20006-1101               *LLC*
Tel: 202.263.3328
aparasharami@mayerbrown.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing paper with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Date: December 17, 2021          Respectfully submitted,

By: /s/ John Nadolenco
John Nadolenco

MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213.229.9500
Fax: 213.625.0248
jnadolenco@mayerbrown.com