## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re Chevrolet Bolt EV Battery Litigation | ) ) ) ) ) | Case No. 2:20-cv-13256-TGB-CI<br><br>Judge Terrence G. Berg<br><br>Magistrate Judge Curtis Ivy |

## <u>MOTION TO DISMISS OF LG MICHIGAN</u>

Defendant LG Energy Solution Michigan, Inc. ("LG Michigan"), by its counsel, hereby moves to dismiss the Amended Consolidated Class Action Complaint ("Amended Complaint") of Plaintiffs Robin Altobelli, et al. (collectively, "Plaintiffs") in its entirety as against LG Michigan and with prejudice pursuant to (1) Fed. R. Civ. P. 12(b)(1) for lack of standing, (2) Fed. R. Civ. P. 9(b) for failure to plead with particularity and (3) Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

The grounds and legal authority for dismissing the claims against LG Michigan in the Amended Complaint are set forth in the attached combined memorandum of law. As addressed in that memorandum, LG Michigan also joins the motion to strike that is being filed by Defendant General Motors LLC pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 23(d). <u>See</u> GM's Motion to Strike (Dkt. 37).

---

[1] LG Michigan brings this motion subject to the motions to compel arbitration being filed by LG Michigan as well as Defendants General Motors LLC and LG Electronics USA, Inc., being filed concurrently herewith. <u>See</u> LG Michigan's Motion to Compel Arbitration and Memorandum in Support.

As required by Local Rule 7.1(a), counsel for LG Michigan sought concurrence from Plaintiffs' counsel with respect to this motion.  Plaintiffs' counsel, however, did not concur in the relief sought.

WHEREFORE, LG Michigan respectfully requests that the Court issue an order granting LG Michigan's motion to dismiss all claims against LG Michigan in their entirety and with prejudice.  LG Michigan further requests whatever other relief the Court deems appropriate.

Date:  December 17, 2021

Respectfully submitted,

*/s/ Mark S. Mester*

Mark S. Mester, One of the Attorneys for Defendant LG Energy Solution Michigan, Inc.

Mark S. Mester (Illinois Bar No. 6196140)
   mark.mester@lw.com
Robert C. Collins III (Illinois Bar No. 6304674)
   robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Jason R. Burt (D.C. Bar No. 980862)
   jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re Chevrolet Bolt EV Battery Litigation | ) ) ) ) ) | Case No. 2:20-cv-13256-TGB-CI |
| | | Judge Terrence G. Berg |
| | | Magistrate Judge Curtis Ivy |

## COMBINED MEMORANDUM IN SUPPORT OF
## <u>MOTION TO DISMISS OF LG MICHIGAN</u>

Date:  December 17, 2021

Mark S. Mester (Illinois Bar No. 6196140)
   mark.mester@lw.com
Robert C. Collins III (Illinois Bar No. 6304674)
   robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Jason R. Burt (D.C. Bar No. 980862)
   jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES ................................................................ iii

TABLE OF AUTHORITIES .............................................................vi

MOST APPROPRIATE AUTHORITIES ......................................... xiii

I.   INTRODUCTION ..................................................................1

II.  FACTUAL BACKGROUND....................................................2

    A.   The Chevrolet Bolt ........................................................2

    B.   LG Michigan ................................................................3

    C.   The Amended Complaint ...............................................5

III. ARGUMENT..........................................................................7

    A.   Plaintiffs Lack Standing Under Article III.........................7

    B.   Plaintiffs' Claims Against LG Michigan Should Also Be
        Dismissed Under Rule 9(b) For Failure To Plead With
        Particularity ...............................................................13

        1.   All Of Plaintiffs' Claims Against LG Michigan "Sound
            In Fraud" And Must Meet The Heightened Pleading
            Standard Of Rule 9(b) ................................................14

        2.   Plaintiffs' Allegations Against LG Michigan Fail To
            Meet The Pleading Requirements Of Rule 9(b) .......................17

            a.   Plaintiffs' Allegations Fail, Because They Are
                Impermissible "Group Pleading" Rather Than
                Specific Allegations Against LG Michigan ..................17

            b.   Plaintiffs' Allegations Against LG Michigan
                 Further Fail, Because They Contain None Of The
                 Specificity Required By Rule 9(b) ..............................19

                (1)   Affirmative Statements ........................................19

                (2)   Alleged Omissions ..............................................21

**Page**

C.  The Fraudulent Concealment Claims And Several Of The State Statutory Claims Against LG Michigan Should Also Be Dismissed For Failure To State A Claim ..................................24

   1.  All Of Plaintiffs' Common-Law Fraudulent Concealment Claims Fail Under Rule 12(b)(6) ..............................24

      a.  Plaintiffs Do Not And Cannot Allege That LG Michigan Had A Common Law Duty To Disclose Any Purported Defect ....................................25

      b.  The Economic Loss Rule Bars Plaintiffs' Common Law Fraud Claims In Arizona, California, Florida, Michigan, Texas And Wisconsin ..................................28

   2.  Various Of Plaintiffs' Claims Under State Consumer Protection Statutes Likewise Fail ............................31

      a.  The Texas DTPA And Virginia CPA Claims Are Not Viable Against An Upstream Component-Part Supplier ............................................31

      b.  Plaintiffs' Claims Under The Consumer Protection Statutes Of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan And Virginia Are Statutorily Barred....................................33

         (1)  The MCPA Claim Is Statutorily Barred...............34

         (2)  Claims Under The Consumer Protection Statutes Of Arizona, Florida, Georgia, Illinois, Massachusetts And Virginia Are Likewise Barred ..................................36

   3.  The GFBPA, VCPA and Virginia Common Law Fraud Claims Brought On Behalf Of A Proposed Class Are Not Permitted By State Law ............................................38

IV.  CONCLUSION..............................................39

## STATEMENT OF ISSUES

In the Amended Consolidated Class Action Complaint ("Amended Complaint" or "ACC"), Plaintiffs Robin Altobelli, et al. (collectively, "Plaintiffs") bring 33 fraud-related claims against Defendant LG Energy Solution Michigan, Inc. ("LG Michigan") concerning an alleged defect in the Chevrolet Bolt manufactured by Defendant General Motors LLC ("GM"). LG Michigan is, in turn, moving to dismiss under (a) Fed. R. Civ. P. 12(b)(1) for lack of standing, (b) Fed. R. Civ. P. 9(b) for failure to plead with particularity and (c) Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

This combined memorandum is submitted in support of LG Michigan's motion to dismiss on each of the three grounds specified above, and the motion itself presents the following issues:

1.     Whether the Court should dismiss Plaintiffs' claims against LG Michigan under Fed. R. Civ. P. 12(b)(1), because Plaintiffs fail to allege and are unable to allege facts sufficient to demonstrate standing to bring such claims.

2.     Whether the Court should dismiss Plaintiffs' claims against LG Michigan, because the Plaintiffs fail to meet the requirements of Fed. R. Civ. P. 9(b), as they (a) engage in impermissible group pleading, (b) fail to allege with specificity any alleged misrepresentations made by LG Michigan, (c) fail to adequately allege that LG Michigan knew of the alleged defect before any of the

Plaintiffs bought their vehicles and (d) fail to allege that LG Michigan had a duty to disclose.

3.     Whether the Court should dismiss Counts 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 65, 70, 75 and 80 against LG Michigan under Fed. R. Civ. P. 12(b)(6), because Plaintiffs do not sufficiently allege that LG Michigan had a duty under governing state law to disclose any allegedly material facts concerning the Bolt.

4.     Whether the Court should dismiss Count 60 against LG Michigan under Fed. R. Civ. P. 12(b)(6), because an Oregon fraudulent concealment claim is preempted by state law.

5.     Whether the Court should dismiss Counts 9, 18, 22, 49, 65 and 80 against LG Michigan pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs' claims are barred by the economic loss doctrine.

6.     Whether the Court should dismiss Counts 62 and 67 against LG Michigan pursuant to Fed. R. Civ. P. 12(b)(6), because those causes of action do not apply to upstream suppliers like LG Michigan.

7.     Whether the Court should dismiss Counts 6, 19, 24, 30, 41, 46 and 67 against LG Michigan pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs' claims under the laws of various states are exempted from the reach of consumer protection statutes in light of federal regulation.

8.     Whether the Court should dismiss Counts 24, 67 and 70 against LG Michigan pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs cannot bring those claims on a class basis.

9.     Whether the Court should dismiss Counts 51, 52, 55, 62 and 65 against LG Michigan pursuant to Fed. R. Civ. P. 12(b)(6), because the Plaintiffs have failed to allege that the alleged defect manifested in their cars.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Ali v. Allergan,
  2012 WL 3692396 (E.D. Va. 2012)................................................. 37, 38

Amstadt v. U.S. Brass,
  919 S.W.2d 644 (Tex. 1996).......................................................... 31, 32

Ball v. Takeda Pharm.,
  963 F. Supp. 2d 497 (E.D. Va. 2013) ...................................................37

Barrio v. Gisa,
  2020 WL 6081495 (D. Ariz. 2020)................................................. 29, 31

Bell Atl. v. Twombly,
  550 U.S. 544 (2007) .............................................................................24

Bojicic v. DeWine,
  2021 WL 4977018 (N.D. Ohio 2021)...................................... 11, 12, 13

Branhan v. Mercy Health,
  1999 WL 618018 (6th Cir. 1999)................................................... 17, 19

Brett v. Toyota,
  2008 WL 4329876 (M.D. Fla. 2008) ............................................. 37, 38

Cardenas v. Toyota,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) .......................................... 29, 31

Carranza v. GEICO,
  2014 WL 6998088 (D. Or. 2014).........................................................11

Casa Clara Condo. Ass'n v. Charley Toppino & Sons,
  620 So.2d 1244 (Fla. 1993)..................................................................30

Casey v. Merck & Co.,
  722 S.E.2d 842 (Va. 2012)...................................................................39

Catrett v. Landmark Dodge,
  560 S.E.2d 101 (Ga. Ct. App. 2002)......................................................9

**Page(s)**

Chancellor v. Gateway Lincoln-Mercury,
   502 S.E.2d 799 (Ga. Ct. App. 1998) ................................................................ 36, 37

Chapman v. GM,
   2021 WL 5745695 (E.D. Mich. 2021) ................................................................7

Chapman v. GM,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021) .......... 7, 9, 20, 25, 29, 31, 34, 36, 38, 39

Chavez v. Ford,
   2018 WL 6190601 (W.D. Tex. 2018) ................................................................32

Chesbrough v. VPA,
   655 F.3d 461 (6th Cir. 2011) ................................................................14

Chicago's Pizza v. Chicago's Pizza Franchise,
   893 N.E.2d 981 (Ill. App. Ct. 2008) ................................................................9

Cincinnati Ins. v. AM Int'l,
   591 N.W.2d 869 (Wis. Ct. App. 1999) ................................................................30

Costa v. FCA,
   2021 WL 2338963 (D. Mass. 2021) ................................................................27

Crosby v. Bowater,
   382 F.3d 587 (6th Cir. 2004) ................................................................28

Cyr v. Ford,
   2019 WL 7206100 (Mich. Ct. App. 2019) ........................................ 33, 34, 35, 36

Daniel v. Nat'l Park Serv.,
   891 F.3d 762 (9th Cir. 2018) ................................................................10

Del Mar Land Partners v. Stanley Consults.,
   2012 WL 1019066 (D. Ariz. 2012) ................................................................31

Drake v. Toyota,
   2020 WL 7040125 (C.D. Cal. 2020) ...................................... 17, 18, 19, 28, 29, 31

E. River v. Transamerica,
   476 U.S. 858 (1986) ................................................................29

**Page(s)**

Everett v. TK-Taito,
    178 S.W.3d 844 (Tex. App. 2005) ........................................................... 31

Flores v. FCA,
    2021 WL 1122216 (E.D. Mich. 2021) .................................... 16, 21, 39

Flynn v. FCA,
    327 F.R.D. 206 (S.D. Ill. 2018) ............................................................. 25

