**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re Chevrolet Bolt EV Litigation | **No. 2:20-13256-TGB-CI**<br><br>Judge Terrence G. Berg<br>Magistrate Judge Curtis Ivy, Jr. |

## <u>MOTION TO DISMISS OF DEFENDANT LG ELECTRONICS U.S.A., INC.</u>

PLEASE TAKE NOTICE that, by its counsel, Defendant LG Electronics U.S.A., Inc. ("LGEUS") hereby moves to dismiss the Amended Consolidated Class Action Complaint ("FACC") of Plaintiffs Robin Altobelli, *et al.* (collectively, "Plaintiffs") in its entirety as against LGEUS and with prejudice pursuant to Fed. R. Civ. P. 9(b) for failure to plead with particularity and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds and legal authority for dismissing the FACC are set forth in the attached memorandum of law, and as addressed in that memorandum.

As required by Local Rule 7.1(a), counsel for LGEUS sought concurrence from Plaintiffs' counsel in this motion. Plaintiffs' counsel did not concur in the relief sought.

WHEREFORE, LGEUS respectfully requests that the Court issue an order granting LGEUS's motion to dismiss.  LGEUS respectfully requests such further and other relief as the Court deems appropriate.

Dated: December 17, 2021

By: /s/ A. Michael Palizzi
A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Tel. (313) 496-7645
Fax: (313) 496-7500
palizzi@millercanfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: 212-918-3000
F: 212-918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics U.S.A., Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re Chevrolet Bolt EV Litigation

**No. 2:20-13256-TGB-CI**

Judge Terrence G. Berg
Magistrate Judge Curtis Ivy, Jr.

## MEMORANDUM OF LAW IN SUPPORT OF
## LG ELECTRONICS U.S.A., INC.'S MOTION TO
## <u>DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

Dated: December 17, 2021

A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK
AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Tel. (313) 496-7645
Fax: (313) 496-7500
palizzi@millercanfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: 212-918-3000
F: 212-918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics*
*U.S.A., Inc.*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ......................................................................3

    A.    The Defendants.....................................................................3

    B.    GM Voluntarily Recalls the Chevrolet Bolt..........................4

    C.    The Plaintiffs File an Amended Complaint Against LGEUS and
        Other New Defendants Nine Months After Litigation Commenced ....6

LEGAL STANDARDS ...........................................................................7

ARGUMENT ..........................................................................................8

I.     PLAINTIFFS DO NOT PLEAD THE CLAIMS AGAINST LGEUS
      WITH THE PARTICULARITY REQUIRED BY RULE 9(B) ...................8

    A.    Plaintiffs Engage in Improper Group Pleading....................10

    B.    Plaintiffs' Affirmative Misrepresentation Assertions Are Meritless..13

    C.    Plaintiffs' Concealment Claims Fail ....................................14

        1.    LGEUS Did Not Know About the Alleged Defects When
             Plaintiffs Purchased Their Vehicles..........................15

            i.    LGEUS Did Not Know of the Alleged Battery Defects in
               the 2017–2019 Chevy Bolts Until November 2020 .......16

            ii.    Plaintiffs Cannot Establish LGEUS Knew of a Battery
               Defect in the 2020–2022 Chevy Bolts............................21

        2.    Certain Plaintiffs' Claims Fail For the Additional Reason That
             LGEUS Had No Duty to Make Any Disclosure to Them ........22

II.    PLAINTIFFS DO NOT PLEAD NECESSARY CAUSATION OR
      RELIANCE......................................................................................26

III.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS ..............32

IV.     PLAINTIFFS' ALLEGED INJURIES ARE MOOTED BY GM'S
        RECALL AND REPLACEMENT OF THE DEFECTIVE
        BATTERIES...................................................................................................33

CONCLUSION.........................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptive Micro Sys. LLC v. AdsLED, Inc.*,
    No. 11-668, 2011 WL 13217958 (E.D. Wis. Oct. 18, 2011) ..............................9

*Ali v. Allergan*,
    No. 12-00115, 2012 WL 3692396 (E.D. Va. 2012) ...........................................32

*In re All Pending Chinese Drywall Cases*,
    80 Va. Cir. 69 (Va. Cir. Ct. 2010) ......................................................................32

*In re Arizona Theranos, Inc., Litig.*,
    256 F. Supp. 3d 1009 (D. Ariz. 2017) ................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................7

*Barrio v. Gisa Invs. LLC*,
    No. 20-00991, 2020 WL 6081495 (D. Ariz. Oct. 15, 2020) ..............................32

*Beck v. FCA US LLC*,
    273 F. Supp. 3d 735 (E.D. Mich. 2017) .......................................................20, 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................7

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001)..................................................................................16

*U.S. ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*,
    No. 98–3127, 1999 WL 618018 (6th Cir. Aug. 5, 1999) ...................................12

*Brett v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 08-001168, 2008 WL 4329876 (M.D. Fla. 2008) .......................................32

*Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC*,
    481 Mass. 13 (2018) ...........................................................................................16

iii

*Burton v. R.J. Reynolds Tobacco Co.*,
884 F. Supp. 1515 (D. Kan. 1995).......................................................................8

*Carter v. Ethicon Inc.*,
No. 20-5672, 2021 WL 1893749 (W.D. Wash. May 11, 2021)...........................9

*Cataldo v. U.S. Steel Corp.*,
676 F.3d 542 (6th Cir. 2012) .........................................................................7, 10

*Chancellor v. Gateway Lincoln-Mercury, Inc.*,
502 S.E.2d 799 (Ga. Ct. App. 1998).................................................................32

*Chapman v. Gen. Motors LLC*,
531 F. Supp. 3d 1257 (E.D. Mich. 2021) ....................................................*passim*

*Chavez v. Ford Motor Co.*,
No. 18-00109, 2018 WL 6190601 (W.D. Tex. Sept. 26, 2018).......................32

*Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*,
893 N.E.2d 981 (Ill. App. Ct. 2008) .................................................................33

*Coffey v. Foamex L.P.*,
2 F.3d 157 (6th Cir. 1993) ..................................................................................9

*Coghlan v. Aquasport Marine Corp.*,
73 F. Supp. 2d 769 (S.D. Tex. 1999).................................................................33

*D.E.&J Ltd. P'ship v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003) ...........................................................11

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,
197 Wash. App. 875 (Wash. Ct. App. 2017).....................................................28

*Edwards-Astin v. Medtronic Minimed, Inc.*,
No. 08-103, 2008 WL 11319723 (N.D. Ga. June 4, 2008) .................................8

*Flores v. FCA US LLC*,
No. 20-10972, 2021 WL 1122216 (E.D. Mich. Mar. 24, 2021).................*passim*

*Flynn v. FCA*,
327 F.R.D. 206 (S.D. Ill. 2018) ........................................................................25

iv

*Frayman v. Douglas Elliman Realty, LLC*,
  515 F. Supp. 3d 1262 (S.D. Fla. 2021) ................................................27

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016) .......................................................37

*Galloway v. Priority Imports Richmond, LLC*,
  426 F. Supp. 3d 236 (E.D. Va. 2019) .................................................27

*Gant v. Ford Motor Co.*,
  517 F. Supp. 3d 707 (E.D. Mich. 2021) .............................................32

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on
  reconsideration*, No. 14-2543, 2017 WL 3443623 (S.D.N.Y. Aug.
  9, 2017) ...............................................................................................23

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ..............................................................................33

*Gershon v. Hertz Corp.*,
  215 A.D.2d 202 (1st Dep't 1995) .......................................................16

*Great N. Ins. Co. v. Amazon.com, Inc.*,
  524 F. Supp. 3d 852 (N.D. Ill. 2021) ......................................27, 30, 31

*Great Pac. Sec. v. Barclays Cap., Inc.*,
  743 F. App'x 780 (9th Cir. 2018) ..........................................................8

*Green v. Charter One Bank, N.A.*,
  640 F. Supp. 2d 998 (N.D. Ill. 2009) ....................................................8

*Grismore v. Capital One F.S.B.*,
  No. 05–2460, 2007 WL 841513 (D. Ariz. Mar. 16, 2007).....................8

*Hadley v. Chrysler Grp., LLC*,
  624 Fed. App'x 374 (6th Cir. 2015) ........................................37, 39, 40

*Hall v. General Motors, LLC*,
  No. 19-10186, 2020 WL 1285636 (E.D. Mich. 2020) ...................17, 19

*Hampson v. Am. Mortg. Exch., Inc*.,
    No. 0-0430, 2011 WL 13318764 (N.D. Ga. Jan. 21, 2011), *report*
    *and recommendation adopted*, No. 10-430, 2011 WL 13318862
    (N.D. Ga. Feb. 18, 2011) ..................................................................8

*Hanson Hous. Auth. v. Dryvit Sys., Inc.*,
    560 N.E.2d 1290 (Mass. App. Ct. 1990) ...........................................26

*Hernandez v. Pistotnik*,
    58 Kan. App. 2d 501 (Kan. Ct. App. 2020)...........................27, 28, 29

*Hoover v. Langston Equip. Assocs., Inc*.,
    958 F.2d 742 (6th Cir. 1992) ............................................................11

*Jenkins v. BAC Home Loan Servicing, LP*,
    822 F. Supp. 2d 1369 (M.D. Ga. 2011).............................................27

*Kamakura, LLC v. Greater New York Mut. Ins. Co.*,
    525 F. Supp. 3d 273 (D. Mass. 2021).................................................27

*Kammarcal v. Owen*,
    151 Wash. App. 1051 (2009) .............................................................16

*Kearns v. Ford Motor Co*.,
    567 F.3d 1120 (9th Cir. 2009) ............................................................8

*Kommer v. Ford Motor Co.*,
    17-00296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017)...................39

*Lambert v. Downtown Garage, Inc.*,
    262 Va. 707 (2001) ...........................................................................16

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ..............................................................25

*Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*,
    No. 17-11888, 2017 WL 4098853 (E.D. Mich. Sept. 15, 2017) ........10

*M&D, Inc. v. W.B. McConkey*,
    231 Mich. App. 22 (1998) .................................................................16

*Martell v. Gen. Motors LLC*,
    492 F. Supp. 3d 1131 (D. Or. 2020) ...................................................9

*Martell v. Gen. Motors LLC*,
   No. 20-284, 2021 WL 1840759 (D. Or. May 7, 2021)........................................27

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) ......................................................21, 33

*Miles v. Love*,
   1 Kan. App. 2d 630 (1977) ...............................................................................16

*Miller v. Gen. Motors LLC*,
   No. 17-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018)...................*passim*

*Miller v. William Chevrolet/Geo, Inc.*,
   762 N.E.2d 1 (Ill. App. Ct. 2001) .....................................................................16

*Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Texas*,
   249 S.W.3d 480 (Tex. App. 2008).....................................................................27

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016).............................................................16

*Mulder v. Kohl's Dep't Stores, Inc.*,
   865 F.3d 17 (1st Cir. 2017*)*.................................................................................8

*Naiman v. Alle Processing Corp.*,
   No. 20-0963, 2020 WL 6869412 (D. Ariz. Nov. 23, 2020) ..............................27

*Niedoliwka v. Inglin*,
   No. 327576, 2016 WL 6127696 (Mich. Ct. App. Oct. 18, 2016) ......................23

*Novell v. Migliaccio*,
   309 Wis. 2d 132 (2008) .....................................................................................27

*In re OnStar Cont. Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) ....................................................................27

*Osman v. Ford Motor Co.*,
   833 N.E.2d 1011 (Ill. App. Ct. 2005).................................................................32

*Pac. Off. Automation, Inc. v. Tracy*,
   No. 17-01484-HZ, 2018 WL 847245 (D. Or. Feb. 10, 2018) ...........................16

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................................8

*Patel v. Holiday Hosp. Franchising, Inc.*,
    172 F. Supp. 2d 821 (N.D. Tex. 2001) ..................................................................9

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88 (2015).......................................................................................28, 29

*Perrelli v. Failla*,
    293 So. 3d 36 (Fla. Dist. Ct. App. 2020).............................................................16

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ................................................................8

*Plavin v. Grp. Health Inc.*,
    35 N.Y.3d 1 (2020) ...........................................................................................27

*Power v. Georgia Exterminators, Inc.*,
    243 Ga. App. 355 (2000) ...................................................................................16

*Quacchia v. DaimlerChrysler Corp.*,
    122 Cal. App. 4th 1442 (2004) ..........................................................................16

*Raymo v. FCA US LLC*,
    475 F. Supp. 3d 680 (E.D. Mich. 2020) ......................................................*passim*

*Republic Bank & Tr. Co. v. Bear Stearns Co.*,
    683 F.3d 239 (6th Cir. 2012) ...............................................................................8

*Robinson v. Gen. Motors LLC*,
    No. 20-00663, 2021 WL 3036353 (D. Del. July 19, 2011)..................................32

*Schnall v. AT & T Wireless Servs., Inc.*,
    171 Wash. 2d 260 (2011)...................................................................................27

*Smith v. Gen. Motors LLC*,
    988 F.3d 873 (6th Cir. 2021) .....................................................................*passim*

*Snider v. Hostess Brands, LLC*,
    No. 20-00516, 2021 WL 311871 (W.D. Va. Jan. 15, 2021) ..................................9

*Sugasawara v. Ford Motor Company*,
No. 18-06159, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019)...........................38

*Sweezey v. C.R. Bard Inc.*,
No. 19-CV-2172, 2020 WL 1237394 (N.D. Tex. Mar. 12, 2020) ....................24

*In re Takata Airbags Prods. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................................32

*TIBCO Software, Inc. v. Gordon Food Serv., Inc.*,
No. 03-00025, 2003 WL 21683850 (W.D. Mich. July 3, 2003) .......................32

*Tietsworth v. Harley-Davidson, Inc.*,
270 Wis. 2d 146 (2004) .................................................................................16, 24

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab.*,
915 F. Supp.2d 1151 (C.D. Cal. 2013) ................................................................39

*Walton v. Grammer Indus. Inc.*,
No. 20-12298, 2021 WL 4458761 (E.D. Mich. Sept. 29, 2021)
(Berg, J.).....................................................................................................15, 17

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) ...........................................................................33

*Wiggins v. Argent Mortg. Co., LLC*,
945 F. Supp. 2d 817 (E.D. Mich. 2013), *aff'd* (6th Cir. 13-1797
Mar. 31, 2014).....................................................................................................11

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .............................................................................16

*Wilson v. Frito-Lay N. Am., Inc.*,
260 F. Supp. 3d 1202 (N.D. Cal. 2017)...............................................................27

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
681 F.3d 1208 (10th Cir. 2012) ...................................................................*passim*

*Wozniak v. Ford Motor Co.*,
No. 17-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)......................*passim*

## Statutes

Ga. Code
  § 10-1-399(a) .............................................................................32

## Other Authorities

9A Ariz. Prac., Business Law Deskbook,
  § 42.2 (2021 ed.) .....................................................................32

Fed. R. Civ. P. 8 ........................................................................2, 26

Fed. R. Civ. P. 9(b) ..............................................................*passim*

Restatement (Second) of Torts § 551 (1977) .........................................25

## STATEMENT OF ISSUES PRESENTED

Plaintiffs allege a defect in the batteries of model year 2017–2022 Chevrolet Bolt electric vehicles. Since the issues first arose, there have been investigations into the issues and a launch of an ongoing recall process aimed at remedying any battery defects. In the meantime, Plaintiffs filed this consolidated lawsuit, asserting 33 causes of action sounding in fraud against LGEUS – one of the suppliers of component parts to GM.

LGEUS's motion to dismiss the lawsuit presents a number of issues:

1. Whether Plaintiffs' fraud claims should be dismissed because Plaintiffs engage in improper group pleading. (*See* Section I.A, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–13, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

2. Whether Plaintiffs' misrepresentation claims should be dismissed because Plaintiffs do not identify any actionable representations by component part supplier LGEUS. (*See* Section I.B, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11-13, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77, to the extent they are based on a misrepresentation theory. | State consumer protection | All Plaintiffs |

3. Whether the consumer protection and common-law fraud claims brought by Plaintiffs who purchased or leased a Bolt should be dismissed because Plaintiffs do not allege that component part supplier LGEUS knew that the

alleged battery defect existed before any Plaintiff purchased or leased his or her vehicle.  (*See* Section I.C.1, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–13, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

4. Whether Plaintiffs' common-law fraud claims should be dismissed for failure to allege the requisite duty to disclose.  (*See* Section I.C.2, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

5. Whether Plaintiffs plead the necessary causation and reliance to support their consumer protection and common-law fraud claims against component part supplier LGEUS.  (*See* Section II, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–13, 19, 24–25, 30, 31, 36, 41, 46, 51, 52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

6. Whether Plaintiffs' claims are subject to dismissal for prudential mootness because GM's recall and replacement of the defective batteries will moot the alleged injuries.  (*See* Section IV, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–13, 19, 24–25, 30, 31, 36, 41, 46, 51, 52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |

| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |
|---|---|---|

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority for the relief that LGEUS seeks includes:

Cases

1.  *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)

2.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)

3.  *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257 (E.D. Mich. 2021)

4.  *Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216 (E.D. Mich. Mar. 24, 2021)

5.  *Hall v. General Motors, LLC*, No. 19-10186, 2020 WL 1285636 (E.D. Mich. 2020)

6.  *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

7.  *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021)

8.  *Sugasawara v. Ford Motor Company,* No. 18-06159, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019)

9.  *Wozniak v. Ford Motor Co.*, No. 17-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

## **INTRODUCTION**

This case arises from allegations made by 36 named plaintiffs (collectively, "Plaintiffs") that there is a purported defect in a 60 kWh 350 V lithium-ion battery used in Defendant General Motors LLC' ("GM") Chevy Bolt vehicle that causes the vehicle to – in rare cases under limited conditions – catch fire. This issue has led to three voluntary recalls by GM, done in connection with the National Highway Traffic Safety Administration ("NHTSA").

In support of these claims, Plaintiffs Amended Consolidated Class Action Complaint, ECF No. 27 ("FACC") spans 323 pages, 1,335 paragraphs, and 81 causes of action – of which there are 33 fraud and state consumer protection claims lodged against Defendant LG Electronics USA Inc. ("LGEUS"), one of GM's component part suppliers. A careful review of the FACC vis-à-vis the claims against LGEUS demonstrates, however, that the FACC is more notable for what it fails to say, as opposed to what it does. Every one of the 33 claims asserted against LGEUS is based on alleged fraudulent conduct, and yet – at no point throughout the FACC – do Plaintiffs attribute ***a single*** statement at all, let alone an actionable misrepresentation or omission, to LGEUS. Rather, Plaintiffs pursue claims against LGEUS on behalf of a putative nationwide class and numerous state sub-classes based on nothing more than grouped, generalized allegations made against five separate LG entities lumped together in the aggregate or, even more baldly, with GM

1

and the other defendants as simply "Defendants."  Well-settled pleading standards do not permit such a strategy to survive a motion to dismiss.

Plaintiffs resort to these tactics because they are unable to point to a single statement or omission made by LGEUS – or its parent LG Electronics, Inc. ("LGEKR"), for that matter – that could possibly form the basis of a claim.  Indeed, much of the quandary in which Plaintiffs find themselves is due to the fact that they have no plausible basis to allege that LGEUS (or any other defendant) had knowledge of the alleged defect in the relevant vehicles until after the results of multiple product investigations – investigations that were concluded well after any representation on which any plaintiff supposedly relied at the time of purchase.  As a result, Plaintiffs' fraud-based claims must fail.  They fail to meet the particularity standard of Rule 9(b) or the plausibility standard of Rule 8.

