**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| In re Chevrolet Bolt EV Litigation | **No. 2:20-13256-TGB-CI**<br><br>Judge Terrence G. Berg<br>Magistrate Judge Curtis Ivy, Jr. |

## <u>MOTION TO DISMISS OF DEFENDANT LG ELECTRONICS, INC.</u>

PLEASE TAKE NOTICE that, by its counsel, Defendant LG Electronics, Inc. ("LGEKR") hereby moves to dismiss the Amended Consolidated Class Action Complaint ("FACC") of Plaintiffs Robin Altobelli, *et al*. (collectively, "Plaintiffs") in its entirety as against LGEKR and with prejudice pursuant to Fed. R. Civ. P. 9(b) for failure to plead with particularity and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds and legal authority for dismissing the FACC are set forth in the attached memorandum of law, and as addressed in that memorandum.

As required by Local Rule 7.1(a), counsel for LGEKR sought concurrence from Plaintiffs' counsel in this motion. Plaintiffs' counsel did not concur with the relief sought.

WHEREFORE, LGEKR respectfully requests that the Court issue an order granting LGEKR's motion to dismiss.  LGEKR respectfully requests such further and other relief as the Court deems appropriate.

Dated: July 8, 2022

By: _/s/ A. Michael Palizzi
A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK
AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
T: (313) 496-7645
F: (313) 496-7500
palizzi@miller.canfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: (212) 918-3000
F: (212) 918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re Chevrolet Bolt EV Litigation

No. 2:20-13256-TGB-CI

Judge Terrence G. Berg
Magistrate Judge Curtis Ivy, Jr.

## MEMORANDUM OF LAW IN SUPPORT OF
## LG ELECTRONICS, INC.'S MOTION TO
## <u>DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

Dated: July 8, 2022

A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK
AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
T: (313) 496-7645
F: (313) 496-7500
palizzi@miller.canfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: (212) 918-3000
F: (212) 918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics,*
*Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED..............................................................vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY
........................................................................................................................viii

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ......................................................................................2

      A.    The Defendants ..........................................................................2

      B.    Plaintiffs Treat LGEKR and LGEUS (and all LG Entities)
           the Same Throughout the FACC .................................................3

      C.    GM Voluntarily Recalls the Chevy Bolt.....................................3

      D.    Plaintiffs Failed to Make Any Distinctions Between
           Defendants ..................................................................................4

LEGAL STANDARDS ..........................................................................................5

ARGUMENT ..........................................................................................................6

I.    PLAINTIFFS DO NOT PLEAD THEIR CLAIMS AGAINST
      LGEKR WITH THE PARTICULARITY REQUIRED BY RULE
      9(B).............................................................................................6

      A.    Plaintiffs Engage in Improper Group Pleading .........................6

      B.    Plaintiffs' Affirmative Misrepresentation Assertions Are
           Meritless.....................................................................................8

      C.    Plaintiffs' Concealment Claims Fail..........................................8

           1.    LGEKR Did Not Know About the Alleged Defects
                 When Plaintiffs Purchased Their Vehicles......................9

        i.      LGEKR Did Not Know of the Alleged Battery
              Defects in the 2017–2019 Chevy Bolts Until
              November 2020 ......................................................9

        ii.     Plaintiffs Cannot Establish LGEKR Knew of a
              Battery Defect in the 2020–2022 Chevy Bolts ....12

     2.    Certain Plaintiffs' Claims Fail For the Additional
          Reason That LGEKR Had No Duty to Make Any
          Disclosure to Them ........................................................13

II.    PLAINTIFFS DO NOT PLEAD NECESSARY CAUSATION
      OR RELIANCE....................................................................15

III.   PLAINTIFFS' CLAIMS AGAINST LGEKR FAIL FOR
      NUMEROUS ADDITIONAL REASONS .........................17

IV.   PLAINTIFFS' ALLEGED INJURIES ARE MOOTED BY GM'S
      RECALL AND REPLACEMENT OF THE DEFECTIVE
      BATTERIES ........................................................................18

CONCLUSION ........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................5

*Chapman v. Gen. Motors LLC*,
  531 F. Supp. 3d 1257 (E.D. Mich. 2021) ................................................5, 14, 15

*Coffey v. Foamex L.P.*,
  2 F.3d 157 (6th Cir. 1993) ...................................................................6

*Counts v. Gen. Motors, LLC*,
  No. 1:16-CV-12541, 2022 WL 2079757 (E.D. Mich. June 9, 2022) ................16

*Elliott v. Gen. Motors LLC*,
  No. 21-12561, 2022 WL 1815494 (E.D. Mich. June 2, 2022) ....................10, 11

*Flores v. FCA US LLC*,
  No. 19-10417, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020) ......19, 20, 21, 22

*Flores v. FCA US LLC*,
  No. 20-10972, 2021 WL 1122216 (E.D. Mich. Mar. 24, 2021) ........................16

*Great N. Ins. Co. v. Amazon.com, Inc.*,
  524 F. Supp. 3d 852 (N.D. Ill. 2021) ...................................................17

*Kommer v. Ford Motor Co.*,
  17-00296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ...........................22, 23

*LiMandri v. Judkins*,
  52 Cal.App. 4th 326 (1997) ................................................................14

*Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*,
  No. 17-11888, 2017 WL 4098853 (E.D. Mich. Sept. 15, 2017) .........................7

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ............................................12

*Miller v. Gen. Motors, LLC*,
No. 17-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018) ........................8, 9

*Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Texas*,
249 S.W.3d 480 (Tex. App. 2008) ......................................................................15

*Niedoliwka v. Inglin*,
No. 327576, 2016 WL 6127696 (Mich. Ct. App. Oct. 18, 2016) .....................14

*Pearson v. Philip Morris, Inc*.,
358 Or. 88 (2015) ........................................................................................15, 16

*Raymo v. FCA US LLC*,
475 F. Supp. 3d 680 (E.D. Mich. 2020) ...........................................................20

*Republic Bank & Tr. Co. v. Bear Stearns Co.*,
683 F.3d 239 (6th Cir. 2012) ...............................................................................5

*Simon v. SeaWorld Parks & Ent., Inc*.,
No. 3:21-CV-1488-LL-MSB, 2022 WL 1594338 (S.D. Cal. May
19, 2022) ...........................................................................................................16

*Smith v. Gen. Motors LLC*,
988 F.3d 873 (6th Cir. 2021) .......................................................................10, 11

*Sugasawara v. Ford Motor Company*,
No. 18-06159, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ..........................22

*Sweezey v. C.R. Bard Inc*.,
No. 19-CV-2172, 2020 WL 1237394 (N.D. Tex. Mar. 12, 2020) .....................14

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod.*
*Liab*.,
915 F. Supp.2d 1151 (C.D. Cal. 2013) ..............................................................23

*Walton v. Grammer Indus. Inc*.,
No. 20-12298, 2021 WL 4458761 (E.D. Mich. Sept. 29, 2021) .........................9

*Weidman, et al. v. Ford Motor Company*,
No. 18-12719, 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ....................21, 22

*Winzler v. Toyota Motor Sales U.S.A., Inc*.,
681 F.3d 1208 (10th Cir. 2012) ....................................................................19, 22

*Wozniak v. Ford Motor Co.*,
    No. 17-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ......................... 8, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5

Fed. R. Civ. P. 9(b) ................................................................................. 5, 6, 7, 8

## STATEMENT OF ISSUES PRESENTED

Plaintiffs allege a defect in the batteries of model year 2017–2022 Chevrolet Bolt electric vehicles.  Since the issues first arose, there have been investigations into the issues and a launch of an ongoing recall process aimed at remedying any battery defects.  In the meantime, Plaintiffs filed this consolidated lawsuit, asserting 33 causes of action sounding in fraud against LGEKR – one of the suppliers of component parts to GM.

LGEKR's motion to dismiss the lawsuit presents a number of issues:

1. Whether Plaintiffs' fraud claims should be dismissed because Plaintiffs engage in improper group pleading.  (*See* Section I.A, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–12, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

2. Whether Plaintiffs' misrepresentation claims should be dismissed because Plaintiffs do not identify any actionable representations by component part supplier LGEKR.  (*See* Section I.B, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11-12, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77, to the extent they are based on a misrepresentation theory. | State consumer protection | All Plaintiffs |

3. Whether the consumer protection and common-law fraud claims brought by Plaintiffs who purchased or leased a Bolt should be dismissed because Plaintiffs do not allege that component part supplier LGEKR knew that the alleged battery defect existed before any Plaintiff purchased or leased his or her vehicle.  (*See* Section I.C.1, infra.)

vi

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–12, 19, 24–25, 30–31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

4. Whether Plaintiffs' common-law fraud claims should be dismissed for failure to allege the requisite duty to disclose. (*See* Section I.C.2, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

5. Whether Plaintiffs plead the necessary causation and reliance to support their consumer protection and common-law fraud claims against component part supplier LGEKR. (*See* Section II, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–12, 19, 24–25, 30, 31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

6. Whether Plaintiffs' claims are subject to dismissal for prudential mootness because GM's recall and replacement of the defective batteries will moot the alleged injuries. (*See* Section IV, infra.)

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 6, 11–12, 19, 24–25, 30, 31, 36, 41, 46, 51–52, 57, 62, 67, 72, 77 | State consumer protection | All Plaintiffs |
| 3, 9, 18, 22, 28, 34, 39, 44, 49, 55, 60, 65, 70, 75, 80 | Fraud by concealment | All Plaintiffs |

<u>**STATEMENT OF CONTROLLING**
**OR MOST APPROPRIATE AUTHORITY**</u>

The controlling or most appropriate authority for the relief that LGEKR seeks includes:

Cases

1.  *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257 (E.D. Mich. 2021)

2.  *Flores v. FCA US LLC*, No. 19-10417, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020)

3.  *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

4.  *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021)

5.  *Wozniak v. Ford Motor Co*., No. 17-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

## **INTRODUCTION**

Defendant LG Electronics, Inc.'s ("LGEKR") motion to dismiss follows the same pending motion filed by Defendant LG Electronics U.S.A., Inc.'s ("LGEUS"). ECF No. 49.  Plaintiffs make no effort to distinguish LGEUS from LGEKR in their Amended Consolidated Complaint ("FACC").  ECF No. 27.  Indeed, they allege the same facts and the same legal claims against both defendants, never distinguishing one from the other.  They are, however, separate corporate entities, with distinct and different business roles as they relate to the matters alleged by Plaintiffs in the FACC.

Plaintiffs make 33 claims against LGEKR, all of which involve allegedly fraudulent conduct regarding a purported defect in the battery that powers Defendant General Motors LLC's ("GM") Chevy Bolts.  However, Plaintiffs do not cite to a *single* actionable misrepresentation or omission made by LGEKR in their FACC. Instead, Plaintiffs impermissibly group LGEKR together with the other Defendants to conjure the perception that LGEKR has said anything that could be considered fraudulent.

