# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re Chevrolet Bolt EV Battery Litigation | Case No. 2:20-13256-TGB-CI<br>Honorable Terrence G. Berg<br>Magistrate Judge Curtis Ivy |

## PLAINTIFFS' OMNIBUS REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF UNDER FED. R. CIV. P. 23(d)

In their Motion, Plaintiffs show that Defendants are using their so-called "goodwill" program to deceptively induce putative class members to release any claims in this case without accurately describing what this case is about. On the other hand, Defendants' oppositions show why they cannot have it both ways: they cannot both assert that they are using their "goodwill" program to seek releases for claims in this putative class action from customers and at the same time assert that those same affected customers are not putative class members. The solution is relatively simple given the Court's broad power to supervise communications to putative class members in a class action: Defendants should be barred from seeking or enforcing releases from putative class members. The program should be paused so the Court and interim lead counsel can learn more about the program, understand what current and future claims would be affected, explore what Defendants' future plans are with respect to releases from any other potential class members, and—above all—ensure that any communications with class members are accurate, fair, and reasonable.

It bears noting that Plaintiffs are not the only ones concerned about this practice. The automotive media is taking understandably also taking note:

> Chevy has started offering some Bolt owners rebates of up to $6,000 as a "goodwill reimbursement" for anyone who bought one of the battery-powered EVs shortly before the company made them significantly cheaper. However, as *Jalopnik* points out, taking the rebate means agreeing to never sue the company for any present or future issues with the car or its battery or join any class action suits related to the Bolt. Given that Bolt had to be recalled twice following several battery fires

1

(and the fact that the recall was expanded to include pretty much every model of the car), it may be an uncomfortable agreement for some.

https://www.theverge.com/2022/8/2/23289219/chevy-bolt-goodwill-rebate-6000-dollars-barred-lawsuits (visited Nov. 28, 2022).[1] Given the numerous recalls, and the issuance of new Technical Service Bulletins regarding serious, on-going propulsion issues that GM has issued since the Bolt battery replacements began in October of 2021, (**Ex. 2**), further judicial scrutiny of the so-called "goodwill" program is necessary and wholly within the Court's jurisdiction under Rule 23(d).

### I.     Plaintiffs properly brought their Motion.

Defendants argue at length that the Court should not act to protect the putative class members because, they say, there were problems with how the Plaintiffs went about filing their Motion. But as Plaintiffs explained in their Motion, they raised the issue of the improper solicitations with Defendants in early August. **Ex. 3**. At the time, the issue was raised in the context of the potential filing of a class certification motion, and a meet-and-confer encompassing both issues was conducted. *Id*. Following the meet and confers, in which Defendants argued that any class certification briefing was premature, Plaintiffs decided to hold off filing a motion. Specifically, Plaintiffs decided to review the Court's upcoming rulings on the

---

[1] Attached hereto at **Ex. 1**.

pending motions, including the Motions to Dismiss, before filing a Rule 23 motion. That is exactly what Defendants suggested, and it is what Plaintiffs did.

Plaintiffs followed up last month, asking for another meet-and-confer to discuss a potential Rule 23(d)-only motion. **Ex. 4**. Defendants refused, proposing to delay the issue for at least another ten days. *Id.*[2] At best, this would have kicked the proverbial can down the road. Given Defendants' refusal to conduct an additional meet-and-confer in October, Plaintiffs properly filed the present motion.[3]

## II. Defendants' responses illustrate why discovery is important.

GM has gone behind the back of the Court and its appointed Interim Class Counsel to mislead putative class members into giving up their rights.[4] It has done so by issuing misleading solicitations that claim admitted manufacturing defects to be "alleged" and by mischaracterizing the complaint in this case in unduly narrow

---

[2] Specifically, Defendants responded on October 20th that the parties should not meet and confer until after their October 28th mediation. *Id.* The next business day would have been October 31st, making this the earliest realistic meet-and-confer date.

