## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

*In re Chevrolet Bolt EV Battery Litigation*

Case No. 2:20-13256-TGB-CI

Honorable Terrence G. Berg

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPOINTMENT OF CO-LEAD CLASS COUNSEL

Plaintiffs Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor, Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker (collectively, "Plaintiffs"),  by and through their attorneys, respectfully move the Court for an Order:

1.      Granting preliminary approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement");[1]

---

[1] Plaintiffs have agreed to the Settlement. In the interest of expediency, the Settlement Parties have agreed that Plaintiffs' signatures need not be included in the

2. Preliminarily certifying, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the members of the proposed Settlement Class, approving the form and content of, and directing the distribution of the proposed Class Notice, attached to the Settlement Agreement as Exhibits 1-3;

3. Authorizing and directing the Parties to retain KCC, LLC ("KCC") as the Settlement Administrator and approving the form and content of, and directing the distribution of, the proposed Class Notice and accompanying Claim Form;

4. Appointing The Miller Law Firm, PC and Keller Rohrback LLP as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Fine, Kaplan and Black, RPC, Migliaccio & Rathod LLP, Law Offices of Todd M. Friedman, PC, and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Plaintiffs' Steering Committee Counsel; and

5. Scheduling a date for the Final Approval Hearing not earlier than one hundred and eighty (180) days after Preliminary Approval is granted.

In support of this Motion, Plaintiffs have contemporaneously filed a Memorandum of Law, with exhibits thereto.

---

Settlement Agreement at this time, but that their signatures will be included when Plaintiffs seek final approval of the Settlement. Instead, Interim Co-Lead Class Counsel have signed the Settlement Agreement on Plaintiffs' behalf.

In accordance with E.D. Mich. LR 7.1(a), Plaintiffs' counsel sought the concurrence of Defendants' counsel in the relief sought by this Motion on April 17, 2024 and May 7, 2024, and Defendants' counsel stated that Defendants do not oppose the relief requested herein, subject only to the conditions noted in Footnote 1 of the attached memorandum.

For the reasons set forth in the Memorandum of Law, Plaintiffs respectfully request that the Court grant their Unopposed Motion.

DATED: May 16, 2024

Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Peter Muhic (P87195)
Dennis A. Lienhardt (P81118)
Mitchell J. Kendrick (P83705)
**THE MILLER LAW FIRM, P.C.**
950 West University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
Fax (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
pm@millerlawpc.com
dal@millerlawpc.com
mjk@millerlawpc.com

Gretchen Freeman Cappio (P84390)
Ryan McDevitt (P84389)
Sydney Read
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

Fax (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
sread@kellerrohrback.com

*Interim Co-Lead Counsel*

David C. Wright
Mark I. Richards
Richard D. McCune
Steven A. Haskins
**MCCUNE WRIGHT ARAVELO, LLP**
3281 East Guasti Road, Suite 100
Ontario, CA 91761
(909) 557-1250
Fax (909) 557-1275
dcw@mccunewright.com
mir@mccunewright.com
rdm@mccunewright.com
sah@mccunewright.com

Roberta Liebenberg
Gerard A. Dever
Mary L. Russell
**FINE, KAPLAN AND BLACK, RPC**
1 South Broad St., Suite 2300
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com
mrussell@finekaplan.com

Nicholas A. Migliaccio (P29077)
Jason S. Rathod (P18424)
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
(202) 470-3520

nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Todd Friedman
David B. Levin
**LAW OFFICES OF TODD M.
FRIEDMAN, PC**
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
(224) 218-0882
Fax (866) 633-0228
dlevin@toddflaw.com
tfriedman@toddflaw.com

Timothy N. Mathews
Beena M. McDonald
Samantha E. Holbrook
Alex M. Kashurba
**CHIMICLES SCHWARTZ
KRINER & DONALDSON-SMITH
LLP**
361 West Lancaster Ave
One Haverford Centre
Haverford, PA 19041
(610) 642-8500
tnm@chimicles.com
bmm@chimicles.com
bfj@chimicles.com
seh@chimicles.com

*Interim Plaintiffs' Steering Committee*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

*In re Chevrolet Bolt EV Battery Litigation*

Case No. 2:20-13256-TGB-CI

Honorable Terrence G. Berg

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPOINTMENT OF <u>CO-LEAD CLASS COUNSEL</u>

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs' settlement with Defendants, embodied in the Settlement Agreement (attached as Exhibit A), is fair, reasonable, and adequate and should be preliminarily approved?

   Suggested Answer: Yes.

2. Whether the Court should provisionally certify the Settlement Class as it is defined herein under Federal Rule of Civil Procedure 23(a) and 23(b)(3)?

   Suggested Answer: Yes.

3. Whether the Court should appoint The Miller Law Firm, PC and Keller Rohrback L.L.P. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Fine, Kaplan and Black, RPC, Migliaccio & Rathod LLP, Law Offices of Todd M. Friedman, PC, and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Plaintiffs' Steering Committee since they have extensive experience in class action litigation and exhaustive resources to ensure the matter is prosecuted efficiently and effectively?

   Suggested Answer: Yes.

4. Whether the Court should approve the Parties' proposed notices to Class Members where they fairly and fully apprise the prospective Members of the Class of the terms proposed in the settlement, the reasons for the settlement, the legal effect of the settlement, and provide Class Members with an

opportunity to lodge objections and/or opt out, and whether the Court should

authorize the Parties to retain KCC as the Settlement Administrator?

      Suggested Answer: Yes.

5. Whether the Court should set a date for a final fairness hearing to consider

any objections to the proposed settlement?

      Suggested Answer: Yes.

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ................................................................. ii

TABLE OF CONTENTS ............................................................................................ iv

TABLE OF AUTHORITIES ..................................................................................... vi

TABLE OF MOST CONTROLLING AUTHORITIES ........................................ ix

  I.     PROCEDURAL HISTORY ........................................................................... 5

  II.    FACTUAL BACKGROUND ........................................................................ 7

      A.   Relevant Parties ...................................................................................... 7

      B.   The Bolt Vehicles and Battery Defect ................................................. 8

      C.   GM's Series of Recalls ....................................................................... 10

  III.    THE SETTLEMENT AGREEMENT AND TERMS ............................... 12

      A.   The Proposed Settlement Class ........................................................... 12

      B.   The Settlement Benefits and Settlement Consideration .................... 13

          1.    $150 Million Common Fund ...................................................... 13

          2.    Battery Defect Remedy .............................................................. 15

             i.    Battery Replacement Final Remedy Program ................... 15

             ii.   Software Final Remedy Program ...................................... 15

      C.   Release of Claims ............................................................................... 17

      D.   Settlement Notice and Right to Opt Out ............................................ 18

      E.   Class Counsel Fees and Expenses and Plaintiffs' Service Awards ......... 20

  IV.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED ................................................................................................. 20

      A.   The Settlement Class Satisfies the Requirements of Rule 23(a) ............ 22

      B.   The Settlement Class May Be Properly Certified Under Rule 23(b)(3) . 23

          1.    Common Issues of Fact and Law Predominate .................................. 24

          2.    A Class Action Is a Superior Method of Adjudication ...................... 25

  V.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR PRELIMINARY APPROVAL ...................................................................... 26

