## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE CHEVROLET BOLT EV BATTERY LITIGATION | Case No. 2:20-cv-13256-TGB-CI<br>Hon. Terrence G. Berg, District Judge<br>Hon. Curtis Ivy, Magistrate Judge |

## DEFENDANT GENERAL MOTORS LLC'S
## OPPOSITION TO HEYGOOD, ORR & PEARSON'S
## MOTION TO ALLOW ELECTRONIC OPT OUTS

## STATEMENT OF THE ISSUES PRESENTED

1. Should the Court alter the terms of the Class Settlement Agreement to permit putative class members to opt out using electronic signatures and email?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. *Evans v. Jeff D.*, 475 U.S. 717 (1986)

2. *Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988)

3. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000)

4. *In re TikTok, Inc. Consumer Privacy Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021)

5. Federal Rule of Civil Procedure 23(e)(5)

6. Local Rules 7.1 and 16.3 of the U.S. District Court for the Eastern District of Michigan

## TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES PRESENTED ..................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .......................... iii

I. INTRODUCTION ............................................................................................V

II. BACKGROUND ............................................................................................. 2

    A. This Consolidated Putative Class Action ............................................. 2

    B. The Settlement ..................................................................................... 3

    C. Opt-Outs .............................................................................................. 4

    D. This Motion ......................................................................................... 5

III. ARGUMENT ................................................................................................ 6

    A. Courts May Not Alter the Terms of a Settlement Agreement Without the Agreement of All Parties. ............................................... 6

    B. The Movants' Request Is Procedurally Improper ............................. 10

        1. The Movants' Request Is Untimely. ........................................ 10

        2. The Heygood Firm Lacks Standing to Pursue the Requested Relief. ...................................................................11

        3. Movants Failed to Properly Meet and Confer. ........................ 12

        4. The Motion Improperly Discloses Mediation Communications in Connection with a Misleading Argument. ................................................................................. 12

IV. CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brock v. Scheuner Corp.*,
 841 F.2d 151 (6th Cir. 1988) ................................................................................8

*Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*,
 604 F. Supp. 68 (S.D. Ohio 1984) ........................................................................8

*Brown v. County of Genesee*,
 872 F.2d 169 (6th Cir. 1989) ................................................................................8

*In re Chevrolet Bolt EV Battery Litig.*,
 633 F. Supp. 3d 921 (E.D. Mich. 2022) ...............................................................3

*In re Equifax Inc. Customer Data Security Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) ............................................................................8

*Evans v. Jeff D.*,
 475 U.S. 717 (1986) ..............................................................................................8

*Levell v. Monsanto Rsch. Corp.*,
 191 F.R.D. 543 (S.D. Ohio 2000) ........................................................................8

*In re TikTok, Inc., Consumer Privacy Litig.*,
 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ..............................................................6, 7

**Statutes and Other Authorities**

4 Newberg & Rubenstein on Class Actions, § 13:46 (6th ed. 2024) ........................8

Cal. Evid. Code § 1119 ...........................................................................................13

Fed. R. Civ. P. 23 ................................................................................................8, 11

Local Rule 7.1 ...................................................................................................11, 12

Local Rule 16.3 .......................................................................................................14

I.      **INTRODUCTION**

The law firm of Heygood, Orr & Pearson—purportedly acting on behalf of unidentified, absent members of the putative class—seeks to alter the terms of the parties' carefully negotiated settlement agreement to permit electronic opt-outs from the proposed settlement class. It's telling that the Heygood firm does not identify the potential class members it claims to be acting on behalf of, because the motion is nothing more than a cynical attempt to enlist this Court in the firm's plan to solicit clients to opt out of the settlement—which Heygood deemed insufficient before the settlement's terms were even public. The requested relief may serve the Heygood firm's interests, but it does not serve the interests of class members. In any event, the motion is meritless and should be rejected for several reasons.

To begin with, the Heygood firm is wrong to suggest that this Court can alter the settlement in the way it requests. As the Court is aware, the parties spent many months and engaged in multiple mediation sessions to negotiate the terms of the proposed Settlement Agreement. One critical aspect of that agreement was the requirement that individuals who wish to opt out (presumably so that they can pursue their own claims) certify that they really wish to do so by completing, signing, and mailing hard-copy opt-out forms. The point of this provision is to reduce the risk of abusive, lawyer-driven "mass" opt-outs by requiring putative class members to undertake these modest steps following the order granting preliminary approval;

individuals who are unwilling to sign and mail a brief opt-out document would lack the wherewithal to be plaintiffs in individual litigations or arbitrations, and thus would be worse off if they were encouraged to opt out of the class solely through online lawyer advertising. Moreover, the Settlement Agreement provides that it is no longer binding if the Court changes it, and any such order could open the door to one or more of the parties voiding the Settlement Agreement.