Frank v. DaimlerChrysler,
    741 N.Y.S.2d 9 (2002) ............................................................................ 31

Freyre v. Hillsboro Cty. Sheriff,
    2014 WL 2112043 (M.D. Fla. 2014) .................................................... 11

Gant v. Ford,
    517 F. Supp. 3d 707 (E.D. Mich. 2021) .................................. 34, 36, 38

Glidden v. Jandernoa,
    5 F. Supp. 2d 541 (W.D. Mich. 1998) .................................................. 25

Hanson Hous. Auth. v. Dryvit Sys.,
    560 N.E.2d 1290 (Mass. 1990) .............................................................. 25

Hinkle v. Cont'l Motors,
    2017 WL 4776992 (D.S.C. 2017) ......................................................... 15

Hoover v. Langston Equip.,
    958 F.2d 742 (6th Cir. 1992) .................................................... 17, 19, 20

Huff v. TeleCheck,
    923 F.3d 458 (6th Cir. 2019) ................................................................... 8

In re Chinese Drywall Cases,
    2010 WL 7378659 (2010) ....................................................................... 32

In re Rumsey Land,
    944 F.3d 1259 (10th Cir. 2019) ............................................................. 28

In re Sony,
    2010 WL 4262191 (S.D. Cal. 2010) ..................................................... 30

**Page(s)**

In re Volkswagen,
    2016 WL 10880209 (Va. Cir. Ct. 2016) .................................................39

In re Volkswagen,
    467 F. Supp. 3d 849 (N.D. Cal. 2020) ..................................... 25, 26, 28

Jefferson v. Collins,
    905 F. Supp. 2d 269 (D.D.C. 2012) ......................................................28

Leonard v. Abbott,
    2012 WL 764199 (E.D.N.Y. 2012) .......................................................16

Lewis v. Casey,
    518 U.S. 343 (1996) ..............................................................................28

Lorincz v. Etue,
    2017 WL 712949 (E.D. Mich. 2017) ....................................................10

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ..............................................................................10

MAO-MSO v. Farmers Ins.,
    2017 WL 5634097 (C.D. Cal. 2017) ............................................... 11, 12

McCloud v. Save-A-Lot,
    388 F. Supp. 3d 954 (E.D. Tenn. 2019) ..................................................9

McKee v. GM,
    376 F. Supp. 3d 751 (E.D. Mich. 2019) .......................................... 15, 28

Mehr v. Fed'n Int'l de Football Ass'n,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ........................................... 10, 11

Miller v. GM,
    2018 WL 2740240 (E.D. Mich. 2018) ...................... 13, 14, 15, 16, 17, 19, 22, 23

Morris Aviation v. Diamond Aircraft,
    536 F. App'x 558 (6th Cir. 2013) .........................................................26

Mull v. Alliance Mortg.,
    219 F. Supp. 2d 895 (W.D. Tenn. 2002) ........................................... 8, 12

**Page(s)**

Oro Cap. Advisors v. Borror Constr.,
    2020 WL 4000974 (S.D. Ohio 2020) ...................................................................19

Osman v. Ford,
    833 N.E.2d 1011 (Ill. App. Ct. 2005) ...............................................37

Perez v. Wells Fargo,
    2015 WL 1887354 (N.D. Cal. 2015) .......................................... 11, 12

Pugh v. Gen. Terrazzo Supplies,
    243 S.W.3d 84 (Tex. Ct. App. 2007) ...............................................30

Quest Diagnostics v. MCI,
    656 N.W.2d 858 (Mich. Ct. App. 2002) ...........................................30

R. Prasad Indus. v. Flat Irons Env't Sols.,
    2015 WL 13388176 (D. Ariz. 2015) ................................................27

Resort Funding v. Canyonview Dev.,
    2012 WL 3760440 (Ariz. Ct. App. 2012) .........................................26

Robinson v. GM,
    2021 WL 3036353 (D. Del. 2011) ............................................ 29, 31

Rolaff v. Farmers Ins.,
    2020 WL 4939172 (W.D. Okla. 2020) .................................. 7, 10, 12

Rosenbaum v. Toyota,
    2016 WL 9775018 (E.D. Mich. 2016), aff'd,
    708 F. App'x 242 (6th Cir. 2017) ................................... 34, 35, 36, 38

Smith v. GM,
    988 F.3d 873 (6th Cir. 2021) ..................................................14, 21, 22

Soehnlen v. Fleet Owners Ins.,
    844 F.3d 576 (6th Cir. 2016) ..............................................................7

Spokeo v. Robins,
    136 S.Ct. 1540 (2016) ......................................................................10

TIBCO v. GFS,
    2003 WL 21683850 (W.D. Mich. 2003) .................................... 29, 31

**Page(s)**

Tietsworth v. Harley-Davidson,
  677 N.W.2d 233 (Wis. 2004) .......................................................... 29, 31

TransUnion v. Ramirez,
  141 S.Ct. 2190 (2021) .................................................................... 7, 8

Walton v. Grammer Indus.,
  2021 WL 4458761 (E.D. Mich. 2021) ................................................21

Withrow v. FCA,
  2021 WL 2529847 (E.D. Mich. 2021) ............................................ 8, 28

Wm. Beaumont Hosp. v. Morgan Stanley,
  677 F. App'x 979 (6th Cir. 2017) .......................................................15

Wozniak v. Ford,
  2019 WL 108845 (E.D. Mich. 2019) .................................... 15, 16, 22

Yeti Enters. v. Tang,
  2017 WL 3478484 (D. Or. 2017) ........................................................27

Zottola v. Eisai,
  2021 WL 4460563 (S.D.N.Y. 2021) ...................................................13

## STATUTES

49 U.S.C. § 30102 ...............................................................................35

815 ILCS 505/10b ..............................................................................33

Ariz. Rev. Stat. § 44-1523 ..................................................................34

Fla. Stat. § 501.212 ............................................................................33

Ga. Code § 10-1-396 ..........................................................................33

Ga. Code § 10-1-399 ..........................................................................38

Mass. Gen. Laws ch. 93A § 3 ............................................................33

Mich. Comp. Laws § 445.904 .............................................................33

N.Y. Gen. Bus. Law § 349 ..................................................................16

**Page(s)**

N.Y. Gen. Bus. Law § 350 ................................................................16

Tex. Bus. & Com. Code § 17.46 ........................................................31

Va. Code § 59.1-199 ..........................................................................34

Va. Code Ann. § 59.1-200 .................................................................31

## OTHER AUTHORITIES

9A Ariz. Prac., Business Law Deskbook § 42:2 (2021 ed.) ...................37

## RULES

Fed. R. Civ. P. 12(b)(1)........................................................... iii, 1, 2

Fed. R. Civ. P. 12(b)(6)...............................................iii, iv, v, 1, 2, 16

Fed. R. Civ. P. 8 ...............................................................................16

Fed. R. Civ. P. 9(b) ................................................... iii, 1, 2, 13, 16

## TREATISES

Restatement (Second) of Torts § 550 .................................................26

Restatement (Second) of Torts § 551 .................................................26

## REGULATIONS

16 C.F.R. § 259.2 ........................................................................ 35, 38

## MOST APPROPRIATE AUTHORITIES

Cases:

1. <u>Bojicic v. DeWine</u>,
   2021 WL 4977018 (N.D. Ohio 2021)

2. <u>Chapman v. GM</u>,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021)

3. <u>Drake v. Toyota</u>,
   2020 WL 7040125 (C.D. Cal. 2020)

4. <u>Hoover v. Langston Equip.</u>,
   958 F.2d 742, 745 (6th Cir. 1992)

5. <u>In re Volkswagen</u>,
   467 F. Supp. 3d 849 (N.D. Cal. 2020)

6. <u>Miller v. GM</u>,
   2018 WL 2740240 (E.D. Mich. 2018)

7. <u>Perez v. Wells Fargo</u>,
   2015 WL 1887354 (N.D. Cal. 2015)

8. <u>Rosenbaum v. Toyota</u>,
   2016 WL 9775018 (E.D. Mich. 2016)

9. <u>Smith v. GM</u>,
   988 F.3d 873 (6th Cir. 2021)

10. <u>Withrow v. FCA</u>,
    2021 WL 2529847 (E.D. Mich. 2021)

11. <u>Wozniak v. Ford</u>,
    2019 WL 108845 (E.D. Mich. 2019)

Rules:

12. Fed. R. Civ. P. 12

13. Fed. R. Civ. P. 9

LG Michigan submits this combined memorandum of law in support of its motion to dismiss Plaintiffs' Amended Complaint pursuant to (a) Fed. R. Civ. P. 12(b)(1), (b) Fed. R. Civ. P. 9(b) and (c) Fed. R. Civ. P. 12(b)(6):

## I.   <u>INTRODUCTION</u>

On September 17, 2021 and after nearly a year of litigation, Plaintiffs filed the Amended Complaint, adding five new entities as parties to this case.  Three of those parties have not yet been served, and this memorandum is submitted in support of the motion to dismiss of LG Michigan, which itself has played only a peripheral role as a supplier for the vehicles in question of parts and components to an affiliate of LG Electronics USA, Inc. ("LG Electronics") not named in this suit.

That affiliate of LG Electronics supplies battery packs directly to GM.  GM then incorporates those battery packs and many other components into vehicles it sells to its dealers, who subsequently sell or lease those vehicles to consumers.  LG Michigan, however, has no relationship, contractual or otherwise, with consumers who purchased or leased the vehicles in question, and as a Tier 2 supplier beginning in mid-2018 that began supplying battery cells to an affiliate of LG Electronics for Model Year 2019 vehicles, its role is very much peripheral.

Little or none of this, however, could be discerned from Plaintiffs' current pleading.  That pleading is discursive by any standard, consisting of over 300 pages, containing 1,335 numbered paragraphs and 81 separate causes of action, with over 2,000 additional pages of exhibits.  But in spite of the foregoing, Plaintiffs' pleading contains <u>none</u> of the specific allegations that would remotely suggest they have standing to make a claim against LG Michigan, let alone the detail necessary to

satisfy the operative pleading standards.  Instead, all six Defendants are referred to collectively as "Defendants," and the five LG entities, all of which are separate corporate entities with unique roles (if any) in the matters addressed in the Amended Complaint, are referenced throughout the pleading as either "LG" or "the LG Defendants," with no indication of what specific role (if any) LG Michigan had that would possibly give rise to direct claims by consumers.

Nor is this a coincidence.  Plaintiffs and their counsel resorted to scattergun pleading, because there is no basis for naming LG Michigan.  Accordingly, LG Michigan now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6).

LG Michigan also joins the motion to strike of GM for purposes of striking Count 3 of the Amended Complaint, which asserts against LG Michigan on behalf of a nationwide class claims of common law fraudulent concealment and fraud by omission.  In an effort to avoid duplicative briefing, however, and to otherwise minimize the burden on the Court, LG Michigan incorporates by reference in support of its motion to dismiss the arguments made by GM and LG Electronics in the memoranda they are separately submitting.

## II.   FACTUAL BACKGROUND

The factual background for this memorandum is set forth below.  See disc. infra at 2-4.

### A.   The Chevrolet Bolt

GM is a motor vehicle manufacturer that manufactures, sells and markets the Chevrolet Bolt.   See ACC (Dkt. 27) ¶¶ 281, 282, 303.   LG Electronics has

manufactured and sold to GM completed battery packs for use in the Bolt.[1]  Id. ¶ 298; id. Ex. BT at 2.

GM began selling the Bolt in late 2016.  See ACC ¶ 339.  And for "each Class Vehicle sold by GM, an express written warranty was issued" by GM.  Id. ¶ 401. LG Michigan, however, was not a party to the warranty GM issued to consumers, and the warranty issued by GM makes no reference to any warranty being provided by LG Michigan.  See id. ¶¶ 401-02; see also, e.g., id. Ex. S, Ex. Y, Ex. EE (all discussing the battery warranty but not mentioning LG Michigan).