Moreover, even if Plaintiffs' claims were not legally deficient (which they are), they should be dismissed nonetheless as Plaintiffs are being made whole through GM's comprehensive recall efforts, in which LGEUS is fully cooperating. GM's voluntary recall provides for replacement of battery modules in the recall population, and GM began shipping replacement batteries to dealerships in early October.  The recall renders Plaintiffs' claims prudentially moot and provides an independent basis for their dismissal.

In an effort to avoid duplicative briefing, LGEUS incorporates by reference in support of this motion – where applicable to LGEUS – the arguments made by GM and LG Energy Solution Michigan Inc. ("LGES Michigan") in the memoranda they are also submitting in support of their respective motions to dismiss.

## STATEMENT OF FACTS[1]

### A.     The Defendants

GM is an automotive manufacturer that manufactures, sells, and markets the Chevrolet Bolt. See FACC ¶¶ 281, 282, 303. LGEUS is the wholly owned U.S. subsidiary of LGEKR, a publicly traded Korean corporation trading under ticker 066570. *Id.* ¶¶ 296–302. LG Chem Ltd. ("LG Chem") is the parent of a separate group of companies. LG Chem trades separately from LGEKR on the Korea Exchange, under the ticker 051910. *Id.* ¶ 285. LG Chem owns 100% of LG Energy Solution, Ltd. ("LGES"), which in turn owns 100% of LGES Michigan. *Id.* ¶¶ 284-91. As alleged in the FACC, LGEKR and LGEUS manufacture and supply component parts on the batteries at issue.[2]

---

[1] The facts set forth in this section are based on the FACC and accepted only for purposes of this Motion.

[2] Plaintiffs' description of the role of LGEUS in the manufacturing and supply of the batteries is incomplete and inaccurate, but is addressed as pled for purposes of this motion.

3

**B.    GM Voluntarily Recalls the Chevrolet Bolt**

Model year 2017–2019 Bolts contain a type of lithium ion battery – called design level N2.1 – manufactured by LG Chem, which has an EPA-estimated range of 238 miles.  FACC ¶ 7; Ex. BF (ECF No. 27–59, PageID.2088-2091); Ex. AA (ECF No. 27–28, PageID.1695–1703); Ex. AG (ECF No. 27–34, PageID.1774–1782); Ex. AM (ECF No. 27–40, PageID.1838–1846). Model year 2020–2022 Bolts contain a newer type of lithium ion battery also manufactured by LG Chem – design level N2.2 – and those cars have an EPA-estimated range of 259 miles.  FACC ¶ 44.

Between July 20, 2020 and August 26, 2020, GM received four customer complaints alleging that the battery in a 2017, 2018, or 2019 Bolt had caused a fire. FACC ¶ 353; Ex. BF (PageID.2090).  Notably, Plaintiffs do not allege that any customers made any complaints to LGEUS.   In response, GM started an investigation and, shortly thereafter, initiated a voluntarily recall of all 2017–2019 Bolt vehicles with design level N2.1 batteries manufactured at LG Chem's Ochang, Korea plant on November 13, 2020.  FACC ¶¶ 7, 366; Ex. BF (PageID.2089).  While it worked towards a comprehensive solution, GM released an interim software remedy on November 17, 2020, that would limit the vehicle's charging capacity to 90%, because the reported battery fires at that time all occurred when the battery neared full charge.  FACC ¶¶ 368–369; Ex. BF (PageID.2088–2091).

4

After GM's initial repair attempts, two additional suspected battery fires occurred, one in May 2021 and one in July 2021. FACC ¶¶ 372, 377. GM promptly provided updated guidance to customers. Ex. A (ECF No. 27–2, PageID.1495–1497)). After further investigation, GM then issued an additional recall on July 23, 2021, under which GM would replace batteries in vehicles covered by the original recall with newly manufactured design-level N2.2 batteries. FACC ¶ 382; Ex. B (ECF No. 27–3, PageID.1498–1504).

After a suspected battery fire reportedly occurred for the first time in a single Bolt outside of the originally recalled vehicles, GM issued an updated recall on August 17, 2021 for all remaining 2019-2022 Bolts, providing for replacement of battery modules. FACC ¶¶ 385–88; Ex. I (ECF No. 27-10, PageID.1551).

Because of the time needed to manufacture and ship the new batteries to dealers, GM has advised customers to take certain temporary and interim steps, including setting their vehicles to a 90% state-of-charge limitation, avoiding depleting their batteries below an estimated remaining 70-mile range where possible, parking vehicles outside after charging, and avoiding leaving vehicles charging overnight. FACC ¶ 382; Ex. C (ECF No. 27–4, PageID.1512–1515); Ex. D (ECF No. 27–5, PageID.1516, 1523). Once the vehicles' battery modules are replaced, customers can stop taking these temporary precautions and may resume fully charging their battery. As GM explains in its memoranda in support of its

concurrently filed motion to dismiss, GM began shipping replacement battery packs to dealerships in early October.

### C.    The Plaintiffs File an Amended Complaint Against LGEUS and Other New Defendants Nine Months After Litigation Commenced

Plaintiffs here are 36 individuals that purchased or leased 2017–2022 model year Chevrolet Bolts in one of fourteen states between March 17, 2017, and July 26, 2021.  FACC ¶¶ 27–279.  Plaintiffs first filed suit against GM – and only GM – in this Court on December 11, 2020.  ECF No. 1.  Actions filed in other jurisdictions were transferred and consolidated on June 1, 2021.  ECF No. 18.  Pursuant to a stipulation entered into with GM, Plaintiffs filed the FACC on September 17, 2021. ECF No. 27.  For the first time, Plaintiffs added five new defendants:  LG Chem, LGES, LGES Michigan, LGEKR, and LGEUS.  *See generally* FACC.

The FACC is devoid of specific allegations against LGEUS or any of the four other new defendants.  Rather, Plaintiffs have grouped the five new defendants together as "LG," and have grouped the "LG Defendants" in with GM as "Defendants."  In the entire FACC, apart from identification of the parties and allegations regarding jurisdiction and venue, there are only two statements Plaintiffs attribute to any LG entity – and those are not attributed to a specific defendant.  First, Plaintiffs allege that LG Electronics Vehicle Components' CEO made a statement in October 2015 (three months before the 2017 Chevy Bolt was unveiled), referring to that company's status as "GM's EV technology partner" as "indicative of exactly

6

the type of contributions that traditional tech companies can make in the automotive space." FACC ¶¶ 311, 363. Second, Plaintiffs allege a confirmation from "LG" that it was working with GM to "ensure that the recall measures [were] carried out smoothly" and to announce that the costs of the recall would be distributed based on the results of a root cause investigation that was "held by GM, LG Electronics and LG Energy Solution." *Id*. at ¶¶ 364, 390. That is it. In all 323 pages. Nothing more.

## **LEGAL STANDARDS**

The applicable standards for this motion are well-settled. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 9(b) requires that claims sounding in fraud meet an even more rigorous standard. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012); *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019); *Miller v. Gen. Motors LLC*, No. 17-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018). For fraudulent misrepresentation claims, Rule 9(b) requires plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1287 (E.D. Mich. 2021) (Berg, J.) (quoting *Raymo v. FCA US LLC*, 475 F.

7

Supp. 3d 680, 705 (E.D. Mich. 2020)). As to fraud by concealment – the *only* theory

under which Plaintiffs assert each of their claims against LGEUS here – Rule 9(b)

requires plaintiffs to specifically plead: "(1) precisely what was omitted; (2) who

should have made a representation; (3) the content of the alleged omission and the

manner in which the omission was misleading; and (4) what [defendant] obtained as

a consequence of the alleged fraud." *Republic Bank & Tr. Co. v. Bear Stearns Co.*,

683 F.3d 239, 256 (6th Cir. 2012). Plaintiffs have failed to meet these standards.

## ARGUMENT

## I.  PLAINTIFFS DO NOT PLEAD THE CLAIMS AGAINST LGEUS WITH THE PARTICULARITY REQUIRED BY RULE 9(B)

Each of Plaintiffs' claims against LGEUS (for consumer fraud, unfair and

deceptive trade practices, and fraud by concealment) sound in fraud,[3] and therefore

---

[3] Rule 9(b)'s particularity requirement applies to all of Plaintiffs' fraud-based claims. *See* **AZ:** *Grismore v. Capital One F.S.B.*, No. 05–2460, 2007 WL 841513, at *6 (D. Ariz. Mar. 16, 2007) (Arizona's CFA); **CA:** *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (California's LRA and UCL); *Great Pac. Sec. v. Barclays Cap., Inc*., 743 F. App'x 780, 783 (9th Cir. 2018) (California's FAL); **FL:** *Perret v. Wyndham Vacation Resorts, Inc*., 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Florida's UDTPA); **GA:** *Edwards-Astin v. Medtronic Minimed, Inc*., No. 08-103, 2008 WL 11319723, at *4 (N.D. Ga. June 4, 2008) (Georgia's FBPA); *Hampson v. Am. Mortg. Exch., Inc*., No. 0-0430, 2011 WL 13318764, at *8 (N.D. Ga. Jan. 21, 2011), *report and recommendation adopted*, No. 10-430, 2011 WL 13318862 (N.D. Ga. Feb. 18, 2011) (Georgia's UDTPA); **IL:** *Green v. Charter One Bank, N.A*., 640 F. Supp. 2d 998, 1005 (N.D. Ill. 2009) (Illinois' CFDTPA); **KS:** *Burton v. R.J. Reynolds Tobacco Co*., 884 F. Supp. 1515, 1524 (D. Kan. 1995) (Kansas' CPA); **MA:** *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017)* (Massachusetts' RBPCPA); **MI:** *In re Packaged Ice Antitrust Litig*., 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (Michigan's CPA); **NY:** *Wozniak v. Ford*

must satisfy Rule 9(b)'s heightened pleading standard.  In order to state a claim for

fraud under Rule 9(b), the complaint must include enough details to provide

defendants with "sufficient notice" of the relevant claims against them.  *Coffey v.*

*Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

Plaintiffs do not meet this standard.  They improperly rely on group pleading

throughout the FACC, failing to specify which LG entity – or at times even which

defendant – was responsible for particular statements or omissions.   Indeed,

Plaintiffs do not provide ***any*** examples of a misrepresentation attributable to

LGEUS, nor do they allege that LGEUS had the knowledge necessary to conceal

information about the defects (or even that LGEUS had a duty to make a disclosure

in the first place).  Therefore, Plaintiffs' fraud-based claims against LGEUS fail.[4]

---

*Motor Co.*, No. 17-12794, 2019 WL 108845, at **1, 3 (E.D. Mich. Jan. 4, 2019)
(New York's GBL); **OR:** *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145–
46 (D. Or. 2020) (Oregon's UTPA); **TX:** *Patel v. Holiday Hosp. Franchising, Inc.*,
172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) (Texas' DTPA-CPA); **VA:** *Snider v.
Hostess Brands, LLC*, No. 20-00516, 2021 WL 311871, at *1 (W.D. Va. Jan. 15,
2021) (Virginia's CPA); **WA:** *Carter v. Ethicon Inc.*, No. 20-5672, 2021 WL
1893749, at *2 (W.D. Wash. May 11, 2021) (Washington's CPA); **WI:** *Adaptive
Micro Sys. LLC v. AdsLED, Inc.*, No. 11-668, 2011 WL 13217958, at *9 (E.D. Wis.
Oct. 18, 2011) (Wisconsin's DTPA).

[4] Counts 3, 6, 9, 11–13, 18, 19, 22, 24–25, 28, 30–31, 34, 36, 39, 41, 44, 46, 49, 51,
52, 55, 57, 60, 62, 65, 67, 70, 72, 75, 77, 80.

## A.    Plaintiffs Engage in Improper Group Pleading

Plaintiffs engage in two levels of impermissible group pleading in order to obfuscate the fact that they do not allege that LGEUS – or any other LG entity for that matter – made any actionable misrepresentation or omission.  First, Plaintiffs lump all five LG defendant entities together throughout the FACC as "LG."   In reality, as Plaintiffs admit, the five companies are part of two separate corporate structures, with LGEKR and LG Chem each being independently publicly listed on the Korea Exchange.  *Compare* FACC ¶ 285 *with id.* ¶ 297 (identifying LGEKR and LG Chem's distinct Korea Exchange ticket numbers); *see also id.* ¶ 286 (identifying LGES and LGES Michigan as wholly-owned subsidiaries of LG Chem, not LGEKR).  Second, Plaintiffs reflexively group together all five LG entities with GM as "Defendants," a term that appears 566 times in the FACC.  At no point do Plaintiffs make any effort to identify which particular Defendant or LG entity made any of the alleged fraudulent statements (to the degree there actually are any in the FACC) or omissions on which they base their claims.

Rule 9(b) does not permit a plaintiff to allege fraud in this fashion, and courts have found fraud-based allegations to be "deficient" when "the claims are directed at the defendants *en masse,*" instead of at specific defendants.  *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*, No. 17-11888, 2017 WL 4098853, at *8 (E.D. Mich. Sept. 15, 2017); *see also Cataldo*, 676 F.3d at 551 (finding that plaintiffs did not

meet Rule 9(b) standard because they "fail[ed] to allege the speaker of the alleged statements, instead referring vaguely only to 'defendants,' of which there [were] many"); *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[P]laintiffs had not alleged with specificity who had made particular misrepresentations… but rather plaintiffs had articulated general averments of fraud attributed to 'the defendants.'"); *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003) (dismissing claims because "'group pleading' … fails to meet … Fed.R.Civ.P. 9(b)'s specificity requirements"); *Wiggins v. Argent Mortg. Co., LLC*, 945 F. Supp. 2d 817, 824 (E.D. Mich. 2013), *aff'd* (6th Cir. 13-1797 Mar. 31, 2014) ("The allegations lump all of the Defendants together….").

This is precisely what Plaintiffs have done here, discussing LGEUS *en masse* with the other defendants, save for the allegations concerning personal jurisdiction (FACC ¶¶ 24–25), venue (*id*. ¶ 26), and LGEUS's location and scope of business (*id*. ¶¶ 300–02). Apart from those boilerplate jurisdiction, venue, and location allegations, Plaintiffs refer to only two statements that are in any way attributable to "LG" or an unidentified LG entity. The first is from the CEO of LG Electronics Vehicle Components Co. (a separate company from LGEUS and not a defendant in this action), who, according to Plaintiffs, characterized that company's status as "GM's EV technology partner" as being "indicative of exactly the type of contributions that traditional tech companies can make in the automotive space." *Id*.

11

¶¶ 311, 363.  Second, Plaintiffs allege that, "LG too, has confirmed that it is working with its 'client and partner . . . to ensure that the [GM] recall measures are carried out smoothly . . . . The reserves and ratio of cost to the recall will be decided depending on the result of the joint investigation looking into the root cause, currently being held by GM, LG Electronics and LG Energy Solution.'"  *Id*. ¶¶ 364, 390.  But neither statement is attributed to LGEUS.  Even if they were, neither statement is alleged to be an actionable misrepresentation or contain an omission, as the 2015 statement does not refer to the estimated range or fire risk and the 2021 statement was made after the Plaintiffs purchased or leased their vehicles.

Failure to attribute a single statement to LGEUS, the lumping of all the LG entities together, and the 566 allegations of what the monolithic "Defendants" did, littered throughout the Amended Complaint, without more, amount to nothing more than impermissible group pleading.  This pleading tool that does not meet the Rule 9(b) standard.  *See U.S. ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*, No. 98–3127, 1999 WL 618018, at *2 (6th Cir. Aug. 5, 1999) ("[T]he court was correct in dismissing the amended complaint because plaintiff's allegations are based on generalized accusations of wrongdoing attributed to 'defendants' without any specificity.").  Each of the 33 causes of action against LGEUS – which are all fraud-based – should be dismissed for this reason alone.

**B.** **Plaintiffs' Affirmative Misrepresentation Assertions Are Meritless**

As an initial matter, Plaintiffs do not allege an affirmative misrepresentation claim against LGEUS. They posit that the "Defendants" are collectively liable for violating the 14 states' various consumer protection statutes because "Defendants," collectively, allegedly misrepresented through their advertisements and public statements that the batteries could be safely charged to capacity and knowingly concealed defects that diminished the vehicle's performance and value because of a risk of fire. FACC ¶¶ 467, 523, 524, 538, 619, 679, 695, 756, 769, 819, 878, 938, 1054, 1108, 1176, 1235, 1282. However, nowhere do Plaintiffs refer to any advertisement or public statement made by LGEUS. Even if any of the statements in the FACC could be attributed to LGEUS, Plaintiffs' assertions that these statements violated state consumer fraud statutes are too vague to satisfy Rule 9(b)'s heightened pleading standard given that Plaintiffs are obligated to specify *what* was misrepresented, *see Miller*, 2018 WL 2740240, at *11, and they have failed to do so.

As described above, the only two statements Plaintiffs attribute to any *LG* entity are: (i) LG Electronics Vehicle Components' CEO promoting the then-new collaboration between GM and LG in October of 2015 (three months before the 2017 Chevy Bolt was even unveiled), FACC ¶¶ 311, 363; and (ii) a vague confirmation from "LG" that it was working with GM to "ensure that the recall measures [were] carried out smoothly" and to announce that the costs of the recall would be

13

distributed based on the results of a root cause investigation that was "held by GM, LG Electronics and LG Energy Solution." *Id*. at ¶¶ 364, 390.  Neither of these statements is in any way untrue or fraudulent, nor do they have anything to do with Plaintiffs' purchase decisions.  The 2015 statement does not refer to the estimated range of the Bolt or the ability to safely charge it, and the 2021 statement was published after the Plaintiffs purchased or leased their vehicles.  Plaintiffs do not so much as allege that these statements are actionable or connected to their purchases.

This is akin to the situation in *Wozniak v. Ford Motor Co*., where the Eastern District of Michigan found that the plaintiffs' misrepresentation claims failed because they "simply ha[d] not pleaded" that the defendants made any false statements about the allegedly defectively-designed lug nuts at issue.  2019 WL 108845, at *3; *see also Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *17 (E.D. Mich. Mar. 24, 2021) ("Plaintiffs have not alleged an actionable misrepresentation made by Defendant in the FAC.").  Plaintiffs' claims here have the same deficiency.  Therefore, Plaintiffs' misrepresentation allegations, to the extent they are lodged against LGEUS, cannot survive this motion to dismiss.

## C.   Plaintiffs' Concealment Claims Fail

Plaintiffs' fraud-based claims premised on purported improper concealment of allegedly material facts also fail.  Though courts impose a "***slightly*** more relaxed pleading burden" for fraudulent concealment claims when compared to fraudulent

misrepresentation, Rule 9(b) still requires Plaintiffs to "set forth the who, what, when, where, and how" of the alleged omission or concealment. *Miller*, 2018 WL 2740240, at *11 (emphasis in original). Plaintiffs fall far short of this standard for two reasons. First, they do not plausibly allege that LGEUS had knowledge of the alleged defect before the Plaintiffs purchased their vehicles; and second, Plaintiffs fail to establish that LGEUS had a duty to disclose information to Plaintiffs.