Plaintiffs cannot cite a fraudulent LGEKR statement because none exist. LGEKR could not misrepresent or conceal information regarding the Bolt's battery because it did not know about the alleged defects when Plaintiffs purchased their

vehicles.  Furthermore, even if LGEKR had known about the alleged defect at the time, it did not have a duty to disclose that information.

 Plaintiffs' claims also fail because they have not suffered any unaddressed injuries stemming from the purported battery defect.  GM is implementing a comprehensive recall that will return the batteries and vehicles to normal performance and render Plaintiffs' claims prudentially moot.

These points are addressed below.  For purposes of efficiency, LGEKR joins in and incorporates by reference the arguments made in LGEUS's memoranda of law submitted in support of its motion to dismiss.  *See generally* ECF. No. 49.

## STATEMENT OF FACTS[1]

### A.    The Defendants

GM is an automotive manufacturer that produces, sells, and markets the Chevy Bolt.  *See* FACC ¶¶ 281, 282, 303.  LGEKR is a publicly traded Korean corporation and wholly owns LGEUS, its U.S. subsidiary.  *Id.* ¶¶ 296–302.  LG Chem Ltd. ("LG Chem") is the parent of a different group of companies and is separately traded on the Korea Exchange.  *Id.* ¶ 285.  LG Chem owns 100% of LG Energy Solution, Ltd. ("LGES"), which owns 100% of LG Energy Solution

---

[1] The facts set forth in this section are based on the Amended Consolidated Complaint and accepted only for purposes of this Motion.

Michigan, Inc. ("LGES MI").  *Id.* ¶¶ 284–91.  LGEKR and LGEUS manufacture

and supply component parts of the batteries at issue.[2]

### B.    Plaintiffs Treat LGEKR and LGEUS (and all LG Entities) the Same Throughout the FACC

The factual circumstances surrounding LGEUS's motion to dismiss apply to

this motion, as well.  Plaintiffs treat both defendants identically throughout the

FACC, only distinguishing LGEKR from LGEUS when listing all the defendants

(*id.* ¶¶ 1, 296–302) and alleging that the Eastern District of Michigan has personal

jurisdiction over both (*id.* ¶ 24).  Every other time Plaintiffs mention LGEKR or

LGEUS in the FACC, they either cite to "LG Electronics" generally, rather than

distinguish between the Korean parent and U.S. subsidiary, *see id.* ¶¶ 25, 362, 364,

390, or they refer to a different LG entity, *see id.* ¶¶ 311, 363.  There is nothing else

in the FACC that distinguishes LGEKR from LGEUS.

### C.    GM Voluntarily Recalls the Chevy Bolt

Model Year 2017–2019 Chevy Bolts are powered by a design level N2.1

lithium-ion battery, while 2020–2022 Bolts operate with a design level N2.2 battery.

FACC ¶¶ 7; Ex. BF (ECF No. 27-59, PageID.2091).  Both battery types were

manufactured by LG Chem.  FACC ¶ 332.

---

[2] Plaintiffs' description of the role of LGEKR in the manufacturing and supply of the batteries is addressed as pled for purposes of this motion.

After GM received complaints alleging that the Bolt's battery caught fire, it opened an investigation, voluntarily recalled the applicable vehicles (FACC ¶¶ 7, 366; Ex. BF (Ex. No 27-59, PageID.2089)), temporarily modified the battery's charging capacity and how drivers used their vehicles (FACC ¶¶ 368–69; Ex. BF (Ex. No 27-59, PageID.2089–91); FACC ¶ 382; Ex. C (ECF No. 27-4, PageID.1513–14); Ex. D (ECF No. 27-5, PageID.1517)), and agreed to provide replacement battery modules for all vehicles (FACC ¶ 388). There is no allegation that LGEKR ever received any complaints from Bolt drivers.

### D. Plaintiffs Failed to Make Any Distinctions Between Defendants

Plaintiffs are 34 individuals that purchased or leased 2017–2022 model year Chevy Bolts in one of fourteen states between March 17, 2017, and July 26, 2021. FACC ¶¶ 27–279. The FACC does not make any specific allegations against LGEKR. In fact, just as Plaintiffs group LGEKR and LGEUS together, *see supra* Section B, they also lump LGEKR with the other Defendants, including GM. Plaintiffs only cite to two statements made by any LG entity. The first is a statement from the CEO of LG Electronics Vehicle Components Co. discussing the company's status as "GM's EV technology partner," FACC ¶¶ 311, 363, and the second is a confirmation from "LG" that it was working with GM on the Bolt battery recall. *Id.* ¶¶ 364, 390.

4

## <u>LEGAL STANDARDS</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For fraudulent misrepresentation claims, Rule 9(b) requires plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1287 (E.D. Mich. 2021) (Berg, J.) (quoting *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 705 (E.D. Mich. 2020) (Berg, J.)). As to fraud by concealment, Rule 9(b) requires plaintiffs to plead: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud."  *Republic Bank & Tr. Co. v. Bear Stearns Co.*, 683 F.3d 239, 256 (6th Cir. 2012).  Plaintiffs have failed to meet these standards.