[3] GM also complains that "Plaintiffs waited about three months" to file the Motion after learning about the solicitations and conducting the initial meet-and-confer. Def's Resp., ECF No. 128, PageID.8182. But they also pervasively argue that the Motion lacks merit in its entirety (in other words, that Plaintiffs should have held off indefinitely). And it is doubly unconvincing in light of GM's argument that Plaintiffs were too anxious to conduct the meet-and-confer. They cannot have it both ways.

[4] GM claims that its "communications were not 'surreptitious'" because the "letter made clear that the reimbursement offer would require customers to accept terms and conditions, and the Release is prominently and clearly displayed on the Program website." (Def's Resp., ECF No. 128, PageID.8198–8199). Even if so, they were surreptitious with respect to the Court and Interim Class Counsel.

3

terms. These improper efforts have borne fruit: in its response, GM confirms that "at least 2,147 out of 2,490 eligible customers (over 85%) have signed the release and participated in the Program, each receiving the approximately $5,000 goodwill payment GM offered." Def's Resp., ECF No. 128, PageID.8188. This alone is enough to merit judicial protection for the putative class members.

At the very least, the facially misleading solicitations—coupled with GM's success in inducing releases—is an indication of suspect conduct, and the circumstances certainly warrant further initial discovery. But GM argues, in effect, that because the Court does not yet know the extent of the damage, the Court cannot learn about it, claiming that the Court is powerless absent "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties" and "a likelihood of serious abuses." Def's Resp., ECF No. 128, PageID.8190. These criteria are already met: the solicitations were misleading, and Defendants have successfully induced numerous releases.

GM's response is replete with factual arguments that call for fact finding. *See, e.g.*, Def's Resp., ECF No. 128, PageID.8195 (arguing that "Plaintiffs point to absolutely zero evidence of customer confusion."); Def's Resp., ECF No. 128, PageID.8196 (claiming that "the Bolts delivered to these customers do not even have the recalled batteries"); Def's Resp., ECF No. 128, PageID.8199 (claiming that "the Program does not contain or otherwise involve an arbitration provision to begin

4

with"). GM even claims inexplicably that the underlying decision to change the MSRP for new Bolts was "for purposes of compliance with CAFE standards." Def's Resp., ECF No. 128, PageID.8196.[5]

### III. Tolmasoff does not preclude the Court from protecting the putative class.

Defendants argue, in effect, that the decision in *Tolmasoff v. GM*, No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) bars this Court from exercising its Rule 23(d) authority. They are wrong: *Tolmasoff* reflects the Court's prudential exercise of its authority, not binding precedent; the issues in *Tolmasoff* vary greatly from the issues here; and as a result, the impact of a broad release was far different. The solicitation here entails affirmatively misleading statements that cannot be excused by an accompanying link to the operative complaint.

GM responds that "nothing in *Tolmasoff* suggests that the nature of the underlying class claims was relevant" because "the court focused on the substance of the challenged communication," thus excusing the misleading solicitations here because they are "virtually identical to the one that the *Tolmasoff* court held was 'not abusive.'" Def's Resp., ECF No. 128, PageID.8197; *see also* Def's Resp., ECF No.

---

[5] GM notes that the *Fox* decision that Plaintiffs cite in support of their argument for discovery was "a preliminary order in which the court requested more information from a third-party who had allegedly been soliciting putative class members" as opposed to the ultimate Sixth Circuit decision. (Def's Resp., ECF No. 128, PageID.8200). This is irrelevant: it still demonstrates the Court's willingness to require information be produced in order to protect class members under Rule 23(d).

5

128, PageID.8197. But it is obviously relevant that the present solicitations misstated the underlying class claims. And the ongoing hazards and use restrictions posed by the defects is relevant: a release that might be relatively benign in a case like *Tolmasoff*, without ongoing risks and technical fixes, requires judicial scrutiny here.[6]

Finally, Defendants concede that, in *Tolmasoff*, the Class was provided with, among other detailed information, access to the complaint and contact information of plaintiff's counsel. Presently, Defendants allude to—but haven't provided—such information to Plaintiffs' counsel or the Court to evaluate.[7] Accordingly, any comparisons to the degree of information provided in *Tolmasoff* are, currently, unsubstantiated and warrant additional discovery.