      A.   There Is No Fraud or Collusion .......................................................... 28

B. The Complexity, Expense, and Likely Duration of the Litigation Favor Approval........................................................................................29

C. The Discovery Engaged in by the Parties Favors Approval...................30

D. The Likelihood of Success on the Merits Favors Approval ...................31

E. Experienced Class Counsel's Opinions Favor Approval ......................33

F. The Reaction of Absent Class Members.................................................33

G. The Settlement Is Consistent with the Public Interest ............................34

VI. THE COURT SHOULD APPOINT CLASS COUNSEL ......................35

VII. THE FORM AND MANNER OF NOTICE ARE PROPER .................36

VIII. CONCLUSION ........................................................................38

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................... 21, 24

*Bautista v. Twin Lakes Farms, Inc.*,
  2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ....................................27

*Beattie v. CenturyTel, Inc.*,
  234 F.R.D. 160 (E.D. Mich. 2006) ............................................... 23, 24

*Bobbit v. Acad. of Court Reporting, Inc.*,
  252 F.R.D. 327 (E.D. Mich. 2008) ....................................................26

*Chapman v. Gen. Motors, LLC*,
  2023 WL 2746780 (E.D. Mich. Mar. 31, 2023) ..................................24

*Daffin v. Ford Motor Co*.,
  458 F.3d 549 (6th Cir. 2006) ........................................................ 22, 24

*Daoust v. Maru Rest., LLC*,
  2019 WL 1055231 (E.D. Mich. Feb. 2, 2019) .............................. 21, 36

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) ....................................29

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ...........................................................26

*Garner Props. & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020) ....................................................22

*Granada Inv., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir.1992) ...................................................... 26, 34

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................27

*In re Cardizem CD Antitrust Litig*.,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................... 31, 34

*In re Packaged Ice Antitrust Litig*.,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................32

*In re Telectronics Pacing Sys., Inc*.,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................... 27, 28, 32

*In re U.S. Foodservice Inc. Pricing Litig*.,
  729 F.3d 108 (2d Cir. 2013) ...............................................................26

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*.,
  722 F.3d 838 (6th Cir. 2013) ....................................................... 21, 25

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
  Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)................................. *passim*

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ......................................................30
*Leonhardt v. ArvinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008)..............................................27
*Persad v. Ford Motor Co.*,
   2021 WL 6197051 (E.D. Mich. Dec. 30, 2021) ..................................28
*Rankin v. Rots*,
   2006 WL 1876538 (E.D. Mich. June 27, 2006) ..................................33
*Raymo v. FCA US LLC*,
   2023 WL 6429548 (E.D. Mich. Sept. 30, 2023)......................... *passim*
*Robinson v. Ford Motor Co.*,
   2005 WL 5253339 (S.D. Ohio June 15, 2005) ...................................27
*Rutherford v. City of Cleveland*,
   137 F.3d 905 (6th Cir. 1998) ..............................................................23
*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976)................22
*Speerly v. Gen. Motors, LLC*,
   343 F.R.D. 493 (E.D. Mich. 2023) .....................................................24
*Vassalle v. Midland Funding LLC*,
   2014 WL 5162380 (N.D. Ohio Oct. 14, 2014),
   *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ................27
*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..............................................................26

## Other Authorities

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, § 4.74 (5th ed. 2020) ....26
Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.51 (3d ed.
   1992) ...................................................................................................28

## Rules

Fed. R. Civ. P. 23 ........................................................................... *passim*
Fed. R. Civ. P. 23(a)........................................................... 21, 22, 23
Fed. R. Civ. P. 23(a)(4).................................................................35
Fed. R. Civ. P. 23(b) ............................................................. 21, 23
Fed. R. Civ. P. 23(b)(3)....................................................... 24, 25, 26
Fed. R. Civ. P. 23(c)(2)..................................................................36
Fed. R. Civ. P. 23(e)............................................................. 26, 36
Fed. R. Civ. P. 23(e)(1)..................................................................36
Fed. R. Civ. P. 23(g) ............................................................ 35, 36

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................35
Fed. R. Civ. P. 23(h) ................................................................................38

## <u>TABLE OF MOST CONTROLLING AUTHORITIES</u>

*Chapman v. Gen. Motors, LLC*,
      2023 WL 2746780 (E.D. Mich. Mar. 31, 2023)

*Daoust v. Maru Rest., LLC*,
      2019 WL 2866490 (E.D. Mich. July 3, 2019)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*
      *v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Persad v. Ford Motor Co.*,
      2021 WL 6197051 (E.D. Mich. Dec. 30, 2021)

*Raymo v. FCA US LLC*,
      2023 WL 6429548 (E.D. Mich. Sept. 30, 2023)

Fed. R. Civ. P. 23

## I.     INTRODUCTION

This proposed Settlement resolves Plaintiffs' claims that more than 100,000 2017-2022 Model Year Chevrolet Bolt EV Vehicles built and shipped to dealers as of August 19, 2021 (the "Class Vehicles") were manufactured, marketed, sold, and leased nationwide with a battery defect that allegedly can cause the batteries in Class Vehicles to overheat when the battery is charged to full or near full capacity, putting the battery at risk of catching fire (the "Battery Defect").[1]

The Settlement provides for significant monetary benefits—a common fund of $150 million—that was reached after over a year of arms-length, hard-fought negotiations among the numerous Parties, their proficient counsel, and two experienced mediators. These monetary benefits will be available to all owners and lessees of Class Vehicles, including those who allege inconvenience due to the recalls of the Class Vehicles, including visits to dealerships for various recall

---

[1] Defendants believe that class certification is appropriate only for settlement purposes and would vigorously oppose class certification outside the settlement context. Defendants further expressly reserve all rights both with respect to Federal Rule of Civil Procedure 23 as well as their defense of the merits of this action in the event that the Court does not grant preliminary or final approval of the settlement, or the settlement or any portion thereof is overturned on appeal. Moreover, Defendants likewise do not admit or acknowledge liability or wrongdoing and expressly dispute many of the allegations made by Plaintiffs and their counsel, including but not limited to allegations made in this memorandum. Finally, the Parties expressly agree that the fact that Defendants do not oppose this motion will not be treated as any form of admission and/or construed against Defendants or any of them in this or any other proceeding. *See* Settlement ¶ 3.4.

remedies and certain use restrictions such as parking and charging restrictions. Additionally, all Class Vehicles are now eligible for final recall remedies, whether it be for installation of the advanced N2.2 battery, or, for some Class Vehicles that were sold with the N2.2 battery, software upgrades that will actively monitor the health of the battery. The benefits available under the Settlement more than satisfy the "fair, adequate, and reasonable" standard under Rule 23(e). The Parties are proud of the Settlement they have reached and look forward to resolving this litigation with this Court's approval.