In addition, the Heygood firm's motion suffers from procedural irregularities that justify its rejection. For starters, the motion is a *de facto* opposition to Plaintiffs' Motion for Preliminary Approval that was filed more than two months after the deadline. Moreover, because the motion does not disclose the identities of the purported movants (that is, the absent members of the putative class), the real parties in interest appear to be the Heygood firm, which lacks standing to oppose the terms of the Settlement Agreement because it is not a potential class member. Counsel also failed to meet and confer in accordance with this Court's rules before filing their motion.

In short, the Court should reject the Heygood firm's motion out of hand.

## II. BACKGROUND

### A. This Consolidated Putative Class Action

Beginning in late 2020, various plaintiffs filed a series of eight putative class actions that ultimately were consolidated into this action. In their consolidated

complaint, Plaintiffs alleged that GM failed to disclose and adequately repair the alleged Bolt battery defect and asserted a number of claims based upon those allegations. *See generally* ECF No. 27. Plaintiffs also brought claims against a number of LG entities as defendants. *See id.*

In December 2021, GM and the LG defendants filed motions to dismiss and motions to compel certain plaintiffs' claims to arbitration. ECF Nos. 35-37, 44, 46-49. This Court partially granted the motions to dismiss and granted the motions to compel arbitration, but allowed certain other claims to proceed. *See generally In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921 (E.D. Mich. 2022).

### B. The Settlement

Following months of negotiations and extensive mediation efforts led by the Hon. Jay Gandhi (Ret.) over several sessions, the parties reached a class-wide settlement. *See generally* ECF Nos. 157, 157-2. The parties' Settlement Agreement generally provides that Bolt owners whose vehicles were or are subject to the Battery Replacement Remedy will receive $700 each, and Bolt owners whose vehicles were or are subject to the Software Remedy will receive $1,400 each. ECF No. 157-2 at 39-40, PageID.9788-9789. The Settlement Agreement contemplates that, if the Court grants preliminary approval and certifies a class for settlement purposes, putative class members may opt out of the class, but they must do so by hand-signing an opt-out request and mailing that request to the Settlement Administrator. *Id.* at

54-55, PageID.9807-9808. The Settlement Agreement contemplates that if too many putative class members opt out of the class, the Agreement is voidable. *Id*. at 64, PageID.9817. Likewise, the Settlement Agreement states that if the Court does not approve its terms as written, a party may void the Settlement Agreement. *Id*. at 62-63, PageID.9815-9816.

Plaintiffs filed a motion for preliminary approval of the settlement on May 16, 2024. ECF No. 157. The Court held a hearing on that motion on July 15, 2024. *See* ECF Nos. 163, 166. At that hearing, the Court expressed its approval of the settlement, concluding: "[I]t seems to me this agreement is a fair and reasonable and appropriate agreement and it's appropriate for the Court to approve of it at this time." ECF No. 166 (Transcript) at 30:3-6. A written order on that motion is currently pending.

### C. Opt-Outs

Beginning in late 2023—shortly after the parties here announced that they had reached a settlement (*see* ECF No. 150 at 1, PageID.9591), but before they had announced that settlement's terms—the law firm of Heygood, Orr & Pearson began filing lawsuits on behalf of individual plaintiffs against GM that are premised upon the same facts as this action. Indeed, the Heygood firm initially filed several of its actions in various federal courts,[1] including this court, and it appeared at this Court's

---

[1]   *See, e.g.*, *Beech et al. v. Gen. Motors, LLC*, No. 1:23-cv-16057 (N.D. Ill.);

4

December 2023 hearing on the status of the settlement at issue in this Motion. However, after that hearing, and after GM began to seek transfer of those cases to this Court, the Heygood firm dismissed its federal actions without prejudice and refiled some of those claims in state court (along with other claims on behalf of new clients).[2]