The electric battery for the Bolt consists of lithium-ion battery cells.  Battery cells are stacked like rows of books in a bookshelf to make up a battery module.  See ACC Ex. AS at 11.  Modules are then assembled into a battery pack consisting "of a strong steel underside casing and cross members and a fiberglass or composite top cover."  Id. at 10.  The battery pack for the Bolt contains a total of ten modules and 288 individual battery cells.  See ACC ¶ 332 (picture of completed bolt battery pack); id. Ex. BJ at 4 (same); see also id. Ex. AS at 11, Ex. AA at 2, Ex. N at 7.

## B.   LG Michigan

LG Michigan was incorporated in 2010 as LG Chem Michigan, Inc.[2]  LG Michigan, however, was never part of the "strategic partnership" between GM and other LG entities for the production of the Chevrolet Bolt.  See ACC Ex. S at 1.

---

[1] The Amended Complaint defines "Class Vehicles" as the Model Year 2017-2022 Chevrolet Bolt.  See ACC ¶ 404. It does not otherwise define a proposed class period.

[2] See LG Michigan Incorporation Status, https://rb.gy/o9eh0x.  In December 2020, LG Chem Michigan, Inc. changed its name to LG Energy Solution Michigan, Inc. See id.  For the sake of simplicity, this memorandum uses "LG Michigan" to refer to the entity both before and after the name change.

Indeed, LG Michigan has no relationship with LG Electronics other than a contractual relationship with an affiliate of LG Electronics not named in the Amended Complaint, and LG Michigan has never been in privity with or had a direct contractual relationship with GM for components included in Bolts sold to consumers.  See id.

In fact, LG Michigan supplied no components for Bolts until mid-2018, meaning that for Model Years 2017 and 2018, Bolts did not contain any parts or components manufactured by LG Michigan.  See ACC ¶¶ 7, 332.[3]  And for the remaining model years at issue, LG Michigan simply supplied one component of the battery pack until late 2020 (namely, battery cells) and then later battery packs to the affiliate of LG Electronics, which then sold these parts and components to GM.[4]  See id. ¶¶ 311, 363 (describing statements by CEO of LG Electronics affiliate about its partnership with GM for Bolt batteries).  LG Michigan, however, has never sold or advertised battery cells, modules or packs used in the Bolt to any consumers, and there is no suggestion in the Amended Complaint to the contrary.  See id. at passim.

---

[3] The Amended Complaint does not attempt to explain its own inconsistencies in alleging that both "[t]he lithium-ion Batteries in the Class Vehicles were produced at an LG Chem facility in Ochang, South Korea" (ACC ¶ 332) and that LG Michigan's "Holland, Michigan factory manufactures the Defective Batteries" (id. ¶ 295).  Nor does the Amended Complaint in any way limit its allegations against LG Michigan to the time period during which LG Michigan was supplying any components to the suppliers that were providing parts directly to GM.

[4] While LG Michigan began supplying battery cells to the affiliate of LG Electronics in mid-2018, LG Michigan started supplying battery packs to this same affiliate beginning in late 2020, which affiliate then provided them directly to GM.  See ACC Ex. G at 1; id. Ex. BU at 3.

## C.    The Amended Complaint

Plaintiffs first filed suit against GM in this Court on December 11, 2020.  <u>See</u> Compl. (Dkt. 1).  Actions filed in other jurisdictions were later transferred here, and on June 1, 2021, the Court entered a Stipulation and Order consolidating the eight pending class actions.  <u>See</u> Order (Dkt. 18).  GM was the only defendant at that time.  <u>See</u> <u>id.</u>

On July 19, 2021, Plaintiffs filed a Consolidated Class Action Complaint, again only against GM.  <u>See</u> Consol. Compl. (Dkt. 24).  And on September 3, 2021, the Court entered another Stipulation and Order, wherein the parties agreed Plaintiffs could file an Amended Consolidated Complaint within 14 days and GM would then respond within 60 days of that filing.  <u>See</u> Stip. & Order (Dkt. 26).[5]

Plaintiffs nonetheless filed the Amended Complaint on September 17, 2021, adding five defendants (<u>i.e.</u>, LG Chem, Ltd., LG Energy Solution, Ltd., LG Michigan, LG Electronics, Inc. and LG Electronics).  <u>See</u> ACC (Dkt. 27).  LG Michigan was later served, and the parties stipulated to an amended schedule, setting December 17, 2021 as the deadline for motions to dismiss and strike.  <u>See</u> Stip. Order (Dkt. 33).

Without specifying which particular LG entity they are referring to, Plaintiffs claim in the Amended Complaint that "LG" (defined as all five LG entities named) "has been GM's partner in developing and manufacturing the Bolt since its

---

[5] There is no indication in the record that Plaintiffs or their counsel gave any indication of their intention to add parties in the Amended Complaint, and by referring only to Plaintiffs and GM, the Stipulation and Order entered by the Court on September 3, 2021 would suggest that intention was in fact not disclosed to anyone.  <u>See</u> Stip. & Order (Dkt. 26).

inception, and then in discovering and investigating the Battery Defect, failing to disclose it, and rolling out the inadequate and misleading recalls described herein." ACC ¶ 361. Plaintiffs further claim they have suffered harm from the "[l]ower performance, inferior performance capability, . . . mitigation costs, and reduced value . . . attributable to the defect." Id. ¶ 19.

While the Amended Complaint is replete with general allegations about "Defendants" and their "misrepresentations and omissions regarding the safety, reliability, and range of the Class Vehicles," it is devoid of any substantive allegations against LG Michigan. See, e.g., ACC ¶ 938. Indeed, in spite of its considerable length and breadth, the Amended Complaint does not include a single allegation specific to LG Michigan other than (1) identifying organizational relationships with other LG entities and (2) the locations of LG Michigan's facilities. See id. ¶¶ 23, 25, 290-93. Without even limiting the counts against LG Michigan to the short period of time it was supplying parts to an unnamed affiliate of LG Electronics that was providing components directly to GM, Plaintiffs nevertheless assert 33 counts against LG Michigan for common law fraud and under the consumer protection statutes of 14 states, along with a nationwide class claim purportedly brought on behalf of consumers in all fifty states. See ACC Counts 6, 9, 11-12, 18, 19, 22, 24, 25, 28, 30, 31, 34, 36, 39, 41, 44, 46, 49, 51, 52, 55, 57, 60, 62, 65, 67, 70, 72, 75, 77, 80; see also id. Count 3 (nationwide class claim). As explained below, however, Plaintiffs' claims against LG Michigan fail as a matter of law for multiple reasons and should be dismissed. See disc. infra at 7-39.

6

## III. __ARGUMENT__

### A. __Plaintiffs Lack Standing Under Article III__

As the Supreme Court recently held, "standing is not dispensed in gross[.]" See TransUnion v. Ramirez, 141 S.Ct. 2190, 2208 (2021). Instead, each plaintiff must independently establish standing, and every absent class member must likewise have standing in order to recover damages, with the burden of pleading and proving each required element of standing always resting with the party seeking to invoke federal jurisdiction.[6] See id.; see also, e.g., Soehnlen v. Fleet Owners Ins., 844 F.3d 576, 581-84 (6th Cir. 2016) (plaintiffs must establish standing for each claim).

The fact someone has standing to pursue one claim or form of relief against one defendant, however, does not mean they have standing to pursue other claims against that same defendant, let alone other claims against other defendants. See TransUnion, 141 S.Ct. at 2210; see also, e.g., Rolaff v. Farmers Ins., 2020 WL 4939172, *2, *4 (W.D. Okla. 2020). To the contrary, standing must be established "for each claim" and "for each form of relief," and in cases involving multiple defendants, standing must be established for each claim against each defendant. TransUnion, 141 S.Ct. at 2208; Withrow v. FCA, 2021 WL 2529847, *7 (E.D. Mich.

---

[6] We are, of course, mindful of this Court's recent decisions in Chapman v. GM regarding TransUnion and the issue of when the standing of absent class members should be considered as it impacts the question of class certification and the propriety of class treatment. See Chapman v. GM, 531 F. Supp. 3d 1257, 1272-74 (E.D. Mich. 2021) (Berg, J.); Chapman v. GM, 2021 WL 5745695, *2 (E.D. Mich. 2021) (Berg, J.). We understand GM is addressing that issue in its motion to strike. See GM's Mem. in Supp. (Dkt. 37) at 23-25. Our citations to TransUnion, Lujan and the other cases, however, are focused on the issue of standing as it informs what is required for Plaintiffs to show standing to pursue their own individual claims on their own behalf and thus to sustain federal jurisdiction against a defendant in the first instance and at the pleading stage, separate and apart from the class issue. See disc. infra at 7-13.

2021) ("The proper jurisdictional question is whether the named plaintiffs have standing to pursue <u>each</u> and <u>every</u> claim of their complaint.") (emphasis original); <u>Mull v. Alliance Mortg.</u>, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002).[7]

Moreover, concrete harm must also be pled and proven for claims for damages like those in the Amended Complaint.  <u>See</u> <u>Huff v. TeleCheck</u>, 923 F.3d 458, 463 (6th Cir. 2019).  A risk of future harm, however, does <u>not</u> confer standing for damages.  <u>See</u>, <u>e.g.</u>, <u>id.</u>  But see ACC at <u>passim</u> (repeatedly relying upon alleged risk of future harm as predicate for damages claims asserted against LG Michigan and others).  Damages are available and standing exists <u>only</u> if and when the alleged risk comes to fruition (if at all).  <u>See</u>, <u>e.g.</u>, <u>Huff</u>, 923 F.3d at 464.

These principles from <u>TransUnion</u> and other cases have important implications for this case and particularly for the claims against LG Michigan.  For most of the Plaintiffs and for the vast majority of the proposed class, their claim for damages is largely premised on a risk of future harm.  <u>See</u>, <u>e.g.</u>, ACC ¶¶ 32, 56, 65, 151.  This is because the alleged defect featured in the Amended Complaint has only materialized (at most) in a handful of instances and in any event will be rectified by the GM recall already underway.[8]  <u>See id.</u> Ex. BF (estimating incidence rate at 1%); <u>id.</u> Ex. D (addressing battery replacement by GM).  As such, the standing of

---

[7] Unless stated otherwise, all emphasis is supplied, and all internal citations, quotations, footnotes and objections are omitted herein.

[8] The simultaneous presence of a "torn anode tab and folded separator" in a battery cell is exceedingly rare.  <u>See</u> ACC ¶ 387; <u>id.</u> Ex. BF.  For more than 142,000 Bolts sold since 2016 (each containing a battery pack consisting of 288 individual battery cells), GM has confirmed fires in no more than 10 vehicles, and the National Highway Traffic Safety Administration ("NHTSA") has preliminarily identified 13 fires, as indicated in the Amended Complaint.  <u>See</u> ACC Ex. F at 2.