### 1. LGEUS Did Not Know About the Alleged Defects When Plaintiffs Purchased Their Vehicles

Plaintiffs have failed to plausibly allege that LGEUS was aware of the alleged defects before or at the time Plaintiffs purchased their vehicles. LGEUS "cannot be required to disclose something [it] did not know," and Plaintiffs fail to "sufficiently allege[] that [LGEUS] had knowledge of the alleged defect." *Walton v. Grammer Indus. Inc*., No. 20-12298, 2021 WL 4458761, at *6 (E.D. Mich. Sept. 29, 2021) (Berg, J.); *see also Smith v. Gen. Motors LLC*, 988 F.3d 873, 875 (6th Cir. 2021) ("Plaintiffs must show that GM had sufficient knowledge of the [alleged] defect to render its sales fraudulent"); *Chapman*, 531 F. Supp. 3d at 1300 (concluding that fraud and consumer-protection claims "that involve purchases made before GM had knowledge of the defect do not survive"). This requirement is applicable to Plaintiffs' fraudulent concealment claims in the 14 states at issue here. *See Wozniak*,

2019 WL 108845, at *3 ("Liability cannot attach for a fraudulent omission theory" without properly pleading defendant's pre-sale "knowledge of the . . . defect.").[5]

> **i.** *LGEUS Did Not Know of the Alleged Battery Defects in the 2017–2019 Chevy Bolts Until November 2020*

Based on Plaintiffs' own allegations, LGEUS did not know – and could not have known – that the batteries in the 2017-2019 Chevy Bolts were allegedly defective until November 2020, at the earliest, when GM's investigation concluded and GM initiated its first recall.  *See* FACC ¶ 7 ("GM initially issued Recall No. 20V-701 on November 13, 2020.").  Yet not a single plaintiff in this lawsuit who claims to have purchased or leased a 2017-2019 Chevy Bolt did so after November

---

[5] **AZ:** *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1023 (D. Ariz. 2017); **CA:** *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025-26 & n.6 (9th Cir. 2017) (CLRA); *Quacchia v. DaimlerChrysler Corp.*, 122 Cal. App. 4th 1442, 1452 (2004) (UCL); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) (FAL); **FL:** *Perrelli v. Failla*, 293 So. 3d 36, 37 (Fla. Dist. Ct. App. 2020); **GA:** *Power v. Georgia Exterminators, Inc.*, 243 Ga. App. 355, 358 (2000); **IL:** *Miller v. William Chevrolet/Geo, Inc.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 2001); **KS:** *Miles v. Love*, 1 Kan. App. 2d 630, 632 (1977); **MA:** *Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC*, 481 Mass. 13, 25 (2018); **MI:** *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 32 (1998); **NY:** *Gershon v. Hertz Corp.*, 215 A.D.2d 202, 203 (1st Dep't 1995); **OR:** *Pac. Off. Automation, Inc. v. Tracy*, No. 17-01484-HZ, 2018 WL 847245, at *2 (D. Or. Feb. 10, 2018); **TX:** *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001); **VA:** *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001); **WA**: *Kammarcal v. Owen*, 151 Wash. App. 1051 (2009); **WI:** *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 156–57 (2004).

2020.[6]  Accordingly, LGEUS could not have fraudulently omitted information at the time when each of the applicable Plaintiffs claims to have purchased their vehicle.

Plaintiffs assert nothing more than that the monolithic "LG has been GM's partner in… investigating the Battery Defect [and] failing to disclose it."  FACC ¶ 361.  Plaintiffs provide a number of supposed examples demonstrating that "LG" knew there were problems with the battery before Plaintiffs purchased their vehicles – largely concerning the loss of propulsion due to low voltage – and did nothing about it.  However, this Court, and the Sixth Circuit, has consistently held that type of information, entirely unrelated to the alleged defect that forms the basis of the Plaintiffs' claims, is not sufficient to confer knowledge onto a defendant.  *See, e.g., Smith*, 988 F.3d at 885; *Walton*, 2021 WL 4458761, at *6; *Raymo v. FCA US, LLC*, 475 F. Supp. 3d 680, 708–09 (E.D. Mich. 2020) (Berg, J.); *Hall v. General Motors, LLC*, No. 19-10186, 2020 WL 1285636, at *3 (E.D. Mich. 2020).

For example, Plaintiffs assert that battery-related complaints started emerging in late 2016, shortly after the Bolt initially launched.  FACC ¶¶ 336–37.  However, Plaintiffs continue by alleging that the issues at that time were "losses of propulsion power," and "sudden drops in battery level" – problems entirely unrelated to the fire risk that form the basis of the Plaintiffs' claims.  *Compare id.* ¶¶ 337–38 (alleging

---

[6] *See generally* FACC ¶¶ 27–279 (providing Plaintiffs' dates of purchase).

issues relating to loss of propulsion beginning in 2016) with *id.* ¶ 427 (pleading a fraudulent concealment claim based on allegation that the vehicles Plaintiffs "purchased or leased were defective and unsafe because they were subject to spontaneous combustion when being charged to a full or almost-full battery level"). Indeed, Plaintiffs point to a December 2016 GM Service Bulletin (Service Bulletin 6239), which informed dealers of a quality improvement program that might require dealers to replace certain components in the high voltage battery pack. *Id.* ¶ 339. Yet Plaintiffs say nothing more about that Service Bulletin or why it or the propulsion issue has any connection to their claims here, which, again, arise out of alleged fire risk. Likewise, Plaintiffs refer to various communications GM – not LGEUS – issued periodically in the next two years, including customer satisfaction notices and program bulletins recommending battery replacement (*id.* ¶ 340) and a software update (*id.* ¶¶ 342, 345) as solutions to lack of propulsion issues (which were the result of ***low*** voltage issues). But Plaintiffs make no attempt to somehow link these various communications to a battery's risk of catching fire generally or, more specifically, what ***LGEUS*** knew about such risk.

This is critical because Plaintiffs must allege facts to support the defendant's knowledge of the ***specific*** defect at issue in order to meet their pleading burden. *See Smith*, 988 F.3d at 885. For example, allegations that only suggested "GM was aware of some problem with the wheel sensors. . . [did] not plausibly establish that

GM was aware of the specific [defect]" alleged in the complaint, and were therefore insufficient to establish GM's knowledge. *Hall*, 2020 WL 1285636, at *6.

Plaintiffs appear to recognize the hole in their argument and attempt to paper over it by alleging "*[o]n information and belief*" –with no scientific or any other basis to make the leap – that the same issue that led to the sudden loss of propulsion could also lead to "dangerous overheating of the battery while charging, resulting in [vehicle] fires." FACC ¶ 349 (emphasis added). This is not sufficient: Plaintiffs "cannot escape a motion to dismiss by resting on information and belief without supporting facts." *Smith*, 988 F.3d at 885. Similarly, Plaintiffs try to rely on vague allegations that the "LG Defendants" were involved in "the design, engineering, manufacture, testing, validation, integration, and assembly of the technology and components" of the batteries. FACC ¶ 435. But "theoretical results from pre-production tests without accompanying verification that the tests occurred and revealed a safety defect [cannot] survive a motion to dismiss." *Smith*, 988 F.3d at 885. In sum, the bulletins and notices Plaintiffs cite – which were not even issued by component part supplier LGEUS – have nothing to do with the risk of fire, and therefore do nothing to demonstrate that LGEUS knew of any specific defect, or that it improperly failed to disclose any risk associated with it.

Plaintiffs' copying and pasting into the FACC of various NHTSA complaints submitted by other drivers about the battery (see, *e.g.*, FACC ¶ 354), fare no better.

19

Plaintiffs allege that drivers submitted "at least a dozen" NHTSA complaints alleging that the battery caused a fire but cite to 17 other complaints regarding loss of propulsion issues. *Id*. ¶¶ 353–54. Importantly, Plaintiffs admit that the first complaint of a battery fire was not made until July 8, 2019. *Id*. ¶ 356. This alone eliminates claims of the 23 named plaintiffs who purchased vehicles before then. Even for the other Plaintiffs who purchased the 2017–2019 Chevy Bolts after the first report of a battery fire, the complaints submitted to NHTSA are insufficient to allege knowledge on the part of LGEUS. A few complaints about a variety of problems does not put parties on notice about a defect, especially where Plaintiffs do not allege that LGEUS was aware of the NHTSA complaints. *See Wozniak*, 2019 WL 108845, at *3 ("Plaintiffs' general assertions of Defendant's knowledge without any alleged facts that Defendant was even aware of the [NHTSA] complaints [did] not rise above mere speculation."); *see also Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017*)*; *Raymo*, 475 F. Supp. 3d at 706.

In short, Plaintiffs do not provide sufficient allegations to establish that LGEUS knew about any purported specific defects in the batteries of 2017–2019 Chevy Bolts that could cause fires prior to Plaintiffs' purchase or lease. Their claims of fraudulent omission fail.[7]

---

[7] The Plaintiffs who allegedly purchased or leased a 2017–2019 Bolt are: Altobelli, Andersen, Cannon, Mary Carr and Jan Wyers, Chitra, Chung, V. Corry, DeRosa, William Dornetto and Russel Ives, Kevin Harris and Pamela Duprez, Hickey, Kass,

ii.  *Plaintiffs Cannot Establish LGEUS Knew of a Battery Defect in the 2020–2022 Chevy Bolts*

Likewise, the Plaintiffs who purchased or leased 2020–2022 Chevy Bolts have failed to meet their pleading burden that LGEUS purportedly knew about the risk of fire in their vehicles prior to GM's expanded recall in August 2021.

What limited notice LGEUS may have received about any problems with the batteries in the 2017–2019 models was irrelevant to the later vehicles, as the newer Bolts used an entirely different battery model.  Ex. BF (PageID.2091).  The incidents reported prior to the expanded recall related to batteries with design level N2.1 cells manufactured at LG Chem's Ochang, Korea facility.  *See* FACC ¶ 7; Ex. I (PageID.1551).  The 2019 Bolts in the expanded recall, however, were built using N2.1 battery cells produced elsewhere.  *See* Ex. BF (PageID.2089).  And the 2020-2022 Bolts use a new battery cell with a different design, not the N2.1 cells.  *Id.* (PageID.2091).  Plaintiffs do not provide any plausible allegation that LGEUS had any knowledge of any defect for the battery cells used in the additional 2019 or 2020-2022 models that were manufactured in different locations and used different designs and, for that reason, the rest of their fraudulent concealment claims also fail.