## ARGUMENT

## I.   PLAINTIFFS DO NOT PLEAD THEIR CLAIMS AGAINST LGEKR WITH THE PARTICULARITY REQUIRED BY RULE 9(B)

Every claim against LGEKR sounds in fraud, and so must satisfy Rule 9(b).[3] In order to state a claim for fraud, the complaint must include enough details to provide defendants with "sufficient notice" of the relevant claims against them. *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

Plaintiffs' claims against LGEKR suffer from the same defects as those pled against LGEUS, not to mention the other defendants.  Plaintiffs again improperly rely on group pleading, failing to provide ***any*** examples of a misrepresentation attributable to LGEKR.  Plaintiffs also do not allege that LGEKR knew about the defect or had a duty to make a disclosure.  Therefore, all of Plaintiffs' claims against LGEKR[4] fail.

### A.   Plaintiffs Engage in Improper Group Pleading

As discussed above, Plaintiffs group LGEKR together with LGEUS and the other defendants throughout the FACC.  *See supra* Section B.  This pleading tactic is fatal to their claims.[5]

---

[3] LGEKR incorporates by reference LGEUS's arguments regarding Plaintiffs' inability to satisfy Rule 9(b).  ECF No. 49, PageID.3130–31.

[4] Counts 3, 6, 9, 11–12, 18, 19, 22, 24–25, 28, 30–31, 34, 36, 39, 41, 44, 46, 49, 51–52, 55, 57, 60, 62, 65, 67, 70, 72, 75, 77, 80.

[5] LGEKR incorporates by reference the group pleading arguments in LGEUS's motion to dismiss.  *See* ECF No. 49, PageID.3132–34.

Plaintiffs combine LGEKR with the other four LG defendants as a collective "LG," and lump the LG entities together with GM and refer to the group as "Defendants."   However, Plaintiffs acknowledge – as they must – that the LG companies are not intertwined:  LGEKR and LG Chem are independently listed on the Korean stock exchange.  *See* FACC ¶¶ 285, 297.  Plaintiffs also do not identify which Defendant made the statements that allegedly misrepresented the Bolt batteries, nor which Defendant allegedly omitted relevant information.

This is improper group pleading and violates Rule 9(b).  Fraud-based allegations are "deficient" when "the claims are directed at the defendants *en masse*," instead of at specific defendants.  *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*, No. 17-11888, 2017 WL 4098853, at *8 (E.D. Mich. Sept. 15, 2017).  Plaintiffs have done just that, as they only attribute two statements to "LG" throughout the FACC.  First, the CEO of LG Electronics Vehicle Components Co. allegedly characterized that company's status as "GM's EV technology partner" as being "indicative of exactly the type of contributions that traditional tech companies can make in the automotive space."  FACC ¶¶ 311, 363.  Second, LG allegedly confirmed that it was working with its "client and partner . . . to ensure that the recall measures are carried out smoothly . . . .  The reserves and ratio of cost to the recall will be decided depending on the result of the joint investigation looking into the root cause, currently being held by GM, LG Electronics and LG Energy Solution."  *Id.* ¶¶ 364,

390.   Neither statement plausibly contains a fraudulent misrepresentation or omission about the performance of the Chevy Bolt batteries.  Therefore, all 33 fraud-based claims against LGEKR fail.

### B.   Plaintiffs' Affirmative Misrepresentation Assertions Are Meritless

Plaintiffs fail to allege LGEKR made any affirmative misrepresentations, just as they did as to LGEUS.[6]  They claim that "Defendants" – including GM and the other LG entities – are collectively liable for violating consumer protection statutes because of their public statements about the Bolt batteries.  *See, e.g.*, FACC ¶¶ 464–67.  However, Plaintiffs fail to identify ***what*** the statements that they attribute to "LG" or "Defendants" misrepresented.  *See Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019).

### C.   Plaintiffs' Concealment Claims Fail

Likewise, Plaintiffs' claims that LGEKR fraudulently concealed material facts about the Chevy Bolt battery also fail.  Though courts impose a "***slightly*** more relaxed pleading burden" for fraudulent concealment claims than fraudulent misrepresentation, Rule 9(b) still requires Plaintiffs to specify the "who, what, when, where, and how" of the alleged concealment.  *Miller v. Gen. Motors, LLC*, No. 17-

---

[6] LGEKR incorporates by reference LGEUS's arguments regarding Plaintiffs' inability to plead affirmative misrepresentation claims.  *See* ECF No. 49, PageID.3135–36.

8

14032, 2018 WL 2740240, at \*11 (E.D. Mich. June 7, 2018) (emphasis in original). Here, Plaintiffs do not allege that LGEKR knew about the alleged battery defect when Plaintiffs purchased their vehicles, or had a duty to disclose information. That is insufficient.

### 1.   LGEKR Did Not Know About the Alleged Defects When Plaintiffs Purchased Their Vehicles

Plaintiffs do not plausibly allege that LGEKR knew of the alleged defect when Plaintiffs purchased their vehicles.   LGEKR "cannot be required to disclose something [it] did not know."  *Walton v. Grammer Indus. Inc*., No. 20-12298, 2021 WL 4458761, at \*6 (E.D. Mich. Sept. 29, 2021) (Berg, J.); *see* ECF No. 49, PageID.3137–38.

#### i.   *LGEKR Did Not Know of the Alleged Battery Defects in the 2017–2019 Chevy Bolts Until November 2020*

Based on Plaintiffs' FACC, LGEKR did not know about the alleged defect in the batteries until GM finished its investigation and initiated the first recall in November 2020, well after any Plaintiff claims to have purchased his or her vehicle. *See* FACC ¶¶ 7, 27–279.  Therefore, it was impossible for LGEKR to fraudulently omit information it did not have at the time of purchase.