## IV. The LG Defendants' arguments do not preclude the Court from acting.

---

[6] GM denies that their alleged misstatements "pose an ongoing safety hazard or raise the prospect of future fixes." Def's Resp., ECF No. 128, PageID.8197. But while the misstatements themselves may not pose a safety risk, the manufacturing defects that GM seeks to release surely do. And despite GM's suggestion, Plaintiffs do not claim that "the specter[s] of nonexistent programs" are the "'serious abuses' that *Gulf Oil* requires." Def's Resp., ECF No. 128, PageID.8198. Rather, the fact that Defendants are misleading putative class members into releasing their right to participate in future programs to fix their vehicles is the "serious abuse." And GM's assurance that "[t]he release of claims does not prevent any customer from obtaining any recall remedy" is hardly sufficient reassurance. Def's Resp., ECF No. 128, PageID.8197. It is not binding. And even if it were, non-recall fixes could become available in the future, with the releasors ineligible. Again, the release in a case like this requires conventional judicial oversight as set forth in Fed. R. Civ. P. 23(e).

[7] Although attached materials do include a hyperlink purportedly leading to information about the present action, Defendants did not include the hyperlinked document. *See* ECF No. 128-2, PageID.8217.

Certain LG Defendants claim that "Plaintiffs' Rule 23(d) Motion does not refer to, describe, or identify <u>any</u> act or conduct which Plaintiffs claim was taken by [them]," and that thus "there is no basis to grant Plaintiffs' Rule 23(d) Motion as to" them. Defs' Resp., ECF No. 130, PageID.8287 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009). But the issue here is not whether Plaintiffs have a "claim" against any particular Defendant for misconduct. The issue is whether the conduct at issue warrants the Court's supervision under Fed. R. Civ. P. 23(d). Here, that conduct results in a release for all the Defendants, by name. Nothing in Fed. R. Civ. P. 23 requires that the LG Defendants solicited releases themselves to invoke this Court's significant deferential authority to enact appropriate relief to protect the putative Class.

DATED: November 28, 2022  Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
THE MILLER LAW FIRM, P.C.
950 West University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
Fax (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Lynn Lincoln Sarko
Gretchen Freeman Cappio (P84390)
Ryan McDevitt (P84389)
Emma Wright
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900
Fax (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
ewright@kellerrohrback.com

**Interim Co-Lead Counsel**

David C. Wright
Mark I. Richards
Richard D. McCune
Steven A. Haskins
MCCUNE WRIGHT ARAVELO, LLP
3281 East Guasti Road, Suite 100
Ontario, CA 91761
(909) 557-1250
Fax (909) 557-1275
dcw@mccunewright.com
mir@mccunewright.com
rdm@mccunewright.com
sah@mccunewright.com

Roberta Liebenberg
Gerard A. Dever
Mary L. Russell
FINE, KAPLAN AND BLACK, RPC
1 South Broad St., Suite 2300
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com

8

mrussell@finekaplan.com

Nicholas A. Migliaccio (P29077)
Jason S. Rathod (P18424)
MIGLIACCIO & RATHOD LLP
412 H St. NE, Suite 302
Washington D.C. 20002
(202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Todd Friedman
David B. Levin
LAW OFFICES OF TODD M. FRIEDMAN, PC
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
(224) 218-0882
Fax (866) 633-0228
dlevin@toddflaw.com
tfriedman@toddflaw.com

Benjamin F. Johns
Beena M. McDonald
Samantha E. Holbrook
Alex M. Kashurba
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 West Lancaster Ave
One Haverford Centre
Haverford, PA 19041
(610) 642-8500
bmm@chimicles.com
bfj@chimicles.com
seh@chimicles.com

**Plaintiffs' Steering Committee**

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, I electronically filed the foregoing papers using the ECF system which will send electronic notices of same to all counsel of record.

Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Drive, Suite 300
Rochester, MI  48307
Telephone: (248) 841-2200
E-mail:  epm@millerlawpc.com