The software upgrade is highly relevant to a portion of the proposed Settlement Class. Specifically, the Settlement recognizes that each of the approximately 22,560 Class Members who own or lease model years 2020–2022 Chevy Bolts that were manufactured with certain N2.2 batteries have received and will continue to receive access to the "Software Final Remedy." This remedy involves GM dealers installing new advanced diagnostic software designed to detect anomalies that might indicate a potentially defective battery by monitoring the battery. For the first 10,000 km/6,214 miles of use after installation of the software, while the software fully matures through the monitoring process, the state-of-charge will be capped at 80%. If an anomaly is identified, the software will alert the owner to schedule a free battery pack or module replacement. If no anomalies are detected after the initial 6,214-mile (10,000-kilometer) period, the battery will automatically

return to a 100% state of charge, indicating diagnostic processes are complete. The software, however, will continue monitoring the battery for the life of the vehicle, even after the vehicle returns to a 100% state of charge. If the Software Final Remedy (i) is applied before March 31, 2024, (ii) indicates that a battery replacement is necessary during the initial 6,214-mile (10,000-kilometer) period, and (iii) so indicates before March 31, 2025, the resulting battery replacement will also include an extended 8-year/100,000-mile limited battery warranty, running from the date of replacement. The remainder of the Class—comprising owners and lessees of more than 80,000 vehicles—is eligible for the "Battery Replacement Final Remedy," which provides each affected vehicle with a replacement battery. The replacement batteries include an extended 8-year/100,000-mile limited battery warranty, running from the date of battery replacement.[2]

Upon submitting a claim, Class Members who owned or leased an affected vehicle throughout the class period will receive a payment of $700 if their vehicle has received or is eligible to receive the Battery Replacement Final Remedy and accompanying new battery warranty, or $1,400 if their vehicle is eligible for and the

---

[2] With respect to both the Software Final Remedy and Battery Replacement Final Remedy, GM has reserved the right, for those owners who have been notified that a battery replacement is available but fail to accept a battery replacement within 60 days of receiving that notice, to provide that the 8-year period for the extended warranty will begin to run starting 60 days after receipt of the notice, regardless of whether the battery has been replaced.

Class Member obtains the Software Final Remedy. Moreover, to ensure that all vehicles are remedied as promptly as possible, Class Members with eligible vehicles who obtained the Software Final Remedy even before the Settlement is approved were given the option to accept their minimum $1,400 payment early in the form of a Visa eReward card ("E-Card Program") and may be entitled to a Second Distribution under the terms of the Settlement Agreement, like other class members. To ensure that all Class Members are fairly compensated, the Settlement further proposes to allocate payments to and between Class Members who obtained affected vehicles during the period in which restrictions on their use of the vehicle could have been imposed, even if they subsequently sold the vehicle or terminated their lease before a remedy became available. The details of payment eligibility and allocation are explained in greater detail below.

Accordingly, and for the reasons stated below, the Settlement satisfies all the prerequisites for preliminary approval. Plaintiffs Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor, Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker (collectively,

"Plaintiffs"), on behalf of themselves and the proposed Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement and Appointment of Co-Lead Class Counsel ("Preliminary Approval Motion") and respectfully move the Court for preliminary approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement") entered into with Defendants General Motors LLC ("General Motors" or "GM"), LG Chem, Ltd., LG Energy Solution Ltd., LG Energy Solution Michigan Inc. (collectively, "LG Energy"), LG Electronics, Inc., and LG Electronics USA, Inc. (collectively, "LGE") (GM, LG Energy, and LGE, collectively, "Defendants"), as set forth in the Settlement Agreement, attached as Exhibit A.

## I.     PROCEDURAL HISTORY

The *Altobelli* action was originally filed on December 11, 2020 (ECF No. 1). On June 1, 2021, this Court consolidated eight cases that had either been filed or transferred to the Eastern District of Michigan (ECF No. 18). The following day, the Court entered the Stipulated Order Regarding Interim Leadership (ECF No. 20). That Order appointed The Miller Law Firm, PC and Keller Rohrback, LLP as Interim Co-Lead Class Counsel and McCune Wright Arevalo, LLP; Fine, Kaplan and Black, RPC; Migliaccio & Rathod LLP; Law Offices of Todd M. Friedman, PC; and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Plaintiffs' Interim Steering Committee Class Counsel.

Plaintiffs filed the 322-page operative Complaint on September 17, 2021 (ECF No. 27). On December 17, 2021, Defendants (except for LG Electronics, Inc., LG Energy Solution, Ltd., and LG Chem, Inc.) filed three motions to dismiss, two motions to compel arbitration (as well as a motion to join a motion to compel arbitration), and two motions to strike. *See* ECF Nos. 35–37, 44, and 46–49. Plaintiffs responded to these motions on February 15, 2022, *see* ECF Nos. 55–59, and Defendants filed their replies on March 24, 2022. ECF Nos. 60–67. This extensive briefing totaled over 3,300 pages.

LG Electronics, Inc. filed its motion to dismiss (ECF No. 87) and motion to join the motions to strike and motion to compel arbitration (ECF Nos. 88–89) on July 8, 2022. LG Energy Solution, Ltd. filed its motion to dismiss (ECF No. 92) and motion to take judicial notice (ECF No. 93) on July 8, 2022. LG Chem, Inc. filed its motion to dismiss (ECF No. 94) on July 8, 2022. Plaintiffs responded to these motions in August and September 2022. *See* ECF Nos. 105–06, 111–17.

On July 20, 2022, the Court held a lengthy hearing on the pending motions and allowed all Parties to be heard extensively.

On September 30, 2022, the Court issued its 110-page Order Resolving Defendants' Multiple Pretrial Motions (1) to Strike Class Allegations; (2) to Compel Arbitration; and (3) to Dismiss Multiple Claims. ECF No. 118. While the Court

dismissed some claims and compelled others to arbitration, at least one claim survived for each Plaintiff and each of the fourteen (14) states pled in the Complaint.

Since that time, the Parties have participated in multiple formal in-person mediation sessions before two experienced mediators, Judge Jay Gandhi (Ret.) and Lexi Myer-Wolfe of JAMS. Additionally, the Parties have engaged substantially with the mediators in telephonic discussions and in spirited, arm's-length discussions among themselves. These extensive negotiations benefited from the production by Defendants of documents and information concerning the alleged defect, the affected vehicle populations, and the various recall remedies, as well as Plaintiffs' consultation with several experts to provide independent analyses of the Plaintiffs' claims, the alleged Battery Defect, the efficacy of the recalls, and the allocation among Class Members of this proposed Settlement.

## II.    FACTUAL BACKGROUND

### A. Relevant Parties

Plaintiffs are purchasers and lessees of 2017, 2018, 2019, 2020, 2021, and 2022 Chevrolet Bolt EV Vehicles. The thirty-one Plaintiffs either purchased or leased their Vehicles in or lived in Arizona, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Michigan, New York, Oregon, Texas, Virginia, Washington, or Wisconsin. Compl., ECF No. 27, PageID.1174-1226.