### D. This Motion

The Heygood firm has brought this motion on behalf of unidentified "Movants," whom the firm claims are "individual class members" represented by their firm who purportedly have "been informed of the terms of the proposed class settlement" and "intend to opt out of the class and pursue their individual claims against [GM]." ECF No. 167, 1, PageID.10160. The motion recognizes that, under the Settlement Agreement, putative class members who wish to opt out must complete, hand-sign, and mail a hard-copy opt-out form to the Settlement Administrator, but asks this Court to alter that provision to permit electronic opt-

---

*Berger et al v. Gen. Motors LLC*, No. 2:23-cv-01937-SKV (W.D. Wash.); *Arbini et al. v. Gen. Motors, LLC,* No. 2:23-cv-12832-TGB-CI (E.D. Mich.); *Markey et al. v. Gen. Motors, LLC*, No. 9:23-cv-81494-DMM (S.D. Fla.); *Anderson et al. v. Gen. Motors, LLC*, No. 23-cv-01831-HZ (D. Or.); *Avino et al v. Gen. Motors LLC,* No. 23-cv-02524-PHX-DLR (D. Ariz.).

[2] *See, e.g.*, *Beech et al v. Gen. Motors LLC*, No. 2023L012851 (Ill. Cir. Ct. Cook Cnty.); *Berger et al v. Gen. Motors LLC*, No. 24-2-01146-3 (Wash. Super. Ct. King Cnty.); *Bratcher et al v. Gen. Motors LLC*, No. DC-23-18967 (Tex. Dis. Ct. Dallas Cnty.); *Haynes et al v. Gen. Motors, LLC*, No. 23TRCV03755 (Cal. Super. Ct. LA Cnty.); *Cardoso et al v. Gen. Motors LLC,* No. 23CV427950 (Cal. Super. Ct. Santa Clara Cnty.).

5

outs. *Id.* at 3, PageID.10162.

### III. ARGUMENT

#### A. Courts May Not Alter the Terms of a Settlement Agreement Without the Agreement of All Parties.

It's undisputed that, under the Settlement Agreement, "[a]ll requests for exclusion [from the settlement] shall be in writing and shall be personally signed by the member of the Settlement Class who is opting out." ECF No. 157-2, 54-55, PageID.9807-9808; *see also* ECF No. 157-3, 16-17, PageID.9869-9870 (Proposed Order). The Heygood firm acknowledges that this procedure "require[s] each class member seeking to opt out to . . . physically sign their opt out notice with a 'wet ink' signature and mail the notice to the Administrator." ECF No. 167, 5, PageID.10164.

That requirement, like many of the provisions of the Settlement Agreement, was heavily negotiated and is fundamental to the parties' agreement. The requirement of a personal, physical signature is the best way of guaranteeing that each putative class member will carefully evaluate whether to opt out of the settlement class before actually doing so and trading a certain right to recover for the uncertainty of individual litigation or arbitration. *E.g.*, *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) (noting "courts have routinely enforced the requirement that class members individually sign and return a paper opt-out form as 'vital' to ensuring 'that the class member is individually consenting to opt out,'" and collecting cases). That requirement also avoids *de facto*

6

"mass" opt-outs, which the Settlement Agreement explicitly prohibits. *Id.* (electronic submissions "make[] it easier for third parties and their counsel to file unauthorized mass opt-outs" (citation omitted)); ECF No. 157-2, 55, PageID.9808 ("'mass' or 'class' opt outs shall not be allowed"). Such mass opt-outs are forbidden for good reason: those opt-outs are often recruited through lawyer-driven, online advertising that can fail to provide potential clients with a full and fair opportunity to determine whether choosing litigation over settlement makes sense for them. Moreover, to be sure, if the number of opt outs is large enough, it diminishes the key benefits to the parties and the judicial system of a class-wide settlement: global resolution and global peace.

For these reasons, the parties negotiated and included the "blow-up" provision that grants the Defendants the "right, at their option, to terminate the Settlement Agreement" if an excessive number of opt-outs occur. *See* ECF No. 157-2, 65, PageID.9817.

In the face of these negotiated provisions, the Heygood firm has taken the aggressive step of pressing this Court to "revise[]" the Settlement Agreement "to allow for electronic opt outs," and to "permit[]" those wishing to opt out "to submit their signed opt out notice to the Settlement Administrator by email rather than by mail." ECF No. 167, 3, PageID.10162.