Plaintiffs and absent class members to pursue damages is questionable. <u>See</u> <u>generally</u> <u>McCloud v. Save-A-Lot</u>, 388 F. Supp. 3d 954 (E.D. Tenn. 2019).[9]

Their standing, however, to pursue <u>any</u> claim against LG Michigan is even more tenuous. Instead of making specific allegations against LG Michigan—addressing, for example, <u>when</u> LG Michigan was producing parts for direct suppliers to GM, <u>what</u> LG Michigan's role was in producing components and <u>how</u> (if at all) LG Michigan's actions caused harm when it merely provided cells to an LG Electronics affiliate <u>not</u> named in the Amended Complaint—and then pleading with particularity <u>specific</u> claims against each Defendant, Plaintiffs and their counsel resorted to a scattergun approach in the Amended Complaint. <u>See</u> ACC ¶¶ 16, 310, 361, 365, 399 (referring generically to "Defendants" or "LG" instead of referring to specific Defendants). In the 319 pages of the Amended Complaint, Plaintiffs make few specific allegations at all against LG Michigan. <u>See</u> <u>id.</u> ¶¶ 290-93 (alleging only that LG Michigan "has multiple Michigan facilities" and "manufactures" "cells and packs for electric vehicles"). Instead, Plaintiffs lump together the five LG entities

---

[9] Plaintiffs also lack standing to seek injunctive remedies for alleged violations referenced in Counts 11, 19, 24, 25, 31, 36, 41, 57, 62 and 72, because they do not allege any likelihood of future harm. <u>See</u>, <u>e.g.</u>, <u>Chapman</u>, 531 F. Supp. 3d at 1274 n.3 ("[A]fter having already purchased the product at issue, 'deceptive trade practices' [can] not cause future harm."). And because the Illinois Uniform Deceptive Trade Practices Act and the Georgia Unfair & Deceptive Trade Practices Act provide only for injunctive relief, Plaintiffs' claims under those provisions (Counts 25 and 31) should be dismissed as well. <u>See</u> <u>Chicago's Pizza v. Chicago's Pizza Franchise</u>, 893 N.E.2d 981, 996 (Ill. App. Ct. 2008); <u>Catrett v. Landmark Dodge</u>, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002). These points are more fully set forth in GM's motion to dismiss, which LG Michigan joins for purposes of (1) seeking dismissal of the aforementioned counts to the extent they seek injunctive relief and (2) seeking dismissal of Counts 25 and 31 in their entirety. <u>See</u> GM's Mem. in Supp. (Dkt. 36) at 29-32.

recently named and refer throughout the Amended Complaint to those five entities collectively as "LG," "LG Chem" or "the LG Defendants."  See id. ¶¶ 293, 310-113, 364-65.[10]

Generalized allegations against multiple defendants, however, do not satisfy Rule 9(b), and they certainly do not satisfy Article III.  See, e.g., Rolaff, 2020 WL 4939172, *2, *4; see also disc. infra at 13-24.  As the Supreme Court held in Lujan, the elements necessary to establish standing are not mere pleading requirements but, instead, are "an indispensable part of the plaintiff's case," meaning the elements of standing must be alleged for each claim and with specificity for each defendant.[11] See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); see also, e.g., Mehr v. Fed'n Int'l de Football Ass'n, 115 F. Supp. 3d 1035, 1057-58 (N.D. Cal. 2015). As such, Plaintiffs are obligated to plead facts sufficient to establish (if proven) that

---

[10] All told, there are 149 collective references to "LG" or "the LG Defendants" in the Amended Complaint and only four to LG Michigan.  See ACC ¶¶ 290-94.  Each one of the 33 counts brought against LG Michigan, however, is brought against all five of the LG entities recently named, with no effort to differentiate between the five.  See id. ¶¶ 433-42.

[11] As discussed below, Supreme Court precedent makes clear there are three things every plaintiff and absent class member must establish to have standing:  they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo v. Robins, 136 S.Ct. 1540, 1547 (2016).  See, e.g., Lorincz v. Etue, 2017 WL 712949, *8 (E.D. Mich. 2017).  We address below the first and second requirement, with a focus on traceability.  See disc. infra at 11-13; see also Daniel v. Nat'l Park Serv., 891 F.3d 762, 767 (9th Cir. 2018) (addressing the importance of the traceability as "no less essential to the irreducible constitutional minimum of standing").  The arguments made by LG Electronics regarding prudential mootness apply equally to the third requirement of standing, and LG Michigan incorporates that discussion herein as well.  See LG Electronics' Mem. in Supp. at Section IV.

they have standing to bring the claims they purport to assert against LG Michigan, and Plaintiffs have plainly failed to do so.  See Mehr, 115 F. Supp. 3d at 1058.

Rather than making any specific allegations against LG Michigan, Plaintiffs refer only to "LG" and "the LG Defendants" and make no particularized claims addressing the specific role (if any) of LG Michigan in the events giving rise to this case.  See ACC ¶ 365.  But see, e.g., Bojicic v. DeWine, 2021 WL 4977018, *7-8 (N.D. Ohio 2021).  This is clearly insufficient, however, and is a basis in itself to dismiss on standing grounds the claims against LG Michigan.  See, e.g., id.; MAO-MSO v. Farmers Ins., 2017 WL 5634097, *6 (C.D. Cal. 2017); Carranza v. GEICO, 2014 WL 6998088, *3-4 (D. Or. 2014).

Indeed, courts routinely dismiss for lack of standing claims pled like those in the Amended Complaint, particularly in putative class actions brought against multiple defendants.  See, e.g., Freyre v. Hillsboro Cty. Sheriff, 2014 WL 2112043, *4-5 (M.D. Fla. 2014); Perez v. Wells Fargo, 2015 WL 1887354, *5 (N.D. Cal. 2015).  In Perez, for instance, the court dismissed for lack of standing a putative class action filed against related corporate entities that were referred to collectively in the pleadings.  See Perez, 2015 WL 1887354, *5 ("[P]laintiffs assert their claims against five separate corporate entities, which they refer to collectively as 'Wells Fargo.'").  In so doing, the court in Perez succinctly stated the applicable standard:

> For each form of relief sought, a plaintiff must establish standing.  To demonstrate that they have standing, named plaintiffs in a class action suit must plead facts showing standing as to each defendant, including alleging that they were injured by each such defendant.

11

Id.  Standing was not established in Perez, however, because referring to defendants collectively did not satisfy the requirement of Article III that each plaintiff allege facts sufficient "to show that his/her injury is fairly traceable to a specific defendant's conduct."  Id. *3 ("[P]laintiffs have not pled facts showing that they suffered an injury in fact caused by a particular defendant[.]").

Nor is Perez an isolated decision.  To the contrary, numerous courts within and outside the Sixth Circuit have found the form of pleading contained in the Amended Complaint insufficient for purposes of establishing standing in a putative class action brought against multiple defendants.  See, e.g., Bojicic, 2021 WL 4977018, *8.  In Bojicic, for example, Judge Carr dismissed multiple officials from a class action suit where plaintiffs merely "attribute[d] harm to 'defendants' as a group."  See id. *7-8.  There (as here) it was "completely unclear what role [each defendant] played, if any, in contributing to plaintiffs' harm."  Id. *8.  Instead, the plaintiffs in Bojicic alleged "some" of the defendants took harmful actions, but "they [did] not identify which defendants issued these orders, what these orders said, or how these orders impacted their businesses."  Id.  Plaintiffs thus "wholly failed" to allege "specific facts demonstrating each element of standing."  Id.; see also, e.g., Mull, 219 F. Supp. 2d at 908-09; MAO-MSO, 2017 WL 5634097, *6; Rolaff, 2020 WL 4939172, *3.

The claims against LG Michigan, however, are at least as deficient as those in Perez and Bojicic.  Plaintiffs provide no indication of how LG Michigan had any communications with consumers that could possibly lead to a claim of fraudulent misrepresentation, relying instead on allegations directed only at "the Defendants"

12

or "the LG Defendants." See ACC ¶¶ 311, 331, 334, 365.  Nor is there any indication how LG Michigan (after it actually began producing cells in mid-2018) could have possibly have had the sort of relationship with consumers that would give rise to an affirmative duty to disclose.  See id. ¶ 293 (alleging LG Michigan is a manufacturing plant).  But see, e.g., Zottola v. Eisai, 2021 WL 4460563, *9-10 (S.D.N.Y. 2021) (complaint failed to plead fraudulent concealment with particularity and failed to allege that manufacturer had duty to disclose).  Instead, the Amended Complaint largely ignores the different roles of different Defendants and simply lumps them all together, which is clearly insufficient.  See, e.g., Bojicic, 2021 WL 4977018, *7-8.

## B.    Plaintiffs' Claims Against LG Michigan Should Also Be Dismissed Under Rule 9(b) For Failure To Plead With Particularity

As explained above, Plaintiffs fail to make specific allegations against LG Michigan.  Instead, they lump all Defendants together or when referring to all Defendants other than GM, refer generically to "LG" or "LG Chem" or "LG Defendants." See ACC ¶¶ 293, 310-11, 364-65.  Apart from failing to satisfy Article III, however, so-called "group pleading" also manifestly fails to meet the requirements of Fed. R. Civ. P. 9(b), which requires in cases "alleging fraud or mistake" that plaintiffs "state with particularity the circumstances constituting fraud or mistake."  See Fed. R. Civ. P. 9(b); see also, e.g., Miller v. GM, 2018 WL 2740240, *11 (E.D. Mich. 2018).

In the Amended Complaint, every count against LG Michigan sounds in fraud and thus must meet the heightened standard of Rule 9(b).  See ACC ¶¶ 433-1330.  But none do.  See disc. infra at 17-24.  In fact, the Amended Complaint contains no

specific allegations against LG Michigan that would sufficiently provide notice of the allegedly fraudulent conduct, let alone allegations sufficient to sustain at the pleading stage no less than thirty-three counts against LG Michigan.  <u>See</u> ACC ¶¶ 290-94 (alleging only facts pertaining to the location of LG Michigan's manufacturing facilities).

### 1. All Of Plaintiffs' Claims Against LG Michigan "Sound In Fraud" And Must Meet The Heightened Pleading Standard Of Rule 9(b)

The purpose of Rule 9(b)'s pleading standard is to "alert defendants as to the particulars of their alleged misconduct."  <u>Chesbrough v. VPA</u>, 655 F.3d 461, 466 (6th Cir. 2011).  Thus, to satisfy Rule 9(b), "'the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury.'"  <u>Smith v. GM</u>, 988 F.3d 873, 883 (6th Cir. 2021).   And while the particularity requirement is "slightly" relaxed for claims of fraudulent <u>omission</u>, allegations setting forth "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud" are still required.  <u>Miller</u>, 2018 WL 2740240, *11.

Importantly, a plaintiff alleging fraudulent omission "must also establish a duty to disclose," meaning someone relying on a theory of omission must plead facts plausibly suggesting why each defendant had a duty to disclose the allegedly omitted information.  <u>See Miller</u>, 2018 WL 2740240, *11.  Without a duty to disclose, however, there can be no actionable omission, and that is especially true when other

14

persons or entities in the causal chain arguably did have a duty to disclose.  See, e.g., Hinkle v. Cont'l Motors, 2017 WL 4776992, *5 (D.S.C. 2017) (explaining component manufacturer has no duty to airplane passengers, because airplane passengers rely on representations by the manufacturer of the airplane itself); Wm. Beaumont Hosp. v. Morgan Stanley, 677 F. App'x 979, 984 (6th Cir. 2017) ("Without a duty to disclose, there can be no fraud by omission.").

These pleading standards, in turn, apply to all claims "which sound[] in fraud," including claims based on state consumer protection statutes.  Miller, 2018 WL 2740240, *14; McKee v. GM, 376 F. Supp. 3d 751, 760-62 (E.D. Mich. 2019). In Miller, for example, violations were alleged of some of the same state statutes upon which Plaintiffs purport to rely here.  Compare Miller, 2018 WL 2740240, *14, with ACC Counts 30 (Illinois), 41 (Massachusetts), 46 (Michigan), 57 (Oregon) and 72 (Washington).   The court in Miller, however, found "the factual allegations underlying the state consumer protection claims are essentially identical to the factual allegations underlying the fraudulent omissions claims."  Miller, 2018 WL 2740240, *15.  Accordingly, Judge Ludington held that these claims sounded in fraud, applied the heightened pleading standard of Rule 9(b) and dismissed the state consumer protection counts for the same pleading deficiencies that warranted dismissal of the fraudulent omission claims.[12]  See id.

---

[12] Similarly, the court in Wozniak applied Rule 9(b) not only to common law claims of fraudulent omission but also to every state law statutory claim "sounding in fraud."  See Wozniak v. Ford, 2019 WL 108845, *3 (E.D. Mich. 2019).  The court then dismissed all of these claims under Rule 9(b), because "[l]iability cannot attach for a fraudulent omission theory under any state fraud or consumer protection law without a properly pleaded 'what' of the alleged omission."  Id.