A recent decision from this Court illustrates the point.  In *Matanky v. General Motors LLC*, Judge Roberts held that Plaintiffs "cannot plausibly allege [GM] had

---

Khorey, Kotchmar, Kuchar, Poletti, Schulz, Smith, Sterba, Strong, Taylor, Vaaler, Walker, and Thomas and Carol Whittaker.

knowledge about defects in the 2017 [model year cars] based on complaints about the 2015 and 2016 cars, because the 2017 model had design changes." 370 F. Supp. 3d 772, 792–93 (E.D. Mich. 2019). Like the plaintiffs in *Mantanky*, the Plaintiffs who purchased the 2020–2022 Chevy Bolts here cannot use alleged knowledge of a defect in a prior model to impute the same to a later battery model. *Id*. at 793.[8]

### 2.   Certain Plaintiffs' Claims Fail For the Additional Reason That LGEUS Had No Duty to Make Any Disclosure to Them

Claims for fraudulent concealment and/or omission are premised on the threshold requirement that there is a duty to make the disclosure in the first place. Where there is no such duty there can be no viable claim for failing to make an alleged necessary disclosure. Plaintiffs here reside in jurisdictions where there is no such duty as applied to LGEUS, which is alleged to be only the manufacturer and supplier of a component of certain items of a component part of the vehicles purchased by the Plaintiffs. *See* FACC ¶ 301 ("[LGEUS] together with LG Electronics manufactures and supplies core parts of the [battery] to GM.").

As an initial matter, Plaintiffs have failed to sufficiently allege a duty to disclose because they have failed to allege that LGEUS had knowledge of the purported defect. Plaintiffs state that LGEUS had a duty to disclose because,

---

[8] The Plaintiffs who allegedly purchased or leased a 2020–2022 Bolt are: Barrett, Connelly, D. Corry, William Dornetto and Russell Ives, the Holbrooks, Kass, the Rocks, and Verzura.

according to Plaintiffs, LGEUS "possessed exclusive knowledge of [material safety information]" because their design, engineering, manufacturing, testing, validating, integration, and assembly processes "revealed, or reasonably should have revealed, the existence of the defect." *See, e.g.*, FACC ¶ 439.  But, as explained, Plaintiffs do not allege that LGEUS had knowledge of the specific alleged defect *at the time* each Plaintiff made his or her purchase.  *See supra* Section I.C.1 (emphasis added).  And allegations that testing was conducted are insufficient to allege knowledge absent verification that the testing was completed and revealed the defect at issue.  *Smith*, 988 F.3d at 885.  Plaintiffs' claims should be dismissed for this reason.

Putting aside the fact that Plaintiffs have failed to allege exclusive knowledge and offer no other facts that would give rise to a duty to disclose, their claims suffer other actionable deficiencies.  For example, here in Michigan, defendants have a duty to disclose only if they are in a fiduciary or confidential relationship with the plaintiffs – which LGEUS is not.  *See, e.g.*, *Niedoliwka v. Inglin*, No. 327576, 2016 WL 6127696, at *8 (Mich. Ct. App. Oct. 18, 2016).  Mere allegations "that the seller knew there was a hidden defect and that the purchaser had no knowledge of it" are insufficient to establish the necessary relationship triggering the duty to disclose.  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 424 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).  Instead, Plaintiffs would need to allege that they reached out to a

23

component part supplier (here LGEUS) and made a "specific inquiry" to LGEUS and that LGEUS made a statement that was "in some way incomplete or misleading." *Id*. (quoting *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33, 39 (1998)). As to the Michigan plaintiffs in this case – the Holbrooks – they fail to allege "that they made any inquiries directly to [LGEUS] regarding the safety of their vehicles or the existence of any potential defects." This dooms their fraud by concealment claim under Michigan law (Count 49). *Id*. at 425.

Many of Plaintiffs' claims under other applicable state laws suffer from the same defects. For example, in Texas "fraudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense." *Sweezey v. C.R. Bard Inc.*, No. 19-CV-2172, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020). In Wisconsin, courts have declined to extend the duty to disclose requirement to sales of consumer goods. *Tietsworth*, 270 Wis. 2d at 157. And in Oregon, Plaintiffs' common law fraudulent concealment claim is preempted. *Chapman*, 531 F. Supp. 3d at 1299.

Even in states in which a duty to disclose is potentially applicable to a consumer transaction such as the Plaintiffs' purchases or leases of vehicles, such a duty can only exist based on *some* relationship between the plaintiff and defendant. For example, under California law, each circumstance imposing a duty to disclose

24

"presupposes the existence of some other relationship between the plaintiff and  defendant in which a duty to disclose can arise. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997); *see also* Restatement (Second) of Torts § 551 (1977) (contemplating liability for nondisclosure only between parties to a "business transaction").  Here, LGEUS – as a component parts supplier – did not have, and is not alleged to have had, any relationship with the Plaintiffs.  Plaintiffs merely allege that the "LG Defendants," collectively, manufactured and supplied components to GM, which GM used to manufacture Plaintiffs' vehicles.  *See* FACC ¶ 310.

This puts LGEUS in a materially different position than the defendant in *Chapman*, where the Court found the defendant to have a duty to disclose under the laws of Florida, Illinois, Michigan, New York, and Virginia.  531 F. Supp. 3d at 1291–96.  LGEUS – as a component part supplier – is not alleged to have sold, leased, or manufactured the *vehicles* at issue.  Plaintiffs only allege that LGEUS "together with LG Electronics manufactures and supplies *core parts* of the [battery] to GM."  FACC ¶ 301 (emphasis added).  Thus, Plaintiffs allege that LGEUS is a manufacturer of certain items of a component part of their vehicles.  Therefore, no duty to disclose applies, and Plaintiffs' claims fail.  *See, e.g.*, *Flynn v. FCA*, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (granting summary judgment for component manufacturer because plaintiff "points to no evidence . . . that demonstrates that . . . a component manufacturer for an automobile manufacturer, and a consumer who

purchases from a dealership are engaged in a fiduciary or special trust relationship"); *Hanson Hous. Auth. v. Dryvit Sys., Inc.*, 560 N.E.2d 1290, 1293 (Mass. App. Ct. 1990) (summary judgment proper because of "no evidence of a fiduciary relationship between the plaintiff and [component supplier]").

Finding that LGEUS had no duty to disclose is not inconsistent with this Court's decision in *Chapman* and the authority the Court relied upon therein. The cases the Court cited in *Chapman* all involved original equipment manufacturers. 531 F. Supp. 3d at 1291–96. Because LGEUS is not the original equipment manufacturer, and because LGEUS is not alleged to have any relationship with Plaintiffs that could give rise to a duty to disclose, Plaintiffs' fraudulent concealment claims against LGEUS should be dismissed.[9]

## II.  PLAINTIFFS DO NOT PLEAD NECESSARY CAUSATION OR RELIANCE

Every claim that Plaintiffs bring against LGEUS requires a showing of causation or reliance. In *Chapman*, this court found that justifiable reliance is an element of fraudulent concealment and that the state consumer protection statutes in 49 states all required, "at a minimum," a showing of causation or reliance. 531 F. Supp. 3d at 1285, 1300 (E.D. Mich. 2021) (Berg, J.).[10] Nothing has changed since

---

[9] LGEUS joins the arguments presented by LGES Michigan in Section III.C of its memoranda of law in support of its concurrently filed motion to dismiss.

[10] *Chapman* involved claims under consumer protection statutes in every state except for Texas. 531 F. Supp. 3d at 1270 n.2. Reliance or causation is also an element in

*Chapman* – justifiable reliance is a necessary element of a common law fraudulent concealment claim, and the consumer protection laws at issue require some showing of reliance, either as an element itself or as a theory of causation in order to survive under Rule 9(b) – or even Rule 8.  That the Court so found as against the original equipment manufacturer in *Chapman* only further supports the finding as against LGEUS – a component part supplier – here.[11]

Although courts in several states have held that, under their state's respective consumer protection statute or deceptive trade practices statute, actual or reasonable reliance is not a necessary element, those courts have still required that the plaintiff allege and ultimately prove that there is some causal nexus between the defendant's

---

Texas, although not dealt with in *Chapman*.  *See, e.g.*, *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Texas*, 249 S.W.3d 480, 490 (Tex. App. 2008) (reliance required under Texas Deceptive Trade Practices Act).

[11] **AZ:** *Naiman v. Alle Processing Corp.*, No. 20-0963, 2020 WL 6869412, at *7 (D. Ariz. Nov. 23, 2020); **CA:** *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017); **FL:** *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1280 (S.D. Fla. 2021); **GA:** *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1375 (M.D. Ga. 2011); **IL:** *Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 860 (N.D. Ill. 2021); **KS:** *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 507 (Kan. Ct. App. 2020); **MA:** *Kamakura, LLC v. Greater New York Mut. Ins. Co.*, 525 F. Supp. 3d 273, 290 (D. Mass. 2021); **MI:** *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011); **NY:** *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10, (2020); **OR:** *Martell v. Gen. Motors LLC*, No. 20-284, 2021 WL 1840759, at *5 (D. Or. May 7, 2021); **VA:** *Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019); **WA:** *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wash. 2d 260, 277 (2011); **WI:** *Novell v. Migliaccio*, 309 Wis. 2d 132, 150–51 (2008).

alleged conduct and the plaintiff's damages.  *See, e.g.*, *Hernandez*, 58 Kan. App. 2d at 506–07 ("[C]onsumers must still show that their damage relates to the alleged misrepresentation.").  Reliance is a way to establish this causal nexus.  *See, e.g.*, *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 197 Wash. App. 875, 885–86 (Wash. Ct. App. 2017).  Indeed, a showing of reliance is integral to proving causation for certain types of unlawful trade practices.  *See, e.g.*, *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015). ("Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved and the loss allegedly caused by it.").