Plaintiffs do not allege that LGEKR had access to any sources of information, only claiming that the purported monolithic "LG" knew about the battery's problems before Plaintiffs purchased their vehicles.  *See, e.g.*, *id*. ¶ 361.  As explained in

LGEUS's motion to dismiss, Plaintiffs' supposed sources of information are irrelevant.  ECF No. 49, PageID.3139–42.[7]  Those same arguments are applicable to LGEKR, as well.

For example, Plaintiffs claim that "LG" knew about the battery's alleged propensity to catch fire because of customer reports and GM communications regarding the Bolt's loss of propulsion.  *See, e.g.*, FACC ¶¶ 336–47.  But these communications about an unrelated problem do not confer knowledge to LGEKR about the defect at issue.  *See, e.g., Elliott v. Gen. Motors LLC*, No. 21-12561, 2022 WL 1815494, at *5–6 (E.D. Mich. June 2, 2022) (defendant's bulletins did not demonstrate defendant's knowledge of defect because the bulletins did not reference the defect at issue).  Plaintiffs attempt to paper over the disconnect by alleging "[o]n information and belief" that the same issue that led to the loss of propulsion could also lead to the fires.  FACC ¶ 349.  This is inadequate:  Plaintiffs cannot survive a motion to dismiss by relying solely on information and belief without plausibly alleging any supporting facts.  *See Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021).

The same conclusion applies to the other sources Plaintiffs cite in their attempt to confer knowledge onto LGEKR.  Plaintiffs allege that "LG Defendants" were

---

[7] LGEKR incorporates these arguments by reference.  *See* ECF No. 49, PageID.3139–3142

10

involved in the design, manufacture, and testing of the batteries.  FACC ¶ 435. However, "theoretical results from preproduction tests without accompanying verification that the tests occurred and revealed a safety defect [cannot] survive a motion to dismiss."  *Smith*, 988 F.3d at 885.  Therefore, those sources are irrelevant. For example, the plaintiffs in *Elliott* alleged that GM knowingly sold vehicles with defective headlights, and cited to, among other things, GM's pre-production testing data to support their claim.  *Elliott*, 2022 WL 1815494, at *1, *4.  The court held that plaintiffs' reliance on GM's testing was "conclusory" because Plaintiffs did not allege any facts about the outcome of testing sufficient to "raise an inference that GM knew of the defect."  *Id*. at *4–5.  So too here, Plaintiffs have not alleged that LGEKR participated in any testing that revealed the defect at issue.

Plaintiffs' reliance on NHTSA complaints fares no better.  FACC ¶¶ 353–56. Plaintiffs admit that the first complaint of a battery fire was made on July 8, 2019, *id*. ¶ 356, which eliminates the claims of the 23 Plaintiffs who purchased vehicles before then.[8]  As for the remaining Plaintiffs, the rare and infrequent NHTSA

---

[8] The plaintiffs who allegedly purchased or leased a 2017–2019 Bolt are: Altobelli, Andersen, Cannon, Mary Carr and Jan Wyers, Chitra, Chung, V. Corry, DeRosa, William Dornetto and Russel Ives, Kevin Harris and Pamela Duprez, Hickey, Kass, Kotchmar, Kuchar, Poletti, Schulz, Smith, Sterba, Strong, Vaaler, Taylor, Walker, and Thomas and Carol Whittaker.

complaints are not enough to impart knowledge of the alleged battery fires onto

LGEKR.  *See Wozniak*, 2019 WL 108845, at *3.

### ii.   *Plaintiffs Cannot Establish LGEKR Knew of a Battery Defect in the 2020–2022 Chevy Bolts*

Similarly, the Plaintiffs who purchased or leased 2020–2022 Chevy Bolts

have not pled that LGEKR purportedly knew about the risk of fire in their vehicles

before GM's expanded recall in August 2021.[9]

The 2019 Bolts included in the expanded recall were manufactured at a

different plant than the 2019 vehicles in the original recall, and the 2020–2022 Bolts

used a different battery model.  *See* Ex. BF (ECF No. 27-59, PageID.2089, 2091).

Therefore, whatever information LGEKR may have gained about the batteries in the

2017–2019 Bolts covered by the original recall cannot be imputed to the newer

batteries in the expanded recall.  This is significant, as Plaintiffs fail to make any

other plausible allegations that LGEKR knew about a defect in the batteries covered

by the expanded recall.  *See Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772,

792–93 (E.D. Mich. 2019) (Plaintiffs "[could not] plausibly allege [GM] had

---

[9] LGEKR incorporates by reference LGEUS's arguments that Plaintiffs' concealment claims fail due to a lack of knowledge of the defect in 2020–2022 vehicles.  *See* ECF No. 49, PageID.3143–44.

knowledge about defects in the 2017 [model year cars] based on complaints about the 2015 and 2016 cars, because the 2017 model had design changes").[10]

### 2. Certain Plaintiffs' Claims Fail For the Additional Reason That LGEKR Had No Duty to Make Any Disclosure to Them

Not only are Plaintiffs required to adequately allege that LGEKR knew about the alleged defect – which they do not allege – but they must also demonstrate that LGEKR had a duty to disclose information about the defect. Here, too, Plaintiffs fall short. LGEUS explained in its motion to dismiss that a component part manufacturer and supplier – which is what Plaintiffs' FACC alleges LGEKR and LGEUS to be – does not have a duty to disclose in the jurisdictions where Plaintiffs reside. ECF No. 49, PageID.3145–48; *see* FACC ¶¶ 298, 301. This is equally applicable to LGEKR, as well.[11]

Plaintiffs allege that LGEKR had a duty to disclose because LGEKR purportedly "possessed exclusive knowledge" of the risk of fire in the batteries through the design, manufacturing, and testing process. *See, e.g.*, FACC ¶ 439.