Defendant General Motors ("GM") is the original manufacturer of the Bolt Vehicles. *Id.* at PageID.1226. Defendant LG Chem, Ltd. ("LG Chem") is a Korean corporation that was, during some of the time the Bolts were developed and manufactured, the parent company of Defendant LG Energy Solution, Ltd. ("LG Energy Solution"), which in turn is the parent company of Defendant LG Energy Solution Michigan ("LG Michigan"). *Id.* at PageID.1227-29. Defendant LG Electronics, Inc. ("LG Electronics") is the parent company of Defendant LG Electronics U.S.A. Inc. ("LGEUS") (together with LG Chem, LG Energy Solution, LG Michigan, and LG Electronics, the "LG Entities"). *Id.* at PageID.1229-30. The LG Entities, each involved during different time periods, developed, manufactured, or supplied the Bolt's battery system as part of a business arrangement with GM. *Id.* at PageID.1232.

**B. The Bolt Vehicles and Battery Defect**

The Bolt Vehicles were first released in 2015, with GM introducing the Vehicles as a "vision for an affordable, long-range all-electric vehicle designed to offer more than 200 miles of range starting around $30,000." Compl., ECF No. 27, PageID.1231. The Vehicles contain lithium-ion batteries, which are made up of individual power-generating cells that each contain "the basic functional components of a battery." Compl., ECF No. 27, PageID.1245-46.

These batteries were the result of a "strategic partnership" between GM and the LG Entities to develop and manufacture the Bolt's battery pack and the individual cells comprising the pack. *Id.* at PageID.1234. To realize the cost and range goals for the Vehicles, the battery packs were designed with "a new cell design and chemistry," which provided "improved thermal operating performance" and required a "smaller active cooling system for more efficient packaging." *Id.* at PageID.1577.

During the manufacture and distribution of the Bolt Vehicles at issue in this litigation, several design changes were made, with Model-Year 2017, 2018, and 2019 Vehicles containing "design level N2.1" cells and achieving an estimated range of 238 miles. GM's Mot. Dismiss, ECF No. 36, PageID.2419. In comparison, Model-Year 2020, 2021, and 2022 Vehicles used "design level N2.2" cells and achieved a slightly longer range of 259 miles. *Id.*

Plaintiffs have alleged that the Class Vehicles contain the Battery Defect, which causes the battery systems to overheat when the battery is charged to full or near full capacity, putting the battery at risk of catching fire. Compl., ECF No. 27, PageID.1166. The alleged Battery Defect, if it manifests, can cause catastrophic damage to the Class Vehicles and cause significant safety risks to the Vehicles' occupants and the people and property surrounding the Vehicles. *Id.* Plaintiffs contend that Defendants knew about the Battery Defect prior to sale but failed to

inform Plaintiffs and Class Members of the Battery Defect and associated hazards at the time of purchasing their vehicles. *Id.* at PageID.1171. Plaintiffs allege that, had they or Class Members known of the Battery Defect, they either would not have purchased the Vehicles or paid less for them. As a result, Plaintiffs allege, all Class Members have suffered economic harm from Defendants' conduct.

### C.     GM's Series of Recalls

Defendant GM issued a series of recalls of the Class Vehicles' batteries, described below, subjecting the Class Vehicles to various use restrictions, such as a recommendation that, until a final recall remedy became available, affected customers: (1) avoid charging the batteries past 90%, (2) avoid depleting the battery below 70 miles of range, (3) avoid charging the Vehicles overnight, and (4) park the Vehicles outside. Compl., ECF No. 27, PageID.1165-66.

In late August 2020, after receiving numerous complaints regarding fires in certain Class Vehicles, GM began an investigation and, in November 2020, voluntarily recalled Model-Year 2017, 2018 and certain 2019 Bolt Vehicles. *Id.* at PageID.2090; *id.* at PageID.2089. Owners and lessees were instructed to manually limit their Vehicles' charging capacity, not to park in garages or under carports, and to bring their Vehicles into a dealership for a software update that would limit the battery's charge to 90% of its capacity. *Id.* at PageID.2091.

Five months later, GM announced what it thought would be a final recall remedy: the installation of advanced diagnostic software designed to "identify potential battery anomalies," and subsequent battery module replacements as indicated necessary by the software. *Id.* at PageID.1277. The software was designed to "proactively look for the conditions or indications that could lead to a fire," as well as detect an imminent fire and notify the vehicle driver. *Id.* at PageID.1278.

Over the next several months, however, additional fires were reported, including in vehicles that had the diagnostic software installed. *Id.* at PageID.1279-80. In July 2021, GM announced an updated recall of the same 2017-2018 and certain 2019 model-year Bolt Vehicles. GM advised owners and lessees not to park the Vehicles inside or near structures, and later announced that it had determined the cause of the fires: a "torn anode" and "folded separator." *Id.* at PageID.1496; July 2021 Safety Recall Report, ECF No. 36-3, PageID.2476; ECF No. 36, PageID.2420.

In that same month, GM promised to replace "defective battery modules," and instructed owners and lessees that, until replacements became available, they should limit the battery to 90% of its capacity, charge Vehicles after every use (but not leave the Vehicles charging overnight), avoid depleting the Vehicle battery below 70 miles of range, and continue to park the Vehicles outside immediately after charging. ECF No. 27, PageID.1280-81. These limits on battery charge reduced the Vehicles' range to approximately 144 miles. *Id.* at PageID.1281.

11

In August 2021, GM expanded the recall population to include the remaining 2019 model-year Bolt Vehicles and 2020-22 model-year Bolt Vehicles and directed owners of the newer Model-Year Vehicles to take the same precautions regarding charging and parking. *Id.* at PageID.1552.

In October 2021, GM began providing replacement batteries for the Class Vehicles. Today, a replacement battery is available to any customer eligible for the Battery Replacement Final Remedy. As of April 2, 2024, GM has completed 68,565 battery replacements.

In June 2023, GM announced the Software Final Recall Remedy, the final recall remedy for approximately 22,560 Class Vehicles. GM provided notification letters to owners of those vehicles between June 2023 and August 2023. As of April 2, 2024, approximately 17,841 of eligible Class Vehicles have had the Software Final Recall Remedy applied.

GM has continued to provide regular reports to NHTSA throughout the recall process.

## III.   THE SETTLEMENT AGREEMENT AND TERMS

### A. The Proposed Settlement Class

Except for the exclusions set forth in the following paragraph, Plaintiffs seek to certify the following Class for Settlement purposes only:

> Any person in the United States who purchased or leased, other than for resale, a 2017, 2018, 2019, 2020, 2021, and

> 2022 Model Year Chevrolet Bolt built and shipped to dealers on or before August 9, 2021 and who have not received a buyback of their vehicle from General Motors or a General Motors authorized dealer.

*See* Settlement Agreement, ¶ 2.46.

Excluded from the Settlement Class are: (i) Class Counsel; (ii) Defendants and Defendants' officers, directors, employees, agents and representatives, and their family members; (iii) the judges who have presided over this Action; (iv) any persons who have otherwise released their claims against Defendants set forth in the Action, except that persons who executed a release in connection with the E-Card Program remain part of the Settlement Class and may receive payments under the Settlement as expressly provided in this Settlement Agreement *Id.*, ¶ 3.2.