But the Heygood firm fails to recognize that a district court "must enforce the

7

settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *see also Brown v. County of Genesee*, 872 F.2d 169, 173 (6th Cir. 1989) (quoting *Brock*). That principle is true in the context of class actions as well: although the parties "need judicial approval to bind absent class members, the [settlement] agreement itself is nonetheless a private contract among the settling parties," and the Court "cannot rewrite the agreement." 4 Newberg & Rubenstein on Class Actions, § 13:46 (6th ed. 2024). The Supreme Court has held that "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also, e.g., In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1274 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 431 (2021) and 142 S. Ct. 765 (2022) ("The judge cannot rewrite the agreement.") (quoting *Manual for Complex Litigation, Fourth*, § 21.61).

Thus, this Court "lacks the authority to modify the terms of" the Settlement Agreement because it is "[o]nly the parties, during arms' length negotiations," who "have the power to change the terms of their Agreement." *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543, 549 (S.D. Ohio 2000) (applying *Brown* in the context of class settlement); *see also, e.g., Bronson v. Bd. of Educ. of City Sch. Dist. of City of*

*Cincinnati*, 604 F. Supp. 68, 73 (S.D. Ohio 1984) ("This Court does *not* have the power to order specific changes or modifications to be made in the agreement. Only the parties, during arms-length negotiations, such as those that proceeded the drafting and the approval of this agreement, have the power to agree upon changes."). The Heygood firm does not cite any authority to the contrary.

Consistent with these principles, the Settlement Agreement explicitly contemplates that "[a]ny Party shall . . . have the option to withdraw from th[e] Settlement Agreement, and to render it null and void," if the Court attempts to modify either the Settlement Agreement or the proposed preliminary approval order in any manner that Party deems to be material. ECF No. 157-2, 63-64, PageID.9816-9817. If the Court were to accept the Heygood firm's invitation to rewrite the settlement agreement, that would open the door to one of the parties exercising their right to withdraw from and void that agreement.

Even if the Court could alter the settlement in the way the Heygood firm suggests, it would make little sense to do so. The motion attempts to justify the requested change by pointing to the alleged "costs and inconvenience" of each class member having "to prepare their notice, physically sign it, address an envelope, purchase a stamp and mail the notice." ECF No. 167, 5, PageID.10164. But this is how most opt-outs in class actions work; moreover, the proposed opt-out period would run 150 days (nearly five months) from the date of preliminary approval (ECF

9

No. 157-2, 54, PageID.9807; ECF No. 157-3, 16, PageID.9869), which is more than enough time to accomplish these minor tasks. Indeed, presumably the reason potential class members would want to opt out of the settlement—certainly any class member who truly wants to be represented by the Heygood firm—is so that they can pursue their own litigation or arbitration. Doing so will undoubtedly entail much more time, burden, and expense than signing and mailing in an opt-out request; after all, any litigant whose claim is not outright dismissed must be prepared to sit for a deposition and participate in discovery. Tellingly, none of the Heygood firm's clients have offered up any evidence suggesting that the wet-ink and mailing requirements would actually impose any significant burden on them.

In short, the Court should reject the request to alter the Settlement Agreement's terms.

### B. The Movants' Request Is Procedurally Improper

While the Heygood firm's motion is fatally flawed on the merits, the Court also can reject that motion for an independent reason: it is riddled with procedural deficiencies.

#### 1. *The Movants' Request Is Untimely.*

First, the motion is a *de facto* opposition to the Plaintiffs' motion for preliminary approval of the Settlement Agreement. *See generally* ECF No. 157. Plaintiffs filed that motion on May 16, 2024 (*id.*), so responses to that motion were

due by no later than June 6, 2024. *See* L.R. 7.1(e) (responses to motion to certify a class due "within 21 days following service of the motion," and other responses due "within 14 days after service of the motion"). Consistent with that schedule, the Court held a hearing on the motion on July 15, 2024. *See* ECF Nos. 163, 166. The Heygood firm was certainly made aware of that hearing; indeed, counsel from that firm previously participated in a hearing in this case regarding the settlement status in December 2023.[3] Yet they offer no reason—and there is no legitimate excuse— why they waited until mid-August to file this motion. Because the motion is untimely, it can be rejected on that basis alone.