In the Amended Complaint, Plaintiffs have asserted against LG Michigan both common law fraud claims[13] as well as state consumer protection claims based on alleged misrepresentations and omissions.[14]   All of Plaintiffs' state consumer protection claims against LG Michigan, however, rely on the same allegations supporting the common law fraud claims, namely that "Defendants" or "LG Defendants" or "LG" knowingly "misrepresented," "concealed" or "omitted" material facts.  See, e.g., Ex. B hereto (listing each consumer protection claim made against LG Michigan and describing the fraud allegations that are made in the Amended Complaint in support of each claim).  Accordingly, all of Plaintiffs' claims against LG Michigan "sound in fraud" and must be pled with particularity.[15]  See Miller, 2018 WL 2740240, *14-15; Wozniak, 2019 WL 108845, *3.  But as explained below, none are.  See disc. infra at 17-24.

---

[13] Common law fraud claims against LG Michigan include Counts 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75 and 80.  See ACC ¶¶ 433-442, 501-13, 601-11, 658-68, 735-45, 795-805, 855-65, 917-28, 971-81, 1031-41, 1088-95, 1154-64, 1220-27, 1261-68, 1320-30.

[14] State law consumer protection claims against LG Michigan include Counts 6, 11, 12, 19, 24, 25, 30, 31, 36, 41, 46, 51, 52, 57, 62, 67, 72 and 77.  See ACC ¶¶ 463-76, 519-43, 612-29, 674-704, 751-73, 811-26, 871-87, 934-46, 987-1006, 1047-60, 1101-21, 1170-87, 1233-41, 1274-90.

[15] While courts in the Second Circuit have held that Sections 349 and 350 of the New York General Business Law are not subject to Rule 9(b) (see, e.g., Leonard v. Abbott, 2012 WL 764199, *19 (E.D.N.Y. 2012)), decisions of this Court using the standards described above have applied Rule 9(b) to claims under those sections where (as here) the allegations supporting the claims sound in fraud.  See, e.g., Flores v. FCA, 2021 WL 1122216, *4, *21-23 (E.D. Mich. 2021); Wozniak, 2019 WL 108845, *3, *3 n.5.  The Court should do the same here.  Nevertheless, if the Court decides to not apply Rule 9(b) to Sections 349 and 350, it should still dismiss those claims under Rule 12(b)(6) for failing to contain the "short and plain statement" required under Fed. R. Civ. P. 8(a).  As set forth above, there are no specific allegations against LG Michigan which set forth why it should be held liable under any law.

### 2.   Plaintiffs' Allegations Against LG Michigan Fail To Meet The Pleading Requirements Of Rule 9(b)

Plaintiffs' allegations against LG Michigan manifestly fail to satisfy Rule 9(b) for at least two reasons:  (1) Plaintiffs engage in impermissible "group pleading" and (2) Plaintiffs' fail to specify "the who, what, when, where, and how" of the alleged omission" and likewise fail to establish that LG Michigan had any duty to disclose. <u>Miller</u>, 2018 WL 2740240, *11.

### a.   Plaintiffs' Allegations Fail, Because They Are Impermissible "Group Pleading" Rather Than <u>Specific</u> Allegations Against LG Michigan

The Sixth Circuit has long held that "general averments of fraud attributed to 'the defendants'" do not satisfy Rule 9(b).  <u>See</u> <u>Hoover v. Langston Equip.</u>, 958 F.2d 742, 745 (6th Cir. 1992).  In <u>Hoover</u>, for example, the Sixth Circuit affirmed dismissal under Rule 9(b), because while "[t]he complaint identifies relationships between various of the defendants . . . it alleges misrepresentations without sufficiently identifying which defendants made them."  <u>Id.</u>  This failure meant that "[t]he complaint does not enable a particular defendant to determine with what it is charged."  <u>Id.</u>; <u>accord</u> <u>Branhan v. Mercy Health</u>, 1999 WL 618018, *2 (6th Cir. 1999) (affirming dismissal under Rule 9(b), "because plaintiff's allegations are based on generalized accusations of wrongdoing attributed to 'defendants'"); <u>Drake v. Toyota</u>, 2020 WL 7040125, *10 (C.D. Cal. 2020).

<u>Drake</u> is directly on point and illustrates why Plaintiffs' group pleading fails. <u>See</u> <u>Drake</u>, 2020 WL 7040125, *10-11.  In <u>Drake</u>, the plaintiffs referred "almost exclusively" to three separate defendant collectively as "Toyota," rather than

17

differentiating among defendants.  Id. *10.  Applying the same standards set forth by the Sixth Circuit, however, the court in Drake dismissed the claims:

> For each of the six causes of action that sound in fraud, there is no delineation between the actions of individual defendants but, instead, all allegations are made against the generic collective entity "Toyota" or "Defendants."  Thus, the allegations within each cause of action fail[] to notify each [d]efendant of the particular allegations against them or specify what impermissible acts they have been accused of.

Id.  Moreover, allegations that the defendants had a relationship with each other, communicated about "all aspects of the Toyota products" and made decisions jointly could not save the complaint in Drake, because such "sweeping allegations" were conclusory and lacked any specificity as to each defendant.  Id. *10-11.

In this case, the substantive claims against LG Michigan in the "Factual Allegations" section of the Amended Complaint (ACC ¶¶ 303-402) and in the actual counts (id. ¶¶ 403-1335) consist solely of generalized group allegations against all "Defendants" or "LG" or the "LG Defendants."  Indeed, the only specific allegations against LG Michigan in the 319 pages of the Amended Complaint relate to (1) LG Michigan's place of business in Holland, Michigan (id. ¶¶ 23, 26, 290, 292); (2) its incorporation in Delaware (id. ¶ 290); (3) the fact it is a wholly-owned subsidiary of LG Energy Solution, Ltd. (id. ¶ 291); and (4) "in connection with" LG Chem, Inc. and LG Energy Solution, Ltd., it purportedly "designs, produces, and manufactures the large lithium-ion polymer battery cells and packs for electric vehicles" (id. ¶ 293).

There is, however, nothing more in the Amended Complaint concerning LG Michigan's role in the design and manufacture of the batteries, its place in the chain

of production, when it was actually producing battery components for direct suppliers to GM, whether it had any knowledge of an alleged battery defect, whether the alleged defect has anything to do with LG Michigan or whether LG Michigan had any knowledge of the Bolt fires, the NHTSA notices or GM's recall.  See ACC ¶ 365.  But see Hoover, 958 F.2d at 745 (Plaintiffs must "allege[] with specificity who had made particular misrepresentations").  And the fact Plaintiffs generally allege a relationship among the "LG Defendants" or between the "LG Defendants" and GM (see ACC ¶¶ 309-11), does not begin to cure these deficiencies.  See, e.g., id.; Drake, 2020 WL 7040125, *10; Oro Cap. Advisors v. Borror Constr., 2020 WL 4000974, *5 (S.D. Ohio 2020).  Ultimately, the Amended Complaint contains nothing but impermissible group pleading, which under Hoover and its progeny does not satisfy Rule 9(b).  See Hoover, 958 F.2d at 745; Branhan, 1999 WL 618018, *2. For this reason alone, all counts against LG Michigan should be dismissed.  See id.

### b. Plaintiffs' Allegations Against LG Michigan Further Fail, Because They Contain None Of The Specificity Required By Rule 9(b)

These same shortcomings demonstrate that the counts against LG Michigan further fail, because they do not set forth "the who, what, when, where, and how" of the alleged fraud, either for affirmative statements or alleged omissions.  Miller, 2018 WL 2740240, *11.

### (1) Affirmative Statements

With respect to the affirmative statements Plaintiffs claim were made, they have to allege what the statement was, when it was made, by whom and that Plaintiffs relied on it to their detriment.  See disc. supra at 14-15 (citing cases).  But Plaintiffs allege nothing of the sort with respect to LG Michigan, nor could they.

19

Instead, Plaintiffs make general allegations that in "advertisements and public statements" GM or "Defendants" purportedly misrepresented the ability to safely charge Bolt vehicles to travel for a range of 238 miles.  See, e.g., ACC ¶¶ 320, 324, 415, 418, 421, 467, 617, 677, 693, 817, 876, 1176, 1280.  Plaintiffs never allege, however, that LG Michigan made public statements or collaborated with GM or any other Defendant in any advertising or public-facing statements, and the nature of LG Michigan and its limited role with respect to the manufacture of parts for the vehicles in question makes it abundantly clear LG Michigan had no role with respect to communications with prospective customers.  See id. ¶¶ 77, 198 (asserting conversations Plaintiffs had with GM); id. ¶¶ 319-22 (listing examples of GM's advertisements); id. ¶¶ 366-400 (alleging facts about recalls GM issued).  But because the Amended Complaint does not identify a single statement LG Michigan is alleged to have made to Plaintiffs, all claims against LG Michigan based on allegations of affirmative misrepresentations fail under Rule 9(b).[16]  See Hoover, 958 F.2d at 745.[17]

---

[16] This includes claims asserted in Counts 6, 11, 12, 19, 24, 25, 31, 36, 41, 46, 52, 57, 62, 67 and 77.  See ACC ¶¶ 463-76, 519-43, 612-29, 674-704, 751-73, 811-26, 871-87, 934-46, 987-1006, 1047-60, 1101-21, 1170-87, 1233-41, 1274-90.

[17] In addition to not alleging an affirmative misrepresentation made by LG Michigan, Plaintiffs fail to allege that they relied on any statement made by LG Michigan or that any such reliance caused them damage, which is also fatal to all their claims.  See Chapman, 531 F. Supp. 3d at 1285-86, 1300.  This lack of necessary causation and reliance allegations is addressed in detail by LG Electronics, and LG Michigan incorporates by reference those arguments here.  See LG Electronics' Mem. in Supp. at Section II.

### (2)  Alleged Omissions

To satisfy Rule 9(b) for allegations of fraudulent omission or concealment, Plaintiffs must allege LG Michigan knew of the alleged battery defect, when and how it gained this knowledge, that it intentionally withheld this knowledge from Plaintiffs, that such an omission from LG Michigan deceived the Plaintiffs and then set forth why LG Michigan had a duty to disclose this information to Plaintiffs.  See, e.g., disc. supra at 14-15 (citing cases); Flores, 2021 WL 1122216, *18-22.

Just months ago, the Sixth Circuit affirmed in Smith the dismissal of state fraudulent concealment claims under Rule 9(b) in a nearly identical situation.  See Smith, 988 F.3d at 886.  The court in Smith held that plaintiffs had not sufficiently alleged that GM possessed knowledge of or fraudulently concealed "a dangerous defect."  Id. at 883.  And even though the plaintiffs in Smith had identified an actual defect in the vehicles at issue, their allegations at best supported the notion that GM "could have theoretically known about the flaw," which is insufficient.  Id. at 884. But even allegations concerning "pre-release testing, customer complaints made to the NHTSA and GM dealers, and increased warranty claims" did not sufficiently plead GM's knowledge, because "these factual allegations do not rise above mere speculation and recitation of legal claims."[18]  Id.

---

[18] Regarding "239 NHTSA safety complaints," the court in Smith explained that the "[p]laintiffs only offered 'information and belief' that GM knew of the complaints," which was insufficient under Rule 9(b)'s requirement that allegations of fraud be pled with particularly, not based on conclusory and speculative assertions.  Smith, 988 F.3d at 885; accord Walton v. Grammer Indus., 2021 WL 4458761, *6 (E.D. Mich. 2021).