When the unfair or deceptive trade practice alleged is false advertising and the alleged loss is overpayment of the purchase price, reliance becomes a necessary sub-element of causation.  For instance, in *Pearson*, the Oregon Supreme Court considered whether the plaintiffs needed to show that a substantial factor in each class member's decision to purchase Marlboro Lights was the representations on the packaging related to lower tar and nicotine in order to state a claim under Oregon's consumer protection law.  358 Or. at 125.  The court found that the plaintiffs did indeed have to show reliance to prove the claim, which was that they did not get what they thought they were buying.  *Id.* at 127.  That the plaintiffs alleged both affirmative misrepresentations and failures to disclose material facts did not change the finding – either way, the plaintiff's theory depended on establishing that the

28

defendants' representations and/or omissions induced them into believing that they were buying something different than what they actually purchased.  *Id.*

In *Hernandez*, a Kansas Court of Appeals found it necessary to consider reliance to determine whether there was a causal connection between an attorney's exaggerated advertising and harm to the plaintiff who hired the attorney.  58 Kan. App. 2d at 507.  Despite noting that reliance was not an element of the claim, the court could only connect the advertising to any harm that the plaintiff might have suffered by looking to her reliance on the lawyer's advertisements.  *Id.* at 507–08.

Plaintiffs and Class members here allege that they did not get the vehicles they paid for – vehicles that could travel a range of 238 or 259 miles on a single, safe charge – because of a combination of alleged affirmative misrepresentations and omissions.  *See, e.g.*, FACC ¶¶ 13–14.  Under this theory as pled, the only plausible way for Plaintiffs to allege a causal nexus between the alleged misrepresentations/omissions and the alleged harm is to show that the Plaintiffs and Class members relied on the alleged misrepresentations and omissions when deciding to purchase their Bolts.  *See, e.g.*, *Pearson*, 358 Or. at 127.  To make this showing, Plaintiffs must identify marketing materials, communications, and product information that contain the misrepresentations, or that contain representations that are made misleading because of the alleged omissions.  Additionally, they must allege that they saw and relied on such communications in deciding to purchase their

cars.  *See, e.g.*, *Flores*, No. 20-10972, 2021 WL 1122216, at *18 ("[N]one of the named Plaintiffs allege that they saw or relied on any representation . . . ."); *Beck*, 273 F. Supp. 3d at 755–56 (finding lack of reliance in absence of allegations that plaintiffs ever saw or heard the representations at issue).

Of course, the deceptive, false, or misleading communications at issue must have been made by the defendant whose conduct is under review – here component part supplier LGEUS.  *Great N. Ins. Co.*, 524 F. Supp. 3d at 860 (holding that claim against Amazon under Illinois Consumer Fraud Act failed because "Amazon did not make the deceptive statement").  Plaintiffs have made no such required showing as to LGEUS.  There is not a single statement alleged to have been made by LGEUS anywhere in the 300+ page FACC.  The only alleged communication to have been made by any "LG" entity before the named plaintiffs purchased their Bolts (LG Electronics Vehicle Components' CEO's 2015 statement that LG's selection as GM's technology partner for electric vehicles is "indicative of exactly the type of contributions that traditional tech companies can make in the automotive space" (FACC ¶ 311)) does not refer at all to the estimated range of the Bolt or the ability to safely charge it to 100%.  In fact, it does not even refer to the Bolt or make any statement that has any relevance or bearing to Plaintiffs' claims.

Additionally, Plaintiffs do not allege that any of them relied on any communication or omission from component supplier LGEUS in purchasing their

Bolts.  Each plaintiff claims to have decided to purchase a Bolt "after considering GM's representations about the Vehicle" including the represented range, and, for most of the named plaintiffs, in reliance on "GM's reputation for manufacturing quality vehicles."  FACC ¶¶ 29, 36, 44, 52, 60, 69, 76, 82, 90, 98, 112, 120, 132, 139, 147, 155, 164, 173, 181, 189, 198, 205, 221, 230, 240, 248, 259, 266, 274.

Thus, it is clear from the facts alleged in the FACC that all of the communications to Plaintiffs about the Bolt (albeit unidentified communications that appear to have no relevance to the substance of their claims) were from GM, not LGEUS, and that Plaintiffs claim to have made their decisions to purchase Bolts in reliance on those communications and other factors.  As to component part supplier LGEUS, however, Plaintiffs have failed to allege that LGEUS made any statement whatsoever, and certainly not a false or deceptive statement upon which any plaintiff relied in deciding to purchase his or her Bolt.  This dooms their claims for fraudulent concealment and deceptive trade practices under all of the state consumer protection acts at issue here. *See Great N. Ins. Co.*, 524 F. Supp. 3d at 860 (dismissing claim where defendant neither made deceptive statement nor bore responsibility for the statement); *Wozniak*, 2019 WL 108845, at *3 (dismissing consumer protection claims based on misrepresentations related to a lug nut product defect because "Plaintiffs simply have not pleaded any representations related to lug nuts").

## III.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS

Plaintiffs' claims suffer from additional deficiencies, and LGEUS joins in and incorporates by reference the arguments made in the memoranda of law submitted in support of the concurrently filed motions to dismiss of LGES Michigan and GM:

- Plaintiffs' common law fraud claims in Arizona, California, Florida, Michigan, Texas, and Wisconsin are barred by the economic loss rule, which prohibits recovery in tort for economic damages allegedly caused by fraud absent personal injury or property damage other than damage to the product at issue.  *See, e.g.*, **AZ:** *Barrio v. Gisa Invs. LLC*, No. 20-00991, 2020 WL 6081495, at *2 (D. Ariz. Oct. 15, 2020); **FL:** *In re Takata Airbags Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338–39 (S.D. Fla. 2016); **MI:** *TIBCO Software, Inc. v. Gordon Food Serv., Inc.*, No. 03-00025, 2003 WL 21683850, at *3–5 (W.D. Mich. July 3, 2003); **WI:** *Tietsworth*, 270 Wis. 2d at 162–63; *Robinson v. Gen. Motors LLC*, No. 20-00663, 2021 WL 3036353, at *11 (D. Del. July 19, 2011) (dismissing Florida, Michigan, New York, and Texas fraudulent concealment claims).  *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 28–31; GM's Mem. in Supp. of Mot. to Dismiss (ECF No. 36) at 25–26.

- The Texas DTPA and Virginia CPA do not apply to component part suppliers.  *Chavez v. Ford Motor Co.*, No. 18-00109, 2018 WL 6190601, at *3 (W.D. Tex. Sept. 26, 2018); *In re All Pending Chinese Drywall Cases*, 80 Va. Cir. 69 (Va. Cir. Ct. 2010).  *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 31–32.

- Plaintiffs' consumer protection claims under the laws of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan and Virginia law fail because those statutes exclude acts and practices that are regulated and authorized by state and/or federal law, including automotive sales. *See, e.g.*, **AZ:** 9A Ariz. Prac., Business Law Deskbook § 42:2 (2021 ed.); **FL:** *Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 08-001168, 2008 WL 4329876, at *7 (M.D. Fla. 2008); **GA:** *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 805 (Ga. Ct. App. 1998); **IL:** *Osman v. Ford Motor Co.*, 833 N.E.2d 1011, 1022 (Ill. App. Ct. 2005); **MI:** *Chapman*, 531 F. Supp. 3d at 1301–02; **MI:** *Gant v. Ford Motor*

32

*Co.*, 517 F. Supp. 3d 707, 719–20 (E.D. Mich. 2021); **VA:** *Ali v. Allergan*, No. 12-00115, 2012 WL 3692396, at *19 (E.D. Va. 2012); *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 33–38.

- Plaintiffs' claims based on the GFBPA, VCPA, and common law fraud under Virginia law cannot proceed as class actions. *See, e.g.*, Ga. Code § 10-1-399(a) (prohibiting suit under GFBPA "in a representative capacity"); *Flores*, No. 20-10972, 2021 WL 1122216, at *23–24; *Chapman*, 531 F. Supp. 3d at 1301. *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 38–39.

- Plaintiffs' fraudulent concealment claims under New York and Texas law fail because Plaintiffs have not plead that an alleged defect has actually manifested. *See, e.g.*, **NY:** *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997); *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 771–74 (S.D. Tex. 1999). *See* LGES See LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 30, n.32; GM's Mem. in Supp. of Mot. to Dismiss (ECF No. 36) at 23–24.

- Plaintiffs requests for injunctive relief under the California LRA, Florida UDTPA, Georgia FBPA and UDTPA, Illinois UDTPA, Kansas CPA, Massachusetts Act, Oregon UTPA, Texas DTPA, and Washington CPA are precluded by their failure to allege a likelihood of future harm. *See, e.g.*, *Matanky*. 370 F. Supp. 3d at 800-01. *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 9, n.9.

- Plaintiffs cannot seek damages under the Illinois UDTPA or Georgia UDTPA, which provide for only injunctive relief. *See, e.g.*, *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 996 (Ill. App. Ct. 2008); *Matanky*, 370 F. Supp. 3d at 800. *See* LGES Michigan's Mem. in Supp. of Mot. to Dismiss at 9, n.9.

## IV. PLAINTIFFS' ALLEGED INJURIES ARE MOOTED BY GM'S RECALL AND REPLACEMENT OF THE DEFECTIVE BATTERIES

Article III, Section 2 of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" which requires a plaintiff to plead an "actual and concrete dispute" that must be "extant at all stages of review, not merely at the

time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal citations and quotations omitted).  Courts have further and separate discretion to determine a case "prudentially moot" where "events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.).  This includes instances in which a case or controversy may still survive in a diminished form, but "prolonging the litigation any longer would itself be inequitable." *Id.*

Plaintiffs' alleged injuries here – including lower performance of their vehicle, reduced range, safety hazards, difficulty in finding parking, and reduced value of their vehicles, *see, e.g.*, FACC ¶ 19 – are all directly attributable to the simultaneous presence in their battery of a torn anode tab and a folded separator, a rare defect which appeared only in a very small number of the batteries.  *Id.* ¶ 387. In light of this alleged defect, GM has announced that it will fully replace defective batteries.[12]  *Id.* ¶¶ 9, 388.  This remedy is designed to restore the range of the affected vehicles and remove any risk of fire, mooting Plaintiffs' injuries.