---

[10] The plaintiffs who allegedly purchased or leased a 2020–2022 Bolt are: Connelly, D. Corry, V. Corry, William Dornetto and Russell Ives, the Holbrooks, Kass, the Rocks, Vaaler, and Verzura.

[11] LGEKR incorporates by reference the arguments presented by LGES MI in Section III.C of its memorandum of law in support of its previously filed motion to dismiss, ECF No. 44, and the arguments regarding the absence of a duty to disclose in LGEUS's motion to dismiss. ECF No. 49, PageID.3144–48.

13

However, as explained above, Plaintiffs fail to allege that LGEKR knew about the defect when Plaintiffs purchased their vehicles. *See supra* Section I.C.1. Plaintiffs' claims should be dismissed for this reason alone.

Plaintiffs' claims regarding LGEKR's alleged duty to disclose fail for additional reasons, as well. For example, defendants in Michigan have a duty to disclose only if they are in a fiduciary or confidential relationship with the plaintiffs – which LGEKR is not, s*ee, e.g., Niedoliwka v. Inglin*, No. 327576, 2016 WL 6127696, at *8 (Mich. Ct. App. Oct. 18, 2016). Additionally, Texas does not recognize fraudulent concealment as an independent cause of action (*Sweezey v. C.R. Bard Inc*., No. 19-CV-2172, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020)), Wisconsin courts have declined to extend the duty to disclose to sales of consumer goods (*Tietsworth v. Harley- Davidson*, Inc., 270 Wis. 2d 146, 157 (2004)), and under Oregon law, Plaintiffs' common law fraudulent concealment claim are preempted. *Chapman*, 531 F. Supp. 3d at 1299. For the remaining states in which Plaintiffs reside, Plaintiffs must still allege some kind of relationship for a duty to disclose to arise. *See, e.g.*, *LiMandri v. Judkins*, 52 Cal.App. 4th 326, 336–37 (1997). Here, LGEKR – as a component parts supplier – did not have, and is not alleged to have had, any relationship with the Plaintiffs.

14

## II.    PLAINTIFFS DO NOT PLEAD NECESSARY CAUSATION OR RELIANCE

Plaintiffs make the same claims against LGEKR as they do LGEUS. Therefore, their inability to allege causation or reliance, ECF No. 49, PageID.3148–53, is equally applicable here.[12]  All Plaintiffs' claims sound in fraud and so require a showing of causation or reliance.  *See, e.g.*, *Chapman*, 531 F. Supp. 3d at 1285, 1300 (finding causation or reliance necessary for fraud claims); *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Texas*, 249 S.W.3d 480, 490 (Tex. App. 2008). Even though some courts have held that reliance is not a necessary element under state consumer protection or deceptive trade practices statutes, those courts still require plaintiffs to allege a causal nexus between the defendant's alleged conduct and the plaintiffs' damages.  *See, e.g., Pearson v. Philip Morris, Inc*., 358 Or. 88, 125–26 (2015).  Reliance is one way to show this nexus.  *See id.*

When the unfair or deceptive trade practice alleged is false advertising and the alleged loss is overpayment of the purchase price – as Plaintiffs claim here – reliance becomes a necessary sub-element of causation.  *See id.*  Plaintiffs allege that they did not get the vehicles they paid for because of a combination of alleged affirmative misrepresentations and omissions.  *See, e.g.*, FACC ¶¶ 13–14.  Therefore, they must show that they relied on LGEKR's alleged misrepresentations and omissions when

---

[12] LGEKR incorporates these arguments by reference.  *See* ECF No. 49, PageID.3148–53

15

purchasing their Bolts by identifying marketing materials, communications, and product information that contain misrepresentations, or that are misleading because of alleged omissions. *See, e.g., Pearson*, 358 Or. at 127. Plaintiffs must also demonstrate that they relied on these communications. *See, e.g.*, *Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *18 (E.D. Mich. Mar. 24, 2021); *Simon v. SeaWorld Parks & Ent., Inc*., No. 3:21-CV-1488-LL-MSB, 2022 WL 1594338, at *6 (S.D. Cal. May 19, 2022) ("Plaintiff fails to identify the exact statement he claims to have relied on"); *Counts v. Gen. Motors, LLC*, No. 1:16-CV-12541, 2022 WL 2079757, at *16, *18, *24 (E.D. Mich. June 9, 2022) (dismissing fraud claims under Arizona, Florida, and Texas law against component parts manufacturer after plaintiff testified he never saw an advertisement from the defendant).