## B. The Settlement Benefits and Settlement Consideration

The Settlement provides substantial monetary benefits to the Settlement Class, which is nationwide in scope. The amount of monetary benefits takes into account the value of the final recall remedies and extended warranties GM is providing. The Settlement also provides for direct notice to Class Members of the terms of the Settlement. Specifically, the Settlement provides for the following:

### 1. $150 Million Common Fund

The Settlement establishes a $150 million common fund, plus interest and accretions thereto, minus attorneys' fees, expenses (including for class notice and settlement administration), and service awards for Plaintiffs, as defined in Settlement

Agreement § 2.35. Upon submitting a claim and meeting the eligibility criteria (*see* Settlement Agreement § VI.F), Class Members will receive their share of the common fund. Approximately 22,560 Class Members will receive a minimum $1,400 payment if they have had or have the Software Final Remedy installed in their Vehicle at a GM-authorized dealership.[3] Settlement Agreement § V.A. Class Members who sold or terminated the lease of their Class Vehicle before the Software Final Remedy became available will receive a minimum $700 payment. *Id*. Class Members who are eligible for or have already received the Battery Replacement Final Remedy will receive a minimum $700 payment. *Id.* § V.B. In the event that more than one Class Member makes a valid claim on the same Vehicle—i.e., the vehicle changed hands during the class period and there is more than one eligible owner or lessee—the payment will be allocated among those Class Members by the Settlement Administrator in accordance with their respective lengths of ownership and as provided by the Settlement Agreement. *Id.* ¶ 5.7.

---

[3] At their option, Class Members who have the Software Final Remedy performed before December 31, 2023 may elect to receive the $1,400 in the form of a Visa eReward card. All other payments from the common fund will be in the form of electronic transfer or a check.

### 2. Battery Defect Remedy

#### i. *Battery Replacement Final Remedy Program*

As detailed above in Section III.C, GM is providing approximately 87,000 Vehicles—the 2017-19 Model Year Vehicles, as well as certain of the Model Year 2020-22 Vehicles—with replacement batteries as part of its recall of the Bolt Vehicles. Settlement Agreement ¶ 2.5. This is referred to as the "Battery Replacement Final Remedy," and includes an extended 8-year/100,000-mile limited battery warranty. *Id.* For the avoidance of doubt, the Battery Replacement Final Remedy was undertaken by GM before this Settlement was agreed upon, and is not part of this Settlement consideration. The Settlement's allocation to these Class Members takes into account the value of this remedy.

#### ii. *Software Final Remedy Program*

Additionally, GM has also announced and provided the Software Final Remedy to approximately 22,560 Class Members. Settlement Agreement ¶ 2.49. Under the Software Final Remedy program, GM dealers are installing new advanced diagnostic software designed to detect anomalies that will indicate whether the vehicle has a potentially defective battery by monitoring the battery over 10,000 km/6,214 miles of use, with state-of-charge capped during that period at 80%. *Id.* If an anomaly is identified, the software will alert the owner to service their vehicle immediately. The owner or lessee should then contact their dealer to schedule a free

battery pack or module replacement. If no anomalies are detected after the initial 6,214-mile (10,000-kilometer) period, the battery will automatically return to a 100% state of charge, indicating diagnostic processes are complete. The software, however, will continue monitoring the battery for the life of the vehicle, even after the vehicle returns to a 100% state of charge.

Subject to certain reasonable temporal limitations,[4] Class Members who receive a replacement battery through the Software Final Remedy program will also receive an extended 8-year/100,000-mile limited battery warranty. Settlement Agreement ¶ 2.49. The extended warranty will run with the Vehicles and remain in place if a Class Member sells the Vehicle prior to the expiration of the extended warranty.

For the avoidance of doubt, although the Software Final Remedy was undertaken by GM before this Settlement was agreed upon and is not part of the Settlement's consideration, Settlement Agreement ¶¶ 5.2–5.6, the Settlement's allocation to these Class Members takes into account the value of this remedy.

In the interest of effectuating the recall remedy for all vehicles as soon as feasible, and beginning on October 20, 2023, GM issued letters to the approximately

---

[4] Class Members are eligible to receive an extended 8-year/100,000-mile limited battery warranty with the replacement battery through the Software Final Remedy program if (i) the Software Final Remedy was applied to the Class Vehicle before March 31, 2024, (ii) the software indicates that a battery replacement is necessary during the initial 6,214-mile period, and (iii) it is so indicated before March 31, 2025.

22,560 Class Members eligible for the Software Final Remedy. The letter, attached hereto as Exhibit B, the language of which was negotiated as part of the Settlement and agreed upon by all parties, details how and where the Class Members can receive the Software Final Remedy and explains that they are eligible for the $1,400 Visa eReward card upon completion. The Visa eReward payments and associated administrative costs are creditable against the Common Fund and are without prejudice to Class Members' right to receive further compensation from the settlement if the Court approves greater compensation from the Common Fund or if there is a second distribution of funds remaining in the Common Fund after all timely claims are paid. Time was of the essence in rolling out the Software Final Remedy and issuing these letters and early payments in order to accelerate the adoption of the remedy, simultaneously serving the safety interests of Class Members and GM's interests in a prompt and efficacious recall.

### C. Release of Claims

As set forth in the Settlement Agreement, in exchange for the above settlement benefits, Plaintiffs and the Settlement Class will release Defendants from liability for all claims alleged in this litigation or which could have been alleged in the litigation. *Id.* § VIII. The release of liability does not include claims for personal injury and/or property damage resulting from the alleged Battery Defect.

### D. Settlement Notice and Right to Opt Out

Upon the issuance of the order granting preliminary approval of the Settlement, GM will provide, within fourteen (14) days of the order and subject to a protective order, the Settlement Administrator with all available Settlement Class Vehicles' Vehicle Identification Numbers ("VINs") for purposes of mailing the Notice. *Id.* ¶ 6.20. The Settlement Administrator will obtain, as needed, additional and corrected address information and then provide by direct U.S. mail and e-mail, to all reasonably identifiable Class Members, a notice substantially in the form attached as Exhibits 2 and 3 to the Settlement Agreement (the "Short-Form Notice" and "Email Notice"). *Id.* ¶ 6.17. The Settlement Administrator will supplement this direct notice program with publication notice as set forth in the Declaration of Carla Peak, attached hereto as Exhibit C.

The Settlement Administrator will set up and maintain a settlement website where Class Members can access a "Long-Form Notice," attached as Exhibit 1 to the Settlement Agreement; a Claim Form, attached as Exhibit 4 to the Settlement Agreement; a copy of the Settlement Agreement; the operative complaint; and additional information about the Action and Settlement. *Id.* ¶ 6.18. The Short-Form Notice will include the address of the settlement website, as well as a toll-free number for an interactive voice recording service that allows Class Members to request a paper copy of the Long-Form Notice.

18

Any Class Member may make a request for exclusion by submitting a request in writing as set forth in the Notice. *Id.* § IX. The deadline for submitting such a request will be specified in the Court's preliminary approval order. *Id.* ¶ 9.1. Any request for exclusion shall:

     (i)      state the Class Member's full name, telephone number, and current address;

    (ii)     provide the model year and VIN of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease; and

   (iii)    specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Class.