### 2. *The Heygood Firm Lacks Standing to Pursue the Requested Relief.*

Second, the Heygood firm's motion purports to be on behalf of certain absent members of the putative class, but the motion never bothers to identify the movants. That failure matters: Federal Rule of Civil Procedure 23(e)(5) only permits putative class members to object to a proposed class settlement. Because the identity of the movants is unknown, the parties and this Court have no way of ensuring that those purported movants are actually members of the proposed class. And the Heygood

---

[3] *See* ECF No. 152 (setting telephonic status conference in which the Heygood firm participated); Notice of Telephonic Conference at 1, PageID.128, *Arbini et al. v. Gen. Motors, LLC,* No. 2:23-cv-12832-TGB-CI (E.D. Mich. Dec. 6, 2023), ECF No. 6 (ordering joint status conference in *Arbini* case, which was brought by Heygood firm, and this action).

11

firm's silence about their clients here speaks volumes: it underscores the likelihood that this request is a counsel-driven effort to recruit a larger number of opt outs through online marketing and advertising. In any event, because the Heygood firm is not a member of the Class, it lacks standing to object to the Agreement. For that independent reason, the Court should deny the request.

### 3. *Movants Failed to Properly Meet and Confer.*

Third, Local Rule 7.1(a) "requires that a moving party conduct a meaningful and timely conference with other parties to explain the nature of the relief sought and the grounds for the motion, to seek concurrence, and to narrow the issues." That did not take place. Instead, the Heygood firm simply sent a draft of the motion to counsel for Plaintiffs, GM, and some (but apparently not all) of the LG Defendants and asked the recipients if they would oppose the motion.[4] That is precisely what this Court's local rules prohibit. *See* U.S. District Court for the Eastern District of Michigan, Local Rules, at 28, *available at* https://www.mied.uscourts.gov/PDFFIles/localRulesPackage.pdf (last accessed Aug. 30, 2024) ("sending an email without engaging the other parties will not satisfy [Rule 7.1(a)]").

### 4. *The Motion Improperly Discloses Mediation Communications in Connection with a Misleading Argument.*

Fourth, the Motion asserts that "in this very litigation, GM accepted fact sheets

---

[4] The Movants' counsel apparently did not send the draft Motion to counsel for Defendants LG Electronics, Inc. and LG Electronics USA, Inc.

12

from Movants that were signed electronically," then attaches excerpts of a "Plaintiff Fact Sheet" that the Heygood firm and GM had mutually prepared and exchanged in connection with a mediation of their state court opt-out cases. *See* ECF No. 167, 10, PageID.10169; ECF No. 167-4, 2-3, PageID.10179-10180.

The Heygood firm's reference in the motion to "this litigation" appears to be an effort (poorly done) to conceal that it was disclosing mediation-related communications after GM's counsel objected to that disclosure. But in making that reference, the motion misleads the Court. In fact, GM did *not* "accept[] fact sheets" in *this* litigation; rather, it acquiesced to their use solely to inform a separate mediation. That is a night-and-day difference from the Heygood firm's proposal here, which would permit class members' use of electronic signatures on legally-binding documents to opt out of a class settlement.

Injecting mediation communications into this case was not only misleading, but also improper conduct in connection with a mediation. For starters, the mediation was governed by California Evidence Code § 1119, which prohibits admission of statements made in a mediation context and states that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." Similarly, the local rules of this court state that "[c]ommunications in ADR proceedings are confidential," "are not admissible in a proceeding, and may not be disclosed to

13

anyone other than the ADR participants unless the court permits disclosure." L.R. 16.3(d). The Heygood firm should have known better. Either way, the Court should reject counsel's attempt to suggest that GM has somehow already conceded that the use of electronic signatures to opt out of a class settlement here is appropriate.

## IV. CONCLUSION

The Court should deny the motion.

Dated: August 30, 2024                    Respectfully submitted,

*/s/ John Nadolenco*
John Nadolenco
Daniel Queen
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213.229.9500
Fax: 213.625.0248
jnadolenco@mayerbrown.com
dqueen@mayerbrown.com

Archis Parasharami
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: 202.263.3328
Fax: 202.263.5328
aparasharami@mayerbrown.com

Andrew S. Rosenman (P54869)
MAYER BROWN LLP
71 S. Wacker Driver
Chicago, IL 60606
Tel: 312.782.0600
Fax: 312.701.7711
arosenman@mayerbrown.com

Attorneys for Defendant
General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ John Nadolenco*

Dated:  August 30, 2024