In this case, the allegations of fraudulent omission are even more tenuous than in <u>Smith</u>, which dealt with the vehicle manufacturer, rather than a component manufacturer like LG Michigan that only provides parts to a supplier to the vehicle manufacturer that is itself not named in the Amended Complaint.  To establish the purported knowledge of the alleged battery defect of LG Michigan and the other "LG Defendants," however, Plaintiffs reference complaints to <u>NHTSA</u>, customer complaints to <u>GM</u>, warranty claims filed with authorized GM <u>dealers</u> and certain "bulletins" or other communication from <u>GM</u>.  <u>See</u> ACC ¶¶ 337-57.  But under <u>Smith</u>, none of this satisfies Rule 9(b) with respect to LG Michigan, because these allegations do not go beyond mere speculation that LG Michigan <u>could</u> have also known of the alleged defect.  <u>See</u> <u>Smith</u>, 988 F.3d at 883-85; <u>Miller</u>, 2018 WL 2740240, *13 (one defendant's knowledge of defect cannot be inferred from another entity's product recall); <u>Wozniak</u>, 2019 WL 108845, *3 ("Plaintiffs' general assertions of [d]efendant's knowledge without any alleged facts that [d]efendant was even aware of the [NHTSA] complaints do not rise above mere speculation").[19]

Nor do Plaintiffs plead facts sufficient to show when LG Michigan knew of the alleged defect or that it intentionally withheld this knowledge.  Plaintiffs allege, for example, that "LG has been GM's partner in developing and manufacturing the Bolt since its inception, and then in discovering and investigating the Battery Defect," but this is conclusory at best with respect to <u>any</u> LG entity, let alone

---

[19] Plaintiffs likewise do not even attempt to allege how LG Michigan possibly could have or should have known of alleged defects in battery cells that it did not manufacture for Model Years 2017 and 2018.

sufficient with respect to LG Michigan in particular.  See ACC ¶ 361.[20]  Finally, the allegation "GM has confirmed that it is working with 'LG' to rectify the cause of these defect [sic]" and carry out the product recall is again not specific to LG Michigan, contains no date allegation and quotes an article dated August 27, 2021 as support, a date well after each Plaintiff purchased his or her vehicle, meaning they could not have relied on such statements in their purchasing decisions.  Id. ¶ 364.[21] This is also insufficient.  See, e.g., Miller, 2018 WL 2740240, *13-14.

Finally, the Amended Complaint says nothing about what role (if any) LG Michigan had in the production of battery cells throughout the class period and whether the alleged defect occurred as part of LG Michigan's manufacturing, which only began in mid-2018.   Nor does the Amended Complaint allege that LG Michigan—as a component-part supplier with no relationship to Plaintiffs—had a "duty to disclose" to the Plaintiffs.  See Miller, 2018 WL 2740240, *11.[22]  And for

---

[20] Regarding the alleged "strategic partnership" entered into in October 2015 "to expand and lead sales in the electric vehicle market," that was between GM and LG Electronics, not LG Michigan, and it again says nothing about who knew what about the alleged defect and when.  See ACC ¶¶ 362-63.

[21] To support their "knowledge" claim, Plaintiffs also allege that "GM has been aware of Battery-related problems in the Bolt since at least late 2016."  ACC ¶ 336. Setting aside, however, the fact this is a conclusory allegation that has no bearing on the knowledge of LG Michigan (if any) of any defect in the finished vehicles, the alleged defect GM allegedly knew about in late 2016 (which caused loss of propulsion) is different from the defect (which caused thermal events) of which Plaintiffs now complain.  Compare id. ¶ 337, with id. ¶ 387.  But knowledge of an alleged loss of propulsion cannot plausibly impute knowledge of the alleged thermal event defect which is at issue here.  See Miller, 2018 WL 2740240, *14.

[22] None of these deficiencies are cured in the counts alleging fraudulent concealment or violations of state consumer protection laws based on fraudulent omissions.  See generally ACC Counts 3, 6, 9, 11, 12, 18, 19, 22, 24, 25, 28, 30, 31, 34, 36, 39, 41, 44, 46, 49, 51, 52, 55, 57, 60, 62, 65, 67.  These counts merely repeat over and over again the same generalized aversions concerning the supposed duty of "Defendants"

all of these reasons, none of the counts against LG Michigan based on allegations of

fraudulent omission or concealment satisfy the requirements of Rule 9(b).[23]

### C. The Fraudulent Concealment Claims And Several Of The State Statutory Claims Against LG Michigan Should Also Be Dismissed For Failure To State A Claim

Almost all of Plaintiffs' claims also fail to satisfy Rule 12(b)(6), because they

fail as a matter of law to plausibly allege a claim against LG Michigan.  See, e.g.,

Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007).  Those claims should be dismissed

for the reasons stated below.  See disc. infra at 24-39.

### 1. All Of Plaintiffs' Common-Law Fraudulent Concealment Claims Fail Under Rule 12(b)(6)

All of Plaintiffs' common-law fraud claims fail to state a claim upon which

relief can be granted, because (1) LG Michigan did not have a duty to disclose any

information to Plaintiffs and/or (2) the economic loss doctrine bars Plaintiffs from

seeking recovery only for economic losses.  See disc. infra at 25-31.[24]

---

to disclose, that "Defendants" failed to disclose the alleged battery defect and that Plaintiffs relied on this omission.  See id.

[23] These include Counts 3, 6, 9, 11, 12, 18, 19, 22, 24, 25, 28, 30, 31, 34, 36, 39, 41, 44, 46, 49, 51, 52, 55, 57, 60, 62, 65, 67, 70, 72, 75, 77 and 80.  See ACC ¶¶ 433-442, 463-76, 501-13, 519-43, 601-29, 658-68, 674-704, 735-45, 751-73, 795-805, 811-26, 855-65, 871-87, 917-28, 934-46, 971-81, 987-98, 999-1006, 1031-41, 1047-60, 1088-95, 1101-21, 1154-64, 1170-87, 1220-27, 1233-41, 1261-68, 1274-90.

[24] GM's motion to dismiss provides additional arguments as to why this Court should find no duty to disclose under Michigan, Texas and Wisconsin law, and LG Michigan incorporates those arguments herein.  See GM's Mem. in Supp. (Dkt. 36) at 24-25; see also MacDonald v. T.M. Cooley L. Sch., 724 F.3d 654, 666 (6th Cir. 2013); Naparala v. Pella, 153 F. Supp. 3d 884, 892-93 (D.S.C. 2015).  Further, GM argues that (1) Count 18 should be dismissed as to Plaintiff Kuchar and (2) Count 39 should be dismissed in its entirety under Michigan's choice of law principles; LG Michigan also incorporates those arguments herein.  See GM's Mem. in Supp. (Dkt. 36) at 26-27; Withrow, 2021 WL 2529847, *7.

### a. Plaintiffs Do Not And Cannot Allege That LG Michigan Had A Common Law Duty To Disclose Any Purported Defect

While the common law fraudulent concealment claim under Oregon law is preempted (see, e.g., Chapman, 531 F. Supp. 3d at 1299 (dismissing as preempted similar claim against GM)), all of the other common law fraudulent concealment claims asserted against LG Michigan fail as a matter of law for lack of a duty to disclose. See, e.g., In re Volkswagen, 467 F. Supp. 3d 849, 860 (N.D. Cal. 2020).[25] To state a claim for fraudulent concealment, a plaintiff must establish that the defendant "had a duty to disclose." See, e.g., Chapman, 531 F. Supp. 3d at 1285-86. But absent any relationship with Plaintiffs or absent class members (and none is alleged nor did any such relationship exist), LG Michigan had no duty to disclose as a matter of law. See, e.g., In re Volkswagen, 467 F. Supp. 3d at 860.

---

[25] In Chapman, the Court found that GM had a duty to disclose in Florida, Illinois, Michigan, New York and Virginia. See Chapman, 531 F. Supp. 3d at 1291-96. But LG Michigan is in a meaningfully different position than GM was in that case. See ACC ¶ 310. LG Michigan is a component manufacturer to a direct supplier to GM, and unlike GM, has no interaction with the end consumer. See, e.g., Flynn v. FCA, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (explaining a "duty to disclose arises if plaintiff and defendant are in a fiduciary or confidential relationship" or some other "special trust relationship" and rejecting suggestion that any such relationship existed between an end user and a component manufacturer); Hanson Hous. Auth. v. Dryvit Sys., 560 N.E.2d 1290, 1291, 1293 (Mass. 1990) (finding no fraudulent concealment for a component manufacturer not involved in installation of their product on a house); see also ACC ¶¶ 75, 77, 103, 198, 319-22 (alleging communications between GM and Plaintiffs). Indeed, the cases cited in Chapman to support the Court's holding with respect to Florida, Illinois, Michigan, New York and Virginia all involve original equipment manufacturers, and at least one specifically rejected a duty to disclose where the plaintiff and defendant were not parties to a contract. See Chapman, 531 F. Supp. 3d at 1291-96; see also, e.g., Glidden v. Jandernoa, 5 F. Supp. 2d 541, 554 (W.D. Mich. 1998) (explaining that because neither of the Banks "was a party to the negotiations or contract for the" fraudulent sale, "the Banks . . . did not have a duty . . . to make any disclosure to" the plaintiff).

Plaintiffs claim the "LG Defendants" collectively had a duty to disclose "that charging the Class Vehicles to 100% capacity could cause combustion and fire," because they purportedly "possessed exclusive knowledge" of this information. ACC ¶¶ 438-39.  Plaintiffs then allege in their 14 counts of state-specific fraud by concealment that "Defendants" had a duty to disclose "the true nature of the Defective battery." Id. ¶¶ 505-07, 603-05, 660-62, 737-39, 797-99, 857-59, 920-22, 1033-35, 1156-58, 1322-24; id. ¶¶ 973-76, 1090-93, 1222-25, 1263-66 (claiming "Defendants" allegedly "suppressed material facts concerning the safety of the Class Vehicles" over which they had "exclusive control").

The laws of the various states, however, require a plaintiff to have a relationship with a defendant before a duty to disclose can be imposed on the defendant.  See, e.g., Morris Aviation v. Diamond Aircraft, 536 F. App'x 558, 568-69 (6th Cir. 2013).[26]  For example, Judge Breyer recently explained that the circumstances under which a duty to disclose arises under California law all "presuppose[] the existence of some [ ] relationship between the plaintiff and defendant in which a duty to disclose can arise." See In re Volkswagen, 467 F. Supp. 3d at 860.  That relationship must either be a fiduciary relationship or a "transactional" one. Id.; see also disc. supra at 25 n.25.[27]

---

[26] A list of states for which fraudulent concealment claims are raised and which require a relationship between a plaintiff and defendant before imposing a duty to disclose is attached hereto as Exhibit B for the Court's reference.

[27] Other jurisdictions look to the Second Restatement of Torts, which similarly premises a duty to disclose on the existence of a transactional relationship between the plaintiff and the defendant. See, e.g., Resort Funding v. Canyonview Dev., 2012 WL 3760440, *10-11 (Ariz. Ct. App. 2012) (Arizona law) (citing Restatement (Second) of Torts §§ 550 cmt. b, 551(1)); disc. supra at 25 n.25.

In this case, Plaintiffs are unable to allege they had a relationship or transacted business with LG Michigan.  <u>See</u> ACC ¶ 293 (alleging relationship among the LG entities); <u>id.</u> ¶¶ 309-11 (alleging relationship between LG entities collectively and GM); <u>id.</u> ¶¶ 281-83 (alleging relationship between consumers and GM).  Plaintiffs allege only that the "LG Defendants" collectively supplied components to GM for GM to use in manufacturing Bolt vehicles.  <u>See id.</u> ¶ 310.  Plaintiffs do not allege, however, that they ever transacted business with LG Michigan or that LG Michigan ever advertised, marketed or sold to them the Bolt vehicles (or any component thereof).  <u>See</u>, <u>e.g.</u>, <u>id.</u> ¶¶ 28, 35, 43, 51, 68, 81, 89, 97, 111, 119, 131, 146, 154, 163, 171, 180, 188, 204, 220, 229, 239, 247, 258, 273 (alleging purchases from Chevy dealers); <u>id.</u> ¶ 75, 103 (alleging purchase from GM entities); <u>id.</u> ¶¶ 319-22 (alleging GM's advertising of the Bolt); <u>id.</u> ¶¶ 77, 198 (alleging certain Plaintiffs considered statements by GM in deciding to purchase their vehicles).[28]

Because LG Michigan had no relationship with the Plaintiffs (nor could it possibly have had one prior to mid-2018), Plaintiffs' common law claims for fraudulent concealment in Counts 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 65, 70, 75 and

---

[28] Although some states find a duty to disclose where a defendant previously stated a half truth or a partial or ambiguous statement that might be misleading without clarification or where a defendant actively concealed a material fact, a plaintiff in those states must still plead some affirmative act by the defendant <u>before</u> an omission is actionable.  <u>See</u>, <u>e.g.</u>, <u>Costa v. FCA</u>, 2021 WL 2338963, *12 (D. Mass. 2021) (plaintiff must "identif[y] a [defendant's] partial or ambiguous statement of fact" before finding a duty to disclose); <u>Yeti Enters. v. Tang</u>, 2017 WL 3478484, *6 (D. Or. 2017) (a finding of active concealment requires "words or acts which create a false impression covering up the truth"); <u>R. Prasad Indus. v. Flat Irons Env't Sols.</u>, 2015 WL 13388176, *10-11 (D. Ariz. 2015) (requiring some affirmative action to constitute fraudulent concealment).  And no such allegations have been made or could be made here with respect to LG Michigan.  <u>See</u> ACC ¶¶ 319-22.