---

[12]  Plaintiffs allege "[u]pon information and belief," that "GM has not agreed to replace the defective Batteries or provide any other remedial measures that will provide Plaintiffs and Class members with a permanent remedy for the Battery Defect[.]"  FACC ¶ 395.  This allegation is contradicted by paragraph 388 of the FACC (among others), which includes a mailed notice from GM to all owners and

Plaintiffs attempt to avoid the effect of the recall on their claims by pleading that they in fact suffered an injury at the point of purchase which cannot be remedied by the proposed recall. *Id.* ¶ 16. This strategic pleading reflects Plaintiffs' attempt to mirror the plaintiffs' claimed injuries in *Raymo*, in which this Court permitted claims for monetary damages arising from a "washcoat defect" even where the defendants had instituted a voluntary recall to remedy the defect. 475 F. Supp.3d at 695. The *Raymo* plaintiffs alleged that the washcoat defect – which was purportedly known to defendants before they sold the vehicles to plaintiffs, *id.* at 687–88 – immediately caused their vehicles to exceed emissions limits by 50%, contradicting the defendant's statements regarding the fuel efficiency of the vehicles. *Id.* at 687. The *Raymo* plaintiffs claimed that had they known the vehicles were not emissions-compliant at the time of purchase, they would have paid $8,000-$10,000 less for the vehicles, and therefore suffered an immediate "point-of-purchase" injury that could not be remedied by the voluntary recall. *Id.* at 693.

Although Plaintiffs try to frame their alleged injury here as point-of-purchase, the reality is that they allege a substantially different injury than the *Raymo* plaintiffs. The alleged injury in *Raymo* was the diminution in value resulting from greater emissions and lesser fuel economy, torque, and towing ability, which those plaintiffs

---

lessees of the Vehicles stating GM would be "replac[ing] the lithium ion battery modules in your vehicle with new lithium ion battery modules," at "no charge."

alleged to be $8,000-$10,000.  *Id.*  Here, by contrast, all of the Plaintiffs' alleged injuries (e.g. reduced range) are not inherent qualities of the vehicles, but the result of temporary mitigation measures implemented to address a rare alleged defect that "increases the risk of fire."  *See, e.g.*, FACC ¶¶ 19, 387.  Unlike the *Raymo* plaintiffs, therefore, by merely alleging, in a conclusory manner, that "consumers would have paid much less for the Vehicles" if "Defendants disclosed the Vehicles' true characteristics" FACC ¶ 16, Plaintiffs here fail to quantify the value of such injuries. The full (and free) installment of a new battery without a torn anode tab and folded separator will resolve the potential for future fires, eliminate the need for mitigation measures, and therefore "necessarily remediate the loss caused to Plaintiffs by their allegedly having to pay a . . . premium."  *Raymo*, 475 F. Supp.3d at 695.  Indeed, Plaintiffs here indicate in their own allegations that a permanent remedy for the batteries that removes the temporary charging and range restrictions would "restore the EPA-estimated driving range" and provide them with the vehicles they bargained for.  *Compare* FACC ¶ 388 *with id.* ¶¶ 394–95 (noting that remedy for temporary range limitations would be full battery replacement).

Moreover, even if Plaintiffs could allege a point-of-purchase injury, their alleged injuries here are indistinguishable from those alleged most recently in *Flores*, in which Judge Drain concluded that plaintiffs' claims for monetary damages, arising from an alleged defect in the radiator cooling fan in certain Jeep

vehicles, were mooted by defendant's proposed recall and replacement of the defective fans.  No. 19-10417, 2020 WL 7024850.  As here, the *Flores* plaintiffs alleged that they were injured at the point of purchase because they paid more for their vehicles than they would have, had they known of the fan defect.  *Id.* at *4.  Holding that the *Flores* plaintiffs' claims were prudentially moot, Judge Drain focused on the defendant's recall efforts, which were designed to "remove[] the defect upon which the plaintiffs' diminished-value injury claim is based."  *Id.* at *4 (citing *Hadley v. Chrysler Grp., LLC*, 624 Fed. App'x 374, 378 (6th Cir. 2015)).

*Flores* and *Raymo* are not inconsistent.  In *Raymo*, this Court addressed the question as one of injury-in-fact for Article III standing.  In discussing the "prevailing jurisprudence in this district," the Court explained that "a consumer who alleges she would not have purchased a vehicle (or would have paid less for it) had the manufacturer not misrepresented the vehicle to customers' detriment or omitted mention of its significant limitations, ***has alleged a plausible injury-in-fact***."  *Raymo*, 475 F. Supp. 3d at 694 (emphasis added).  The Court's holding was that "Plaintiffs ***have pled an injury*** . . . ***sufficient to establish standing***."  *Id.* at 695 (emphasis added).  This is critical because the threshold for injury-in-fact is low.  *See, e.g.*, *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Plaintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at

the pleading stage of the litigation."). In *Flores*, by contrast, Judge Drain considered Article III standing and prudential mootness separately as "two branches to the doctrine of mootness." *Flores*, No. 19-10417, 2020 WL 7024850 at *3. This is consistent with then-Judge Gorsuch's analysis in *Winzler* that "even when the risk of recalcitrance is injury enough to keep the case alive as an Article III matter, it isn't necessarily enough to avoid the application of prudential mootness doctrine." 681 F.3d at 1210–11. Judge Drain looked not to whether an injury-in-fact had been alleged, but to whether events had "'so overtake[n] a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits,' and there ***may*** be no claim for monetary damages." *Flores*, No. 19-10417, 2020 WL 7024850 at *4 (quoting *Winzler*, 681 F.3d at 1210) (emphasis added). Judge Drain dismissed the claims based on the likely impact of the recall on the available damages, without addressing whether the plaintiffs had Article III standing. Here, LGEUS is asking the Court to find Plaintiffs' claims prudentially moot, not that they lack standing, making *Flores* persuasive and *Raymo* inapposite.

Cases from other districts support this conclusion. In *Sugasawara v. Ford Motor Company*, the court found that plaintiffs had "not articulated any plausible theory of economic loss" where an alleged seatbelt defect was remedied through the implementation of a recall, despite that the plaintiffs had arguably suffered an economic injury at the point of purchase. No. 18-06159, 2019 WL 3945105 at *6

38

(N.D. Cal. Aug. 21, 2019) (citing *Hadley*, 624 Fed. App'x at 378); *see also Kommer v. Ford Motor Co.*, 17-00296, 2017 WL 3251598, at \*5 (N.D.N.Y. July 28, 2017) (availability of free repair of alleged defect "defeats [plaintiff's] price-premium theory of injury"); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab.*, 915 F. Supp.2d 1151 (C.D. Cal. 2013) (claim mooted where defect was resolved in software update).  This approach is consistent with the Constitutional standing analysis, and would permit the recall to take its course and remedy the defective batteries, thereby assuaging this Court's concern that permitting damages claims to proceed against manufacturers may "disincentivize" them from "incurring the expense of voluntary recalls in the first place."  *Raymo*, 475 F. Supp. 3d at 695.

Finally, Plaintiffs claim that even if the recall goes forward, it is unlikely to moot their claims because GM's interim remedies to date have been "shown to be ineffective."  FACC ¶¶ 394, 397 ("GM's ineffective remedies to date provide no assurances to consumers that such individuals are able to charge their vehicles to 100% capacity and are protected from a potentially deadly battery fire.").  But these allegations are purely conclusory; Plaintiffs offer no support for their conjecture that a full battery replacement will not remedy the defective battery, nor could they given that the replacement battery will remove the simultaneous presence of the defective components, eliminating any risk of fire.  *Id.* ¶ 387.

These general, conclusory allegations are insufficient for Plaintiffs to "carry the[ir] burden of showing a 'cognizable danger' of failure," as required to avoid dismissal for prudential mootness. *Winzler*, 681 F.3d at 1212 ("A plaintiff must identify something more than the mere possibility of failure. . . ."); *see also Hadley*, 624 F. App'x at 380 ("The plaintiffs' assertion that the ORC Module repair may not be effective does not evidence an actual or imminent injury," but rather a "hypothetical possibility that the plaintiffs' vehicle was not adequately repaired."). In the absence of any plausible factual allegations as to the efficacy of GM's recall, this Court should likewise refuse to "speculate" as to whether the replacement battery would be "insufficient to permanently cure the defect" in Plaintiffs' vehicles. *Miller* , No. 17-14032, 2018 WL 2740240, at *7.

## **CONCLUSION**

For the reasons set forth herein, the Defendants respectfully request that the Court grant their motion to dismiss the Complaint, with prejudice.

Dated:  December 17, 2021          By:  /s/ A. Michael Palizzi
          New York, NY              A. Michael Palizzi (P47262)
                                    MILLER, CANFIELD, PADDOCK AND STONE, PLC.
                                    150 West Jefferson Avenue, Suite 2500
                                    Detroit, Michigan 48226
                                    Tel. (313) 496-7645
                                    Fax: (313) 496-7500
                                    palizzi@millercanfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: 212-918-3000
F: 212-918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the

foregoing paper with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to all counsel of record.

Dated: December 17, 2021
New York, NY

By:  /s/ A. Michael Palizzi
A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK AND STONE,
PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Tel. (313) 496-7645
Fax: (313) 496-7500
palizzi@millercanfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T:  212-918-3000
F:  212-918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics U.S.A., Inc.*