The only statement attributed to any "LG" entity issued before Plaintiffs purchased their vehicles came from the CEO of LG Electronics Vehicle Components Co. while discussing LG's selection as GM's technology partner for electric vehicles. *See* FACC ¶¶ 311, 363. The statement does not refer to the Bolt or contain anything that is relevant to Plaintiffs' claims. Indeed, Plaintiffs do not claim that they relied on any statement made by LGEKR when deciding to purchase their Bolts, instead alleging that they made their decision "after considering GM's representations about the Vehicle." *See, e.g.*, FACC ¶¶ 29. Therefore, Plaintiffs themselves have made clear that all communications about the Bolt that they

16

received prior to their purchase were made by GM, not LGEKR, and that Plaintiffs decided to purchase their vehicles in reliance on those communications.  This dooms their claims for fraudulent concealment and deceptive trade practices under all of the state consumer protection acts at issue here.  *See, e.g.*, *Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 860 (N.D. Ill. 2021) (claim against Amazon under Illinois Consumer Fraud Act failed because "Amazon did not make the deceptive statement").

## III.   PLAINTIFFS' CLAIMS AGAINST LGEKR FAIL FOR NUMEROUS ADDITIONAL REASONS

Plaintiffs' claims suffer from additional deficiencies, and LGEKR joins in and incorporates by reference the arguments made in the memoranda of law submitted in support of GM's, LGES MI's, and LGUES's previously filed motion to dismiss:[13]

- Plaintiffs' common law fraud claims in Arizona, California, Florida, Michigan, Texas, and Wisconsin are barred by the economic loss rule, which prohibits recovery in tort for economic damages allegedly caused by fraud absent personal injury or property damage other than damage to the product at issue.  *See* GM's Mem. in Supp. of Mot. to Dismiss, ECF No. 36, PageID.2440–41; LGES MI's Mem. in Supp. of Mot. to Dismiss, ECF No. 44, PageID.3038–41.

- The Texas DTPA and Virginia CPA do not apply to component part suppliers.  *See* ECF No. 44, PageID.3041–42.

- Plaintiffs' consumer protection claims under the laws of Arizona, Florida, Georgia, Illinois, Massachusetts, Michigan and Virginia law fail because those statutes exclude acts and practices that are regulated and authorized

---

[13] *See* ECF No. 49, PageID.3154–55.

17

by state and/or federal law, including automotive sales.  *See* ECF No. 44, PageID. 3043–48.

- Plaintiffs' claims based on the GFBPA, VCPA, and common law fraud under Virginia law cannot proceed as class actions.  *See* ECF No. 44, PageID.3048–49.

- Plaintiffs' fraudulent concealment claims under New York and Texas law fail because Plaintiffs have not plead that an alleged defect has actually manifested.  *See* ECF No. 36, PageID.2438–39; ECF No. 44, PageID.3040, n.32.

- Plaintiffs requests for injunctive relief under the California LRA, Florida UDTPA, Georgia FBPA and UDTPA, Illinois UDTPA, Kansas CPA, Massachusetts Act, Oregon UTPA, Texas DTPA, and Washington CPA are precluded by their failure to allege a likelihood of future harm.  *See* ECF No. 44, PageID.3019, n.9.

- Plaintiffs cannot seek damages under the Illinois UDTPA or Georgia UDTPA, which provide for only injunctive relief.  *See* ECF No. 44, PageID.3019, n.9

## IV.  PLAINTIFFS' ALLEGED INJURIES ARE MOOTED BY GM'S RECALL AND REPLACEMENT OF THE DEFECTIVE BATTERIES

Because GM's recall is providing Plaintiffs with fully functional batteries – at no cost – all of Plaintiffs' alleged injuries are prudentially moot.[14]  Courts have discretion to determine a case "prudentially moot" where "events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits."  *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681

---

[14] LGEKR incorporates by reference the prudential mootness arguments in LGEUS's motion to dismiss, *see* ECF No. 49, PageID.3155–62, as well as the arguments in Exhibit A of LGEUS's motion to file a response to Plaintiffs' notice of supplemental authority, *see generally* ECF No. 78-2.

F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.).  This includes instances in which a case or controversy may still survive in a diminished form, but "prolonging the litigation any longer would itself be inequitable."  *Id.*

Plaintiffs' alleged they have been injured by their Bolt's lower performance, reduced range, safety hazards, and reduced value, as well as difficulty finding parking.  *See, e.g.,* FACC ¶¶ 10, 19.  Each is directly attributable to a rare and specific defect which appeared only in a very small number of the batteries.  *See id.* ¶ 387; Ex. BF (ECF No. 27-59, PageID.2089–91).  In order to address this alleged defect, GM has announced that it will fully replace all defective batteries, a remedy that will restore the range of the affected vehicles, remove any risk of fire, and allow drivers to use their Bolts without constraint.  FACC  ¶¶ 9, 388; Ex. BF (ECF No. 27-59, PageID.2091).  In short, GM's recall moots all Plaintiffs' injuries.

Plaintiffs unsuccessfully try to skirt the effects of GM's recall by alleging that they suffered point-of-purchase injuries, which they claim cannot be remedied by a recall.  FACC ¶ 16.  Their alleged injuries match those the plaintiffs claimed in *Flores v. FCA US LLC*, where Judge Drain held that plaintiffs' claims for monetary damages, arising from an alleged defect in the radiator cooling fan in certain Jeep vehicles, were mooted by defendant's proposed recall and replacement of the defective fans.  *Flores v. FCA US LLC*, No. 19-10417, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020).  The *Flores* plaintiffs alleged they were injured at the point-

19

of-purchase because they paid more for their vehicles than if they had known of the alleged defect, just like Plaintiffs here. *See id*. at *4. However, Judge Drain held their damages were prudentially moot because the defendant's recall efforts were designed to "remove[] the defect upon which the plaintiffs' diminished-value injury claim is based." *Id*. (citing *Hadley v. Chrysler Grp., LLC*, 624 Fed. App'x 374, 378 (6th Cir. 2015)). The same conclusion applies here, as GM's recall will similarly remove the defect at issue, thereby mooting Plaintiffs' damages.