*Id.* The Settlement Administrator shall report the names of all Class Members who have submitted a request for exclusion to the Parties on a weekly basis, beginning 30 days after the Notice Date. *Id.* ¶ 9.4. The Settlement Administrator shall provide a list of all Settlement Class Members who have submitted a request for exclusion to Class Counsel no later than ten (10) days prior to the Fairness Hearing, and then file with the Court the list of all Settlement Class Members who have submitted a request for exclusion along with an affidavit attesting to the completeness and accuracy thereto no later than ten (10) days prior to the Fairness Hearing. The Settlement Administrator shall also file with the Court a document detailing the scope, method, and results of the notice program along with a list of those persons who have opted out or excluded themselves from the Settlement not less than thirty days prior to the Final Approval Hearing.

### E. Class Counsel Fees and Expenses and Plaintiffs' Service Awards

Plaintiffs intend to file a motion for attorneys' fees and expenses prior to the final approval hearing. The Parties have agreed that Interim Co-Lead Class Counsel may apply to the Court for up to 35% of the Settlement Fund to be allocated as attorneys' fees and costs. *Id.* § VII. Defendants have reserved the right to object to any filing regarding attorneys' fees the Plaintiffs file. *Id.* ¶ 7.1.

Further, the Parties have agreed that Class Counsel may request Service Awards of $2,000 for each of the Plaintiffs, as identified in ¶ 2.35 of the Settlement Agreement. *Id.* ¶ 7.3.

## IV.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

In conjunction with granting preliminary approval of the Settlement, the Court should preliminarily certify the Settlement Class, comprised of all persons within the United States who purchased (whether new or used) or leased, other than for resale, a Model Year 2017, 2018, 2019, 2020, 2021 or 2022 Chevrolet Bolt built and shipped to a dealer on or before August 19, 2021 and who have not received a buyback of their vehicle from General Motors or a General Motors authorized dealer. *Id.* ¶ 3.1. In so doing, the Court should appoint the Plaintiffs named above as class representatives of the Settlement Class.

A proposed settlement class must satisfy the requirements of Rule 23. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors*

*Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). To be entitled to class certification, a class must satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23(b).

That the parties have reached a settlement in this matter is a relevant consideration in the class certification analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual decision to settle class action cases, because that law favors settlement in class action suits." *Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 20, 2019) (granting preliminary approval of class action settlement); *see also Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "At the preliminary approval stage, the Court assesses 'simply whether the settlement is fair enough' to start class notice." *Raymo v. FCA US LLC*, 2023 WL 6429548, at *2 (E.D. Mich. Sept. 30,

2023) (Berg, J.) (citing *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed Settlement Class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976); *UAW*, 497 F.3d at 626. The Class, consisting of current and former owners and lessees of more than 100,000 Class Vehicles, is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1); *see also Raymo*, 2023 WL 6429548, at *5 (certifying settlement class of 17,705 class members).

Plaintiffs assert that common issues of fact and law are present because the Class's causes of action all flow from the same alleged common defect. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (affirming finding of commonality based on an alleged uniform design defect in vehicles). These common issues include whether the Battery Defect exists in the Class Vehicles, whether Defendants had knowledge of the Battery Defect when they placed the Vehicles into the stream of commerce, whether Defendants knowingly failed to disclose the existence and cause of the Battery Defect in the Class Vehicles, and whether Defendants had a duty to disclose the Battery Defect in the Class Vehicles. *See, e.g.*, *Raymo*, 2023 WL 6429548, at *5. Typicality is similarly satisfied because the

Settlement Class's claims all arise from the same course of conduct and the common Battery Defect. *See id.*; *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 169 (E.D. Mich. 2006) (finding typicality to be satisfied where the plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members").

Finally, the Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs have common interests with other Class Members and have vigorously prosecuted the interests of the Class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998). There is no conflict between the Plaintiffs and any member of the Settlement Class. Rather, Plaintiffs should be applauded for their efforts in obtaining a successful resolution of this case.

**B.     The Settlement Class May Be Properly Certified Under Rule 23(b)(3)**

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three alternatives of Rule 23(b). Plaintiffs here seek certification under Rule 23(b)(3).

Certification for settlement purposes under Rule 23(b)(3) is appropriate here. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

### 1. Common Issues of Fact and Law Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564 (quoting *Amchem*, 521 U.S. at 632). Here, Plaintiffs assert that "common proof for questions of fact, rather than individualized circumstances, predominate because [Defendants'] conduct regarding [the defect] claims was the same across all allegedly affected [vehicles]." *Raymo*, 2023 WL 6429548, at *5. Those common questions include whether there is a Battery Defect, whether Defendants were aware of the existence of the Battery Defect, whether Defendants concealed the existence of the Battery Defect, and whether Class Members sustained damages. Courts have routinely found that similar common issues predominate in automotive defect cases. *See, e.g.*, *Chapman v. Gen. Motors, LLC*, 2023 WL 2746780, at *8-9 (E.D. Mich. Mar. 31, 2023) (Berg, J.); *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 508-22 (E.D. Mich. 2023) *Daffin*, 458 F.3d at 554. Given the alleged uniformity of the Battery Defect and Defendants' conduct, Plaintiffs submit that resolution of the Settlement Class's claims is particularly suitable for adjudication on a collective basis pursuant to Rule 23(b)(3).

24

Plaintiffs recognize that, if the case were litigated, Defendants have asserted a number of defenses that, Defendants argue, are individualized defenses that would preclude holding that predominance exists in the context of litigation. But—as is common in class settlements—Defendants have agreed to waive those defenses for purposes of settlement only, thus smoothing the way to predominance in connection with this motion for preliminary approval.

### 2.    A Class Action Is a Superior Method of Adjudication

Rule 23(b)(3) also requires that Plaintiffs demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs argue that class-wide resolution of this Action is the superior method of adjudication. *See Raymo*, 2023 WL 6429548, at *5.

First, Plaintiffs believe that the value of each individual Class Member's claim is too low to incentivize most Class Members to litigate their claims individually and weighs in favor of concentrating the claims in a single action. *In re Whirlpool Corp.*, 722 F.3d at 861. This is especially true here, where most Settlement Class Members would likely be unable or unwilling to individually shoulder the expense of litigating the claims at issue against these well-funded and well-represented Defendants. *See id.*

In addition, because the central issues here related to battery integrity are allegedly common to all Class Members, Plaintiffs assert that resolution on a class-wide basis is the most efficient method of resolving the claims. *See* 2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, § 4.74 (5th ed. 2020) (noting that "a finding of predominance is typically . . . coupled with a finding that a class is manageable"). Indeed, Plaintiffs argue that proceeding as a class action will "achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 Amendment).

## V. THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions. *See* Fed. R. Civ. P. 23(e); *Amchem*, 521 U.S. at 617. Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate." *UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *See, e.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F.3d at 632 ("[W]e must consider—the federal policy favoring settlement of class actions[.]"); *Vassalle v. Midland Funding LLC*, 2014 WL 5162380, at *6 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F.

App'x 352 (6th Cir. 2016); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013).

The Sixth Circuit utilizes seven factors in evaluating class action settlements: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *see also Raymo*, 2023 WL 6429548, at *2-3. In considering these factors, courts apply a "strong presumption" in favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement"); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co.*, 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005). "A district court need not consider every factor in every case, nor need it weigh every factor equally. Instead, the court may choose 'to consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case.'" *Raymo*, 2023 WL 6429548, at *3 (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008)).