80 should be dismissed.[29]   See, e.g., In re Volkswagen, 467 F. Supp. 3d at 861 (dismissing fraud claim with prejudice for lack of relationship and thus lack of duty to disclose); see also, e.g., Jefferson v. Collins, 905 F. Supp. 2d 269, 287 (D.D.C. 2012); In re Rumsey Land, 944 F.3d 1259, 1272-74 (10th Cir. 2019).

### b.   The Economic Loss Rule Bars Plaintiffs' Common Law Fraud Claims In Arizona, California, Florida, Michigan, Texas And Wisconsin[30]

The economic loss rule maintains "a distinction between damage remedies for breach of contract and for tort" and cabins a plaintiff's legal remedies for economic injuries arising from a contractual bargain to contract law.   See, e.g., Drake, 2020 WL 7040125, *12.   As the U.S. Supreme Court recognized in Transamerica, a claim for economic injury—including injury to or failure of the product itself—"is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain," with the result that the economic loss rule bars many of

---

[29] Moreover, Plaintiffs in a putative class action cannot show they have been injured under the laws of states where they neither bought cars nor reside.   See, e.g., Withrow, 2021 WL 2529847, *9; McKee, 376 F. Supp. 3d at 755-56.   Nor do Plaintiffs try to do so.   See ACC ¶¶ 27-279.   But because Plaintiffs fail to state a claim under the laws of the states where they allege to have been injured and do not allege injury in any other states, they cannot state a viable nationwide class claim and lack standing to do so.   See, e.g., Lewis v. Casey, 518 U.S. 343, 357-58 (1996); Crosby v. Bowater, 382 F.3d 587, 597 (6th Cir. 2004) (where "federal jurisdiction never attached to" a named plaintiff's claim, "there is no class action").   These points are more fully addressed in GM's motion to strike, which LG Michigan joins for purposes of striking Count 3 of the Amended Complaint (alleging common law fraudulent concealment and fraud by omission against "LG Defendants" on behalf of a nationwide class).   See GM's Mem. in Supp. (Dkt. 37) at 5-22; see also Withrow, 2021 WL 2529847, *5-10 (holding that named plaintiffs lacked Article III standing to assert claims on behalf of a proposed nationwide class).

[30] LG Michigan further incorporates by reference the arguments made by GM with respect to the applicability of the economic loss rule to Plaintiffs' fraudulent concealment claims under Illinois and New York law.   See GM's Mem. in Supp. (Dkt. 35) at 25-26.

28

the claims asserted in the Amended Complaint. <u>E. River v. Transamerica</u>, 476 U.S. 858, 867-69 (1986).

Arizona, California, Florida, Michigan, Texas and Wisconsin all apply the economic loss rule to prohibit tort recovery for economic damages caused by fraud when there is no personal injury or damage to property <u>other</u> <u>than</u> the product at issue.   For example, in <u>Tietsworth v. Harley-Davidson</u>, 677 N.W.2d 233 (Wis. 2004), the court dismissed under Wisconsin law fraud claims relating to defective motorcycle engines, because the "fraud alleged here plainly pertains to the character and quality of the goods that are the subject matter of the contract," such that "the plaintiffs have warranty remedies for the alleged defects." <u>Id.</u> at 244; <u>see also</u> <u>Barrio</u> <u>v. Gisa</u>, 2020 WL 6081495, *2 (D. Ariz. 2020) (dismissing Arizona fraud claims under economic loss rule); <u>Cardenas v. Toyota</u>, 418 F. Supp. 3d 1090, 1103-04 (S.D. Fla. 2019) (granting dismissal of Florida fraudulent concealment claims under economic loss rule); <u>TIBCO v. GFS</u>, 2003 WL 21683850, *3-5 (W.D. Mich. 2003) (dismissing Michigan silent fraud and misrepresentation claims under economic loss rule); <u>Chapman</u>, 531 F. Supp. 3d at 1297 (dismissing California and Michigan fraudulent concealment claims under economic loss rule); <u>Robinson v. GM</u>, 2021 WL 3036353, *11 (D. Del. 2011) (dismissing Michigan, New York and Texas fraudulent concealment claims under economic loss rule); <u>Drake</u>, 2020 WL 7040125, *12 (same – California).[31]   Moreover, courts in these states extend the

---

[31] Although California law does not apply the economic loss rule to claims involving <u>affirmative</u> representations, the rule <u>does</u> prevent common law fraud claims for economic losses that are remediable under warranty when the alleged fraud is based entirely on an omission. <u>See</u> <u>Drake</u>, 2020 WL 7040125, *12. In this case, however, Plaintiffs allege common law fraud by concealment based exclusively on alleged

economic loss rule to prohibit tort claims against component suppliers when the alleged injury is governed by a plaintiff's contract with or warranty from the manufacturer of the final product. See, e.g., Casa Clara Condo. Ass'n v. Charley Toppino & Sons, 620 So.2d 1244, 1247-48 (Fla. 1993); Cincinnati Ins. v. AM Int'l, 591 N.W.2d 869, 873 (Wis. Ct. App. 1999); Quest Diagnostics v. MCI, 656 N.W.2d 858, 866 (Mich. Ct. App. 2002); Pugh v. Gen. Terrazzo Supplies, 243 S.W.3d 84, 92 (Tex. Ct. App. 2007).

In the Amended Complaint, Plaintiffs in the Arizona, California, Florida, Michigan, Texas and Wisconsin Subclasses assert common law claims of fraud by concealment and seek the "lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles." See ACC ¶¶ 512, 610, 667, 797, 1163, 1329. These are economic injuries, however, and the economic loss rule operates to bar these claims as a matter of law.[32] See

material omissions, and the economic loss rule thus bars the claim under California law against LG Michigan. See ACC ¶ 610.

[32] The Plaintiffs in the Arizona, Florida, Michigan, Texas and Wisconsin Subclasses do not allege any personal injury or property damage whatsoever. See ACC ¶¶ 33, 49, 66, 152, 186, 195, 202, 210, 218, 256, 263, 271. California Plaintiffs Chitra and Chung do allege that their Class Vehicles experienced a fire, but even if damages for this injury were sought through their fraud by concealment claim (which it does not appear to be), such damage is not damage to "other property" but, instead, to the product that is the subject of the lawsuit, and a claim of fraud by concealment for such damage would similarly be barred under California law by the economic loss rule. See, e.g., In re Sony, 2010 WL 4262191, *7 (S.D. Cal. 2010) (applying economic loss rule to claims for "damage to the notebooks from the trackpad defect"). Moreover, only California Plaintiff Chung alleges physical injury to other property. See ACC ¶ 78. She does not, however, appear to seek recovery for this alleged damage through her fraud by concealment claim. See id. ¶ 610. Additionally, Plaintiffs in the New York and Texas Subclasses do not assert that the alleged defect "manifested" in their vehicles (i.e., that the defect was physically present or came to fruition in their vehicles). See id. ¶¶ 49, 178, 202, 256; see, e.g.,

Drake, 2020 WL 7040125, *12; Barrio, 2020 WL 6081495, *2; Del Mar Land Partners v. Stanley Consults., 2012 WL 1019066, *3 (D. Ariz. 2012); Cardenas, 418 F. Supp. 3d at 1103-04; TIBCO, 2003 WL 21683850, *3-5; Chapman, 531 F. Supp. 3d at 1297; Robinson, 2021 WL 3036353, *11; Tietsworth, 677 N.W.2d at 244.

### 2. Various Of Plaintiffs' Claims Under State Consumer Protection Statutes Likewise Fail

For the reasons stated below, Plaintiffs' claims under the consumer protection laws of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan, Texas and Virginia likewise fail.  See disc. infra at 31-39.

### a. The Texas DTPA And Virginia CPA Claims Are Not Viable Against An Upstream Component-Part Supplier

Members of the Texas Subclass and Virginia Subclass have no viable claim under the Texas Deceptive Trade Practices Act ("DTPA") (see ACC Count 62) or the Virginia Consumer Protection Act ("VCPA") (see id. Count 67), respectively. See Tex. Bus. & Com. Code § 17.46; Va. Code Ann. § 59.1-200.  The DTPA was created "to protect consumers in consumer transactions."  See, e.g., Amstadt v. U.S. Brass, 919 S.W.2d 644, 649 (Tex. 1996).  To be actionable, an alleged misrepresentation must occur "in connection with the plaintiffs' purchase" of the product.  See id. at 651.  Liability under the DTPA, however, does not extend to upstream suppliers that do not directly transact with the end consumer.  See id. at

---

Frank v. DaimlerChrysler, 741 N.Y.S.2d 9, 13-17 (2002).  Under New York and Texas law, however, without manifestation, there can be no injury.  See Frank, 741 N.Y.S.2d at 13-17; Everett v. TK-Taito, 178 S.W.3d 844, 858-59 (Tex. App. 2005). This argument is set forth in more detail by GM, and LG Michigan incorporates by reference the arguments made by GM with respect to Plaintiffs' failure to show manifestation vis-à-vis Counts 51, 55, 62 and 65 of the Amended Complaint.  See GM's Mem. in Supp. (Dkt. 36) at 23-24.

649; <u>Chavez v. Ford</u>, 2018 WL 6190601, *3 (W.D. Tex. 2018) (DTPA claim "cannot be brought against remote, or 'upstream,' manufacturers and suppliers that <u>never directly transacted</u> with the plaintiff-consumer.").

Liability under the VCPA likewise does not extend to upstream suppliers. <u>See</u>, <u>e.g.</u>, <u>In re Chinese Drywall Cases</u>, 2010 WL 7378659, *12-13 (2010). Under Virginia law, a "sale between commercial parties of a good intended for use as a component part . . . is not a 'consumer transaction' within the meaning of the VCPA." <u>Id.</u> *12.

Plaintiffs plead (at most) that LG Michigan is an upstream supplier. <u>See</u> ACC ¶ 310 (alleging "LG" "supplied more than 10 components for the Bolt" vehicles). But even assuming Plaintiffs sufficiently alleged LG Michigan's role as an upstream supplier, they do not allege that LG Michigan made any misrepresentations to them in connection with their purchases. <u>See</u>, <u>e.g.</u>, <u>id.</u> ¶¶ 44, 198, 248 (alleging Plaintiffs' review of statements made only by GM, not LG Michigan); <u>id.</u> ¶¶ 312-25 (alleging statements made only by GM when discussing "Defendants'" marketing representations).

Indeed, members of the Texas and Virginia Subclasses do not allege they transacted with LG Michigan at all. <u>See</u> ACC ¶¶ 42-49, 118-29, 196-202. They also do not allege that LG Michigan "had . . . control over the manufacture" of the Bolt or any "influence over the terms of the consumers' purchases." <u>See</u> <u>Amstadt</u>, 919 S.W.2d at 651. As such, the claims under the DTPA and VCPA fail against LG Michigan. <u>See</u> <u>id.</u> at 649-51; <u>Chavez</u>, 2018 WL 6190601, *4; <u>In re Chinese Drywall Cases</u>, 2010 WL 7378659, *13.