The cases upon which Plaintiffs rely to argue that their injuries are not mooted are distinguishable and irrelevant. For example, Plaintiffs in *Raymo v. FCA US LLC* alleged that a "washcoat defect" – which was purportedly known to defendants before they sold the vehicles to plaintiffs – caused a point-of-purchase injury because their vehicles were worth $8,000–$10,000 less than what they paid. *Raymo*, 475 F. Supp. 3d at 687–88, 693. Although Plaintiffs here and the *Raymo* plaintiffs both allege point-of-purchase injuries, their circumstances are not comparable. The *Raymo* plaintiffs alleged a quantifiable diminution in value due to greater emissions and "lesser fuel economy, torque, and towing ability." *Id*. at 693. Here, by contrast, Plaintiffs have failed to quantify their damages. Furthermore, all the alleged injuries (e.g. reduced range) are not inherent qualities of the vehicles, but are due to temporary mitigation measures implemented to address a rare alleged defect. *See, e.g.*, FACC ¶¶ 387; Ex. BF (ECF No. 27-59, PageID.2089–91). Plaintiffs admit as

20

much, alleging that a permanent remedy for the batteries that removes the temporary charging and range restrictions would "restore the EPA-estimated driving range" and provide them with the vehicles they bargained for. *Compare* FACC ¶ 388 *with id*. ¶¶ 394–95 (noting that remedy for temporary range limitations would be full battery replacement).

Plaintiffs' reliance on *Weidman, et al. v. Ford Motor Company*, No. 18-12719, 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) (Drain, J.), fares no better. *Weidman* is inconsistent with *Flores*, incorrectly describing the *Flores* plaintiffs' damages as stemming from defendant's "failure to correct the defective product," not from overpayment at the point-of-purchase. *Weidman*, 2022 WL 1071289, at *5. However, the *Flores* decision explicitly held that the plaintiffs sought damages related to "the defect itself, ***not the delay in repair***" and that the damages included the "diminished value of their vehicle." *Flores*, 2020 WL 7024850, at *4 (emphasis added). Therefore, there is no basis for the holding in *Weidman* that a recall does not render point-of-purchase injuries moot. *See Weidman*, 2022 WL 1071289, at *4–5. *Flores* is still good law and applicable here.

*Weidman* is also procedurally and factually distinguishable. The defendant argued plaintiffs' claims were moot when it moved for summary judgment and so had the burden to show "no genuine issue as to any material fact and that [Ford] is entitled to a judgment as a matter of law." *Weidman*, 2022 WL 1071289, at *4

21

(quoting *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998)). Conversely, LGEKR has moved to dismiss, which requires Plaintiffs to allege a "cognizable danger" that the recall ***will*** fail. *See Winzler*, 681 F.3d at 1212.

The *Flores* plaintiffs failed to meet this standard, *see Flores*, 2020 WL 7024850, at *4 ("[T]here is no substantial reason for Plaintiffs to fear that Defendant will fail to continue providing relief."), as do Plaintiffs here. Plaintiffs argue in conclusory fashion that Defendants have yet to establish a timeline for the recall and that the recall will not include cash payments, ECF No. 57, PageID.4654, but neither is a basis for this Court to find a "cognizable danger" that the recall will not work as intended. In short, Plaintiffs make no allegation that the recall is ineffective – only that it possibly could be. This is precisely the kind of allegation rejected in *Winzler* and *Flores*, and is insufficient for Plaintiffs to carry their burden of plausibly pleading an actual injury.

Finally, leading prudential mootness jurisprudence throughout the country further underscores that Plaintiffs' injuries are moot. *See Sugasawara v. Ford Motor Company*, No. 18-06159, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (plaintiffs had "not articulated any plausible theory of economic loss" at the point-of-purchase where an alleged seatbelt defect was remedied through a recall); *Kommer v. Ford Motor Co.*, 17-00296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (availability of free repair of alleged defect "defeats [plaintiff's] price-

premium theory of injury"); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab.*, 915 F. Supp.2d 1151, 1157–59 (C.D. Cal. 2013) (claim mooted where defect was resolved in software update).

## CONCLUSION

For the reasons set forth herein, the Defendants respectfully request that the Court grant their motion to dismiss the FACC, with prejudice.

Dated:  July 8, 2022
       New York, NY

**HOGAN LOVELLS US LLP**

By: _/s/ A. Michael Palizzi_
A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK
AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
T: (313) 496-7645
F: (313) 496-7500
palizzi@miller.canfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: (212) 918-3000
F: (212) 918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 8, 2022, I electronically filed the foregoing paper

with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to all counsel of record.


Dated: July 8, 2022

By: /s/ A. Michael Palizzi
A. Michael Palizzi (P47262)
MILLER, CANFIELD, PADDOCK
AND STONE, PLC.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
T: (313) 496-7645
F: (313) 496-7500
palizzi@miller.canfield.com

Phoebe A. Wilkinson
Samuel L. Zimmerman
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T: (212) 918-3000
F: (212) 918-3100
phoebe.wilkinson@hoganlovells.com
samuel.zimmerman@hoganlovells.com

*Attorneys for Defendant LG Electronics, Inc.*

24