As set forth below, the seven-factor standard supports approval of the Settlement Agreement.

### A. There Is No Fraud or Collusion

The Parties have at all relevant times been represented by experienced counsel. Interim Co-Lead Class Counsel have significant experience litigating numerous consumer class actions, including automotive defect cases. *See* Exhibits E and F. The Settlement Agreement was achieved only after arm's-length and good faith negotiations and multiple formal mediations between the Parties and with mediators Judge Jay Gandhi (Ret.) and Lexi Myer-Wolfe of JAMS. As such, there is no indication of fraud or collusion. *In re Telectronics Pacing*, 137 F. Supp. 2d at 1016 (quoting NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."); *see also Raymo*, 2023 WL 6429548, at *4 (holding no indications of fraud or collusion and noting that the negotiations were facilitated by mediator Judge Morton Denlow (Ret.); *Persad v. Ford Motor Co.*, 2021 WL 6197051, at *2 (E.D. Mich. Dec. 30, 2021) (Berg, J.) (finding "Settlement is fair, reasonable, and adequate, and serves the best interests of the Settlement Class" where "[t]he Settlement was the result of arm's-length negotiation involving a mediator by experienced counsel with an understanding of the strengths and weaknesses of their respective cases."); *Daoust v. Maru Rest., LLC*,

2019 WL 2866490, at *2 (E.D. Mich. July 3, 2019) (Berg, J.) ("To help resolve the case, the parties enlisted the services of a retired Federal Judge . . . in facilitating the Parties' mediation, thereby reinforcing that the Settlement Agreement is non-collusive.").

### B.     The Complexity, Expense, and Likely Duration of the Litigation Favor Approval

The Settlement in this Action comes at an opportune time given that, if the litigation continues, there will be substantial additional expense to the Parties associated with necessary expert discovery, depositions, dispositive motion practice, and pre-trial preparations. The Parties have negotiated at arm's-length relatively early in the litigation, preventing the need for a drawn-out litigation that would likely have consumed thousands of hours in attorney time, millions of dollars in litigation expenses for both Parties, and delayed relief to the Class. If litigation continues, the Parties will engage in extensive fact and expert discovery, including depositions, the review of thousands of documents (many of which are in Korean), and future briefing on class certification and summary judgment. Moreover, a trial in this Action would be complex given the relevant factual and legal issues involved. *See Daoust*, 2019 WL 2866490, at *2 ("If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that

29

relief through the economies of class resolution."); *see also Raymo*, 2023 WL 6429548, at *4.

Further, the risk to Plaintiffs of continued litigation is high. The two recall remedies for the Vehicles have the potential to moot Plaintiffs' claims. With this Settlement, Plaintiffs will be provided with both a recall remedy and monetary compensation for the inconvenience and risk caused by the Battery Defect. Plaintiffs also risk arbitration of a significant number of class members' claims if litigation continues—especially in light of this Court's prior order compelling arbitration of some of the plaintiffs' claims.

And, even if Plaintiffs prevailed at trial, it could be years before any Settlement Class Members receive any benefit due to the potential for post-trial motions and appeals. Meanwhile, the Settlement provides substantial relief to the Settlement Class in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006).

### C.     The Discovery Engaged in by the Parties Favors Approval

Even though Settlement negotiations began prior to the entry of a case schedule, discovery had already begun with GM responding to requests for production and special interrogatories, and the parties negotiating Rule 30(b)(6) topics. In addition, the Parties exchanged meaningful confirmatory discovery

regarding the Battery Defect and the recall remedies. *See Raymo*, 2023 WL 6429548, at *4 (holding that "formal discovery is not necessarily required, so long as the parties have obtained adequate information to evaluate the relative strength of their positions.") (collecting cases). Plaintiffs have also consulted extensively with experts to review this information and analyze the batteries, the alleged Battery Defect, the recall remedies, and Plaintiffs' economic damages. This discovery and expert work allowed Interim Co-Lead Class Counsel to make informed decisions regarding the terms of the Settlement and sufficiently assess whether they are fair, reasonable, and adequate.

Further, Defendants have issued recalls and developed remedies to address the Battery Defect, including the Battery Replacement Final Remedy and the Software Final Remedy, all of which Plaintiffs have reviewed and investigated in tandem with their experts.

### D.    The Likelihood of Success on the Merits Favors Approval

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute this complex litigation through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). A settlement is generally viewed favorably because it "avoids the costs, delays, and

multitude of other problems associated with them." *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation and internal quotation marks omitted). To put it succinctly, "[t]he outcome is never certain in complex class actions[.]" *Raymo*, 2023 WL 6429548, at *4.

Here, but for the Settlement, the litigation would continue to be contested, and counsel for all Parties were committed to litigate this case through trial and beyond, if necessary. Accordingly, there are substantial risks and costs if this Action were to proceed, such as the risks of arbitration for a significant number of class members and of the recall remedies mooting Plaintiffs' claims. While Interim Co-Lead Class Counsel believe that the Plaintiffs and putative Class would ultimately prevail at trial, Interim Co-Lead Class Counsel recognize that ultimate success is not assured and believe that this Settlement, when considering the risks of proving both liability and recoverable damages, is unquestionably fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (finding that while plaintiffs may "remain optimistic about their ultimate chance of success[,] there is always a risk that Defendants could prevail with respect certain [sic] legal or factual issues," which weighs in favor of approval of settlement). As such, avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.*, 2006 WL 1984363,

at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

### E.    Experienced Class Counsel's Opinions Favor Approval

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Interim Co-Lead Class Counsel here have extensive experience in handling class action cases, including automotive defect cases like at issue here. *See* Exhibits E and F. Interim Co-Lead Class Counsel have thoroughly investigated and analyzed the claims alleged in this Action, have made informed judgments regarding the Settlement and believe it is fair, reasonable, and adequate. Interim Co-Lead Class Counsel also engaged in extensive, good-faith negotiations overseen by experienced mediators. Furthermore, Plaintiffs obtained the opinion of a distinguished expert, Lynn Baker, who opines that the plan of allocation set forth in the Settlement Agreement is fair, adequate, and reasonable. *See* Exhibit D. This further weighs in support of preliminary approval.

### F.    The Reaction of Absent Class Members

As explained in *Raymo*, "the Court must wait to hear from objectors or class members that opt out after class notice is sent in order to assess the reaction of the absent class members." 2023 WL 6429548, at *5. Still, it is worth noting that some

plaintiffs' lawyers have filed individual claims even before learning the settlement's terms. This fact demonstrates that lawyers representing certain potential Class Members are both aware of the case and of their potential claims, and that those lawyers have taken responsibility for advising their clients about whether to choose the certainty of these settlement benefits or the more speculative possibility of litigation.

### G.    The Settlement Is Consistent with the Public Interest

Finally, the Court should consider whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc.*, 962 F.2d at 1205); *see also Raymo*, 2023 WL 6429548, at *5.