### b. Plaintiffs' Claims Under The Consumer Protection Statutes Of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan And Virginia Are Statutorily Barred

The consumer protection statutes of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan and Virginia do not apply to acts and practices that are regulated and authorized by state and/or federal law. See, e.g., Cyr v. Ford, 2019 WL 7206100, *1-3 (Mich. Ct. App. 2019). For example, the Michigan Consumer Protection Act ("MCPA") expressly states that it "does not apply to . . . [a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). The consumer protection statutes in Florida, Georgia, Illinois, Massachusetts and Virginia likewise exempt conduct that is permitted, authorized or required by state or federal law:

- The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1).

- The Georgia's Fair Business Practices Act ("GFBPA") does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." Ga. Code § 10-1-396(1).

- The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1).

- The Massachusetts consumer protection statute does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." Mass. Gen. Laws ch. 93A § 3.

- The Virginia Consumer Protection Act ("VCPA") does not apply to "[a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the

33

formal advisory opinions of any regulatory body or official of this Commonwealth or the United States." Va. Code § 59.1-199(A).

Moreover, the Arizona Consumer Fraud Act ("ACFA") carves out a similar exception related to advertising and does not apply to "any advertisement which is subject to and complies with the rules and regulations of, and the statutes administered by the [F]ederal [T]rade [C]ommission." Ariz. Rev. Stat. § 44-1523.

### (1)   The MCPA Claim Is Statutorily Barred

Claims under the MCPA based on conduct related to the manufacture, sale or advertising of automobiles fail as a matter of law, because they involve conduct regulated or authorized by federal law, as this Court recently noted. See Chapman, 531 F. Supp. 3d at 1301-02; Rosenbaum v. Toyota, 2016 WL 9775018, *3 (E.D. Mich. 2016), aff'd, 708 F. App'x 242 (6th Cir. 2017). In discussing Michigan's "broad" exemption, this Court dismissed in Chapman an MCPA claim based on an allegedly defective fuel pump in GM vehicles, finding "automobile sales" are "specifically authorized" under "various state and federal laws," such that they qualify for the exemption under the MCPA. Chapman, 531 F. Supp. 3d at 1301-02; accord Gant v. Ford, 517 F. Supp. 3d 707, 719-20 (E.D. Mich. 2021).

In Chapman, this Court relied on the finding of the Michigan Court of Appeals in Cyr that "the automotive industry is a highly regulated one" subject to an "extensive regulatory and licensing framework" under federal and state law that "sanctions the manufacture, sale, and lease of automobiles." Cyr, 2019 WL 7206100, *2-3.[33] This regulatory framework, however, applies both to automobile

---

[33] Importantly, the court in Cyr made clear that the "relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized'" but, instead, "whether the general transaction is specifically authorized by law, regardless

manufacturers as well as suppliers of component parts.  See id. *3.  Under this framework, "the manufacture, sale, and lease of automobiles . . . are all conduct that is 'specifically authorized' under federal and state law" and thus fall within the express exemption of the MCPA.  See id. *2 (dismissing MCPA claims).[34]

Plaintiffs' MCPA claims in this case should likewise be dismissed.  See Rosenbaum, 2016 WL 9775018, *3.  Plaintiffs allege that "LG" supplies component parts for the Bolt, such that LG Michigan's alleged conduct would be regulated by federal law.  See ACC ¶ 310; Cyr, 2019 WL 7206100, *3 (citing 49 U.S.C. § 30102(a)(6)).  Plaintiffs further claim that the "Defendants" misrepresented the driving range of the Bolt and that the recall by GM supposedly decreases the useful range of the vehicles.  See ACC ¶¶ 10, 395, 467, 617, 677, 758, 876, 938, 1176.  But as Judge Friedman made clear in Rosenbaum, federal law expressly regulates the reporting of EPA estimates of driving range.  See Rosenbaum, 2016 WL 9775018, *3 (citing 16 C.F.R. § 259.2, which regulates the advertising of range estimates).  Indeed, Plaintiffs acknowledge that disclosure of a "vehicle's fuel economy" is "required by law" and that GM's advertising of the Bolt's range was regulated and

---

of whether the specific misconduct alleged is prohibited."  Cyr, 2019 WL 7206100, *2.

[34] Judge Friedman has similarly dismissed an MCPA claim based on allegations that Toyota misrepresented the mileage of the Prius, explaining that "the federal government regulates the advertising of miles-per-gallon estimates."  Rosenbaum, 2016 WL 9775018, *3 (citing 16 C.F.R. § 259.2 and noting "Michigan regulates how car wholesalers like Toyota advertise automobiles and . . . the content of general automobile advertisements").  In Rosenbaum, Judge Friedman held that "[i]n light of these laws and regulation, . . . both Toyota's advertising of the Prius and its miles-per-gallon estimate were explicitly sanctioned by federal and state law," and Toyota's "conduct [was] exempted" from the MCPA.  See id.

based on the "EPA-estimated 238 miles of range."  ACC ¶¶ 313, 319; see also id. ¶ 395.  But because the manufacture and sale of automobiles and component parts as well as the advertisement of the Bolt's driving range are heavily regulated by federal law, the claims made under the MCPA against LG Michigan should be dismissed.  See Chapman, 531 F. Supp. 3d at 1301-02; Cyr, 2019 WL 7206100, *2-3; Rosenbaum, 2016 WL 9775018, *3.

### (2)   Claims Under The Consumer Protection Statutes Of Arizona, Florida, Georgia, Illinois, Massachusetts And Virginia Are Likewise Barred

As recognized in Gant, where the language of a state's exemption to its consumer protection statute for conduct regulated by federal or state law tracks the language of the exemption under the MCPA, the exemptions should be interpreted in similar fashion.  See Gant, 517 F. Supp. 3d at 720.  In Gant, for example, Judge Cox dismissed an MCPA claim based on defects in Ford vehicles, explaining the challenged conduct—the sale of automobiles—"squarely qualifies for the exemption" in the MCPA.  Id. at 719.  The court in Gant also dismissed the claims under the Massachusetts statute, finding the exemption in the Massachusetts statute "closely track[ed]" the language of the MCPA, such that the challenged conduct fell within the Massachusetts statutory exemption.  Id. at 720.  This same result should obtain here for the claims under the Massachusetts statute.  See id.

Georgia's statutory exemption is likewise interpreted broadly, because the GFBPA was meant to "have a restricted application only to the unregulated consumer marketplace" and does "not apply in regulated areas of activity." Chancellor v. Gateway Lincoln-Mercury, 502 S.E.2d 799, 805 (Ga. Ct. App. 1998);

see also id. (holding that plaintiff's claim involving conduct regulated by a federal agency "falls outside the [G]FBPA").   Because the manufacture, sale and advertisement of automobiles are highly regulated under federal law, the Court should dismiss the GFBPA claim here.  See id.; disc. supra at 34-36.

Claims related to automobile advertising are also exempt under the FDUTPA and ICFA.  See, e.g., Brett v. Toyota, 2008 WL 4329876, *7 (M.D. Fla. 2008) ("The Defendant's practice of advertising the fuel economy estimates provided by the EPA is permitted by the rules and regulations of the [Federal Trade Commission ("FTC")] . . .  Thus, Section 501.212(1), Florida Statutes, specifically exempts that practice from claims under [the FDUTPA]."); Osman v. Ford, 833 N.E.2d 1011, 1022 (Ill. App. Ct. 2005) (affirming dismissal of ICFA claim, reasoning "Ford was 'authorized' by [federal law] to equip the Escort with a restraint system that [did] not utilize a manual lap belt" and thus claim fell outside the scope of the statute). Claims related to advertising authorized by the FTC are similarly exempt under Arizona law.   See 9A Ariz. Prac., Business Law Deskbook § 42:2 (2021 ed.) (explaining ACFA exempts "advertisements in compliance with rules and regulations of, and the statutes administered by[,] the [FTC]").

Virginia courts also have held that conduct authorized and regulated by federal law is "expressly excluded from the scope" of the VCPA.  See Ali v. Allergan, 2012 WL 3692396, *19 (E.D. Va. 2012) (dismissing VCPA claim with prejudice, because alleged advertising was "authorized and regulated by the FDA"); Ball v. Takeda Pharm., 963 F. Supp. 2d 497, 507-08 (E.D. Va. 2013) (explaining

37

VCPA "does not apply to federally regulated products" and dismissing VCPA claim with prejudice based on alleged false representations about product).

Indeed, all of these exemptions use similar language to the MCPA, and the analysis in <u>Chapman</u> thus governs and requires dismissal.  <u>See</u> <u>Gant</u>, 517 F. Supp. 3d at 720.  Plaintiffs' core contention is that "Defendants misrepresented through their <u>advertisements</u> and public statements that the Class Vehicles' batteries could be safely charged to enable the Vehicles to travel for a <u>reported</u> <u>range</u> of 238 miles on a single full charge."  <u>See</u> ACC ¶¶ 467 (ACFA), 617 (FDUTPA), 677 (GFBPA), 876 (Massachusetts), 1176 (VCPA); <u>id.</u> ¶¶ 758 (ICFA), 938 (MCPA).  The Court should, therefore, dismiss with prejudice Counts 6, 19, 24, 30, 41, 46 and 67.  <u>See</u> <u>Gant</u>, 517 F. Supp. 3d at 720; <u>Brett</u>, 2008 WL 4329876, *7 (citing 16 C.F.R. § 259.2); <u>Ali</u>, 2012 WL 3692396, *19; <u>see</u> <u>also</u> <u>Rosenbaum</u>, 2016 WL 9775018, *2-3.

### 3.    The GFBPA, VCPA and Virginia Common Law Fraud Claims Brought On Behalf Of A Proposed Class Are Not Permitted By State Law

Plaintiffs' claims for violations of the GFBPA and VCPA and for common law fraud under Virginia law are also not proper candidates for class treatment.  <u>See</u> ACC ¶¶ 674-88, 1170-87.  The GFBPA prohibits class claims.  <u>See</u> Ga. Code § 10-1-399(a) (prohibiting suit under GFBPA "in a representative capacity").  And as this Court has recognized, class claims asserted under the GFBPA should be dismissed. <u>See</u> <u>Chapman</u>, 531 F. Supp. 3d at 1301 (dismissing GFBPA claim in putative class action, because Georgia "do[es] not want consumer protection claims to be maintained as part of class actions").  Count 24 of the Amended Complaint should thus be dismissed.  <u>See</u> <u>id.</u>

Virginia law similarly does not permit class actions.  See, e.g., Casey v. Merck & Co., 722 S.E.2d 842, 846 (Va. 2012) ("Virginia jurisprudence does not recognize class actions.").  Accordingly, Judge Cox recently found that Virginia's ban on class actions operates to bar VCPA class claims in federal court.  See Flores, 2021 WL 1122216, *23-24.  As in Chapman, Judge Cox found in Flores that Virginia's bar on class actions was "substantive" in nature and thus "not displaced by Rule 23."  See id. *24; see also Chapman, 531 F. Supp. 3d at 1301.  And since Virginia's ban on class actions applies to all Virginia claims and is substantive in nature, the reasoning in Flores also applies equally to the claims made under Virginia common law for fraud.  In re Volkswagen, 2016 WL 10880209, *13-14 (Va. Cir. Ct. 2016).  The Court should thus dismiss the VCPA and common law fraud claims as well as the GFBPA claim.  See Flores, 2021 WL 1122216, *23-24; Chapman, 531 F. Supp. 3d at 1301.

## IV.  CONCLUSION

For the reasons set forth above, LG Michigan respectfully requests that the claims against LG Michigan in the Amended Complaint be dismissed in their entirety and with prejudice.  LG Michigan further requests such other relief as the Court deems appropriate.

Date:  December 17, 2021          Respectfully submitted,

*/s/ Mark S. Mester*
Mark S. Mester, One of the Attorneys for
Defendant LG Energy Solution
Michigan, Inc.

Mark S. Mester (Illinois Bar No. 6196140)
   mark.mester@lw.com
Robert C. Collins III (Illinois Bar No. 6304674)
   robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Jason R. Burt (D.C. Bar No. 980862)
   jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2021, I electronically filed a copy of the

foregoing paper with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

Dated:  December 17, 2021

*/s/  Mark S. Mester*
Mark S. Mester (Illinois Bar No. 6196140)
    mark.mester@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767