Here, it is clearly in the public interest to approve this Settlement. The Settlement provides extensive benefits—including expedited relief in order to incentivize class members to have the Software Final Remedy performed as soon as possible, and material monetary benefits—resolves the claims of the Class, eliminates the risk of non-recovery on behalf of the Class, provides certainty to the Parties and the Class, and eases the burden of the Court's resources. These reasons,

plus the "federal policy favoring settlement of class actions, weighs in favor of the settlement." *Id.* (citing *UAW*, 497 F.3d at 632).

## VI.    THE COURT SHOULD APPOINT CLASS COUNSEL

Pursuant to Fed. R. Civ. P. 23(g), Plaintiffs also move to appoint The Miller Law Firm, P.C. and Keller Rohrback L.L.P. as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Fine, Kaplan and Black, RPC, Migliaccio & Rathod LLP, Law Offices of Todd M. Friedman, PC, and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Plaintiffs' Steering Committee Class Counsel. Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of Rule 23(g)(1)(A)'s considerations weigh strongly in favor of appointing proposed Class Counsel. Specifically, proposed Class Counsel performed substantial work identifying and investigating potential claims and properly supporting the allegations in the Amended Class Action Complaint. As part of their investigation and work, proposed Class Counsel retained and consulted with

multiple experts, and carefully reviewed public materials along with documents and information produced by Defendants.

As reflected in their firm resumes, proposed Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this Action. *See* Exhibits E and F. Hence, proposed Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## VII.   THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which the class notice is disseminated, as well as its content, must satisfy Fed. R. Civ. P. 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See Daoust*, 2019 WL 1055231, at *2; *Raymo*, 2023 WL 6429548, at *6. These requirements are adequately satisfied here. Rule 23(e) requires that notice of a proposed settlement be provided to class members. Notice satisfies the Rule when it adequately puts settlement class members on notice of the proposed settlement and "describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Daoust*, 2019 WL 1055231, at *2.

Here, following the Court granting preliminary approval of the Settlement, the Settlement Administrator will provide the Short Form and Email Notices by email and/or direct U.S. mail. Settlement Agreement ¶ 6.17, Exs. 2-3 to Settlement Agreement. The Settlement Administrator will also set up and maintain a settlement website where Class Members can access a "Long-Form Notice" (*Id.*, Ex. 1 to Settlement Agreement), a Claim Form, a copy of the Settlement Agreement, the operative complaint, and additional information about the Action and Settlement. *Id.* ¶ 6.18. The Short-Form and Email Notices will include the address of the settlement website, as well as a toll-free number for an interactive voice recording service that allows Class Members to request a paper copy of the Long-Form Notice.

The proposed notice plan satisfies all of Rule 23's requirements. The language of the Class Notice is being drafted jointly by the Parties and will be written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement benefits and release of claims; (4) the deadlines and instructions for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline and instructions for objecting to the Settlement. *See* Settlement Agreement at Exs. 1-3. The Class Notice thus will allow Settlement Class Members to make an informed and intelligent decision on whether

to submit a Claim Form, exclude themselves, or object to the Settlement. In addition, pursuant to Fed. R. Civ. P. 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Service Awards that may be sought.

The dissemination of the Class Notice likewise satisfies all requirements. The Settlement Administrator will mail the Short Form Notice to the last known address of each potential member of the Settlement Class, which will be checked and updated via the National Change of Address database. *See* Settlement Agreement, ¶ 6.20. If any Class Notice is returned as undeliverable, the Settlement Administrator shall perform a reasonable search for a more current address and re-send the Class Notice. *Id.* ¶ 6.22.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See Raymo*, 2023 WL 6429548, at \*6.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interest of the Class Members; (2) preliminarily certify the proposed Settlement Class for settlement purposes only; (3) preliminarily appoint The Miller Law Firm, PC and Keller Rohrback, LLP as Co-Lead Class Counsel and McCune Wright Arevalo, LLP, Fine, Kaplan and Black, RPC, Migliaccio & Rathod LLP,

Law Offices of Todd M. Friedman, PC, and Chimicles Schwartz Kriner &

Donaldson-Smith LLP as Plaintiffs' Steering Committee Class Counsel; (4) approve

the form and content of, and direct the distribution of, the proposed Class Notice and

accompanying Claim Form, and authorize and direct the Parties to retain KCC as

Settlement Administrator; and (5) schedule a Final Approval Hearing not earlier than

one hundred and eighty (180) days after Preliminary Approval is granted.

DATED: May 16, 2024                              Respectfully submitted,

                                                 By: */s/ E. Powell Miller*
                                                 E. Powell Miller (P39487)
                                                 Sharon S. Almonrode (P33938)
                                                 Peter Muhic (P87195)
                                                 Dennis A. Lienhardt (P81118)
                                                 Mitchell J. Kendrick (P83705)
                                                 **THE MILLER LAW FIRM, P.C.**
                                                 950 West University Dr., Suite 300
                                                 Rochester, MI 48307
                                                 (248) 841-2200
                                                 Fax (248) 652-2852
                                                 epm@millerlawpc.com
                                                 ssa@millerlawpc.com
                                                 pm@millerlawpc.com
                                                 dal@millerlawpc.com
                                                 mjk@millerlawpc.com

                                                 Gretchen Freeman Cappio (P84390)
                                                 Ryan McDevitt (P84389)
                                                 Sydney Read
                                                 **KELLER ROHRBACK L.L.P.**
                                                 1201 Third Avenue, Suite 3200
                                                 Seattle, WA 98101
                                                 (206) 623-1900
                                                 Fax (206) 623-3384
                                                 gcappio@kellerrohrback.com

rmcdevitt@kellerrohrback.com
sread@kellerrohrback.com

*Interim Co-Lead Counsel*

David C. Wright
Mark I. Richards
Richard D. McCune
Steven A. Haskins
**MCCUNE WRIGHT ARAVELO, LLP**
3281 East Guasti Road, Suite 100
Ontario, CA 91761
(909) 557-1250
Fax (909) 557-1275
dcw@mccunewright.com
mir@mccunewright.com
rdm@mccunewright.com
sah@mccunewright.com

Roberta Liebenberg
Gerard A. Dever
Mary L. Russell
**FINE, KAPLAN AND BLACK, RPC**
1 South Broad St., Suite 2300
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com
mrussell@finekaplan.com

Nicholas A. Migliaccio (P29077)
Jason S. Rathod (P18424)
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
(202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

40

Todd Friedman
David B. Levin
**LAW OFFICES OF TODD M. FRIEDMAN, PC**
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
(224) 218-0882
Fax (866) 633-0228
dlevin@toddflaw.com
tfriedman@toddflaw.com

Timothy N. Mathews
Beena M. McDonald
Samantha E. Holbrook
Alex M. Kashurba
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Ave
One Haverford Centre
Haverford, PA 19041
(610) 642-8500
tnm@chimicles.com
bmm@chimicles.com
bfj@chimicles.com
seh@chimicles.com

*Interim Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 16, 2024, I electronically submitted the foregoing

to the Court via the ECF/Utilities function and thereafter emailed counsel of record proof

of submission of this document.

*<u>/s/ E. Powell Miller</u>*
E. Powell Miller
