UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE CHEVROLET BOLT EV BATTERY LITIGATION[1]** | **2:20-CV-13256-TGB-CI**<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER (1) GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF NO. 189), AND**<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS (ECF NO. 180)** |

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 189. Plaintiffs have also filed a Motion for Attorneys' Fees, Expenses, and Service Awards for the Named Plaintiffs. ECF No. 180. The Court held an in-person fairness hearing on May 19, 2025, at which counsel for the parties appeared, to determine whether the settlement agreement should be given final approval and whether the motion for fees, expenses, and service awards should be granted. At that hearing, the Parties informed the Court that several

---

[1]      This case was consolidated from eight putative class actions under Fed. R. Civ. P. 42(a) and E.D. Mich. Local Rule 42.1. *See* ECF No. 18.

thousand Vehicle Identification Numbers ("VINs") had been inadvertently omitted from the class list provided to the Settlement Administrator. After a supplemental notice period for those additional vehicles, the Court held a supplemental fairness hearing via Zoom on September 29, 2025.

Having considered the briefs, exhibits, and oral arguments presented in favor of final approval, the Court is satisfied that: the settlement is fair, adequate, and reasonable; the attorneys' fees and expense reimbursement and service awards are reasonable; and the settlement is in the best interest of the class as a whole. For the reasons that follow, both Plaintiffs' Unopposed Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorney's Fees, Expenses, and Service Awards will be **GRANTED.**

## I. BACKGROUND

### A. Plaintiffs' Class Action Claims

The facts giving rise to this lawsuit are set forth in the Court's September 30, 2022 Order Resolving Defendants' Multiple Pretrial Motions (1) to Strike Class Allegations; (2) to Compel Arbitration; and (3) to Dismiss Multiple Claims. ECF No. 118. Briefly, this case is a putative class action alleging a defect in the battery system of model-year 2017–2022 Chevrolet Bolt electric vehicles brought against Defendants General Motors LLC and LG Chem, LTD, LG Energy Solution, LTD, LG

Energy Solution Michigan Inc., LG Electronics, Inc., and LG Electronics USA, Inc (the "LG Defendants"). Plaintiffs allege that the Class Vehicles at issue in this litigation were manufactured, marketed, sold, and leased nationwide with a battery defect that allegedly can cause the batteries in those vehicles to overheat when the battery is charged to full or near full capacity, posing a risk of fire. That condition is believed to cause a "thermal runaway" event—an uncontrolled feedback loop of increasing temperatures that may cause the battery to burst into flames. Fires have occurred in a small number of affected vehicles.

Plaintiffs first filed this class action suit against Defendant GM in this Court on December 11, 2020. ECF No. 1. Actions filed in other jurisdictions were transferred here, and on June 1, 2021, the Court entered a Stipulation and Order consolidating the eight pending class actions. ECF No. 18. Plaintiffs ultimately filed an Amended Consolidated Class Action Complaint against GM and the LG Defendants, the Korean conglomerate involved in producing components for the Bolt's battery system, asserting 81 causes of action against those defendants, which can be divided into three categories: (1) claims of fraudulent concealment, fraudulent misrepresentation, and violation of state consumer protection statutes; (2) federal and state warranty law claims; and (3) unjust enrichment claims. Plaintiffs seek to represent a putative nationwide class as to some claims and fourteen state subclasses. ECF No. 27.

At the motion to dismiss stage, the Court dismissed Plaintiffs' affirmative misrepresentation and unjust enrichment claims, dismissed in part Plaintiffs' nationwide fraudulent concealment and Magnuson-Moss Warranty Act claims, and stayed, dismissed, or dismissed in part Plaintiffs' state-specific fraudulent concealment, consumer protection, and implied and express warranty claims. ECF No. 118.

### B. The Parties Reach a Proposed Class-Wide Settlement

After more than a year of extensive arms-length negotiations involving multiple parties, counsel, and two experienced mediators, the Parties reached a class-wide settlement and submitted the terms of that settlement to the Court for preliminary approval. ECF Nos. 157, 157-2.

Under the terms of the proposed settlement, Defendants agreed to pay $150,000,000 to a common settlement fund for payment of claims, attorney's fees, and expenses. The allocation of the fund among Class Members is structured to account for two voluntary recall remedies provided by Defendants. One is the Battery Replacement Final Remedy under which owners and lessees of approximately 80,000 Class Vehicles are eligible for a replacement battery and an extended 8-year/100,000 miles limited battery warranty, running from the date of replacement. These Class Members may submit a claim and receive an initial payment of $700. The other recall remedy is the Software Final Remedy under which owners of the remaining 22,560 model year 2020–2022 Chevy Bolts that were manufactured with the newer generation of batteries are

eligible for the installation of advanced software that can diagnose potentially defective batteries. These Class Members may submit a claim and receive an initial payment of $1,400.

In addition, the Settlement Agreement also contemplates the two following payment allocations: attorney's fees and expenses to Class Counsel to be determined by the Court, up to, but not to exceed the total combined sum of $52.5 million (35% of the Settlement Amount); and Service Awards of $2,000 for each of the named Plaintiffs.[2] Then, under the terms of the Settlement Agreement, there will be a second distribution to all Class Members who submit valid and timely claims if any funds remain in the Settlement Fund after the initial claims and fees are paid.

Plaintiffs and the Settlement Class, for their part, agree to release Defendants from liability for all claims alleged in this litigation or which could have been alleged in this litigation. The proposed release of liability does not include claims for personal injury and/or property damage resulting from the alleged Battery Defect.

---

[2] The named Plaintiffs entitled to a Service Award are Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor, Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker.

## C. Preliminary Approval of the Settlement and Notice to the Class Members

On September 26, 2024, the Court entered an order preliminarily approving the agreement and certifying the following class for settlement purposes under Federal Rule of Civil Procedure 23(b)(3):

> Any persons in the United States who purchased or leased, other than for resale, a 2017, 2018, 2019, 2020, 2021, or 2022 Model Year Chevrolet Bolt built and shipped to a dealer on or before August 19, 2021 and who have not received a buyback of their vehicle from General Motors or a General Motors authorized dealer.

ECF No. 174.[3] The Court also approved KCC Class Action Services, LLC ("KCC") (now known as Verita Global, LLC ("Verita")) as the Settlement Administrator responsible for carrying out the duties set forth in the Settlement Agreement, as well as a proposed settlement notice to class members and a plan for mailing that notice to the class members. *Id.*; ECF No. 189-3, PageID.10709.

---

[3]    Excluded from the Settlement Class are: (i) Class Counsel; (ii) Defendants and Defendants' officers, directors, employees, agents and representatives, and their family members; (iii) the judges who have presided over this Action; and (iv) any persons who have otherwise released their claims against Defendants set forth in the Action except that persons who executed a release in connection with the E-Card Program remain part of the Settlement Class and may receive payments under the Settlement as expressly provided by the Settlement Agreement.

Counsel for one group of Settlement Class Members had filed a motion on August 16, 2024 recognizing that "[t]he current opt out procedures require each class member seeking to opt out to provide certain information, physically sign their opt out notice with a 'wet ink' signature and mail the notice to the Settlement Administrator," and seeking permission to allow electronic opt-outs instead. ECF No. 167, PageID.10164. On October 28, 2024, the Court denied that motion, concluding that the motion improperly sought to alter the opt-out procedure set forth in the Parties' Settlement Agreement and enforcing "the requirement of a physical signature." ECF No. 177.

Verita effectuated notice to the Settlement Class in accordance with the Preliminary Approval Order. A Senior Project Manager from Verita attested that on June 28, 2024, Verita mailed 57 Class Action Fairness Act ("CAFA") Notice Packets by Priority Mail to the U.S. Attorney General, the Attorneys General of the various states, as well as the parties of interest to this Action. Dizon Decl., ECF No. 189-3, PageID.10709. The CAFA Notice Packets included the Complaints and Responses to the Complaints in this case, as well as the Motion for Preliminary Approval, supporting declarations, notices, claim forms, and the Settlement Agreement. *Id.*

Then, on November 25, 2024, Verita printed and a sent notice of the settlement to 157,465 class members via first class mail, and also emailed the Settlement Notice to 84,417 class members where an email address

was available. *Id.* PageID.10710–11. The Notice contains a brief description of the claims advanced in the lawsuit, a summary of the terms of the settlement agreement, a description of the plan of allocation, information about the final approval hearing, information about how to file objections to the settlement, and information on how to request to opt out of the settlement. Verita states that 150,792 of the 157,555 mailed Short-Form Notices and Fleet Notices were successfully mailed to Class Members. *Id.* PageID.10711. Additionally, Verita maintains a settlement website, https://boltevbatterysettlement.com, where Class Members can access updated, detailed information about the Settlement, the Long-Form Notice, and other important documents, and submit a claim. *Id.* PageID.10711–12.

Under the schedule set by the Court, the period for filing objections to the proposed settlement ran until January 24, 2025. ECF No. 174, PageID.10302. Three Class Members objected to the settlement. ECF Nos. 178, 179, 182, 185.[4] And the Notice to Class Members stated that any request for exclusion from the Settlement Class must be postmarked no later than February 24, 2025. Verita reported on May 13, 2025 that it had received 2,529 requests for exclusion. ECF No. 198, PageID.10748. Of these, Verita deemed 1,820 requests were valid, representing about

---

[4]     Edith Sachs' objection appears on the Court's docket twice because she sent her letter two times. *See* ECF Nos. 178, 185. Her second letter did not include the same printouts related to recall information, but the letter is the same. *See id.*

1.2% of the Settlement Class. *Id*. Then on May 23, 2025, Verita amended its report to state that it has received 2,533 requests for exclusion in addition to two letters from Marden Law and MFS Legal, which together requested to exclude 397 VINs, and that 1,827 of these requests are deemed valid. ECF No. 201.

### D. The Parties Seek Final Approval of the Class Settlement

On February 24, 2025, Plaintiffs submitted their Unopposed Motion for Final Approval of the Class Settlement. ECF No. 189. The Court conducted the Fairness Hearing on May 19, 2025, at which counsel for Plaintiffs and Defendants appeared and spoke. No objectors appeared.

At that Fairness Hearing, the Parties informed the Court that an estimated 3,800 Vehicle Identification Numbers ("VINs") had been inadvertently omitted from the class list provided to the Settlement Administrator. Following the hearing, the Court entered a Stipulated Order directing notice to those persons associated with the omitted vehicles, set out a schedule for objections and requests to opt out to those supplemental notices, and scheduled a supplemental fairness hearing to follow. ECF No. 199. The Parties subsequently amended that number to 5,308 potential Settlement Class VINs. ECF No. 202.

On May 29, 2025, the Court issued a Stipulation Regarding Procedure for Challenging Determination of Validity of Requests for Exclusion, which set forth the procedure by which persons who did not appear on the May 23, 2025 Amended Exclusion Report may attempt to

show good cause why the Settlement Administrator's determination of invalidity should be overturned. ECF No. 203. In response, Movants filed 39 motions and one letter challenging the Settlement Administrator's decision that they had not validly opted out. On October 17, 2025, the Court entered an order on those motions, granting four motions, granting in part and denying in part two motions, and denying the remaining motions. ECF No. 287. Verita ultimately submitted an Amended Exclusion Report listing the Class Members who submitted timely and proper requests for exclusion. ECF No. 299.

### E. Supplemental Fairness Hearing

On September 29, 2025, the Court held the supplemental fairness hearing via Zoom, at which counsel for the parties appeared. The Parties reported that timely supplemental notice was served to owners and lessees of approximately 5,308 vehicles, no objections were received, and there were five timely requests for exclusion. ECF No. 283. The Parties also stated that they agreed that individuals or entities that had previously invalidly opted-out of the settlement ("Invalid Opt-Outs") and individuals or entities that had timely and properly excluded themselves and now want to revoke that request for exclusion ("Valid Opt-Outs"), would have 90 days after entry of the Final Approval Order to submit a claim pursuant to the Settlement Agreement.

## II.   LEGAL STANDARD

To approve a settlement, a court must: (1) preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims"—including that class-action claims "may be settled, voluntarily dismissed, or compromised only with the court's approval." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (internal citations omitted). Rule 23 provides that if a proposed settlement or compromise:

> would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i)   the costs, risks, and delay of trial and appeal;
> >
> > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii)    the terms of any proposed award of attorney's
>          fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under
>          Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably
>          relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit Court of Appeals also lists factors to guide the Court in its assessment as to whether the proposed class action settlement is fair, reasonable, and adequate. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock*, 843 F.3d at 1093 (quoting *International Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Finally, where the agreement includes the payment of attorney's fees, the court must assess the reasonableness of that amount. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citing cases finding judicial review of the fee award necessary). "[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of [the] plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the

relief counsel procured for the clients.'" *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110–11 (S.D.N.Y. 1997)).

## III.   DISCUSSION

The Court finds, considering the Rule 23(e) and Sixth Circuit factors, that Plaintiffs have established that the proposed Settlement Agreement is fair, adequate, and reasonable.

### A. The Rule 23(e)(2) and Sixth Circuit Factors

#### 1. Adequacy of representation

Plaintiffs have established that the Class Representatives and Class Counsel have adequately represented the class. The Class Representatives hold claims typical of the Settlement Class members and actively participated in the litigation, reviewed Court filings, collected and provided documents and information about their vehicles, and actively engaged in the resolution of this case, working closely with Class Counsel, on behalf of the Settlement Class. ECF No. 189, PageID.10678–79. *See UAW*, 497 F.3d at 626 (class representatives are adequate if they "will vigorously prosecute the interests of the class through qualified counsel" and "are part of the class and possess the same interest and suffer the same injury as class members.").

Class Counsel have extensive experience in handling class action cases and have vigorously prosecuted the interests of the Class for almost five years, partially withstanding multiple motions to strike class allegations, to compel arbitration, and to dismiss multiple claims, and

securing a favorable recovery for the Class. This factor warrants approval of the Settlement.

### 2. Arm's length negotiation and risk of fraud or collusion

Next, the Settlement here was reached at arm's length only after multiple formal mediations and numerous conversations between the Parties and the two mediators. Plaintiffs have litigated the merits of the claims since December 2020, including through vigorously contested motions to dismiss. Courts consistently approve class action settlements achieved through arms-length negotiations, particularly if an independent mediator participated in those negotiations. *See Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 558 (E.D. Mich. 2023) (Ludington, J.) (finding this factor satisfied when the parties negotiated the settlement agreement at arm's length through a neutral mediator and there is no evidence of fraud or collusion); *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (Michelson, J.) (finding that settlement agreement was negotiated at arm's length because procedural history reflected non-collusive negotiations, informal and formal discovery, and multiple mediation sessions). And courts in this District presume the absence of fraud or collusion unless there is evidence to the contrary. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. Nov. 1, 2006) (Hood, J.). This factor weighs in favor of final approval.

### 3. Complexity, expense, and likely duration of litigation

"Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022) (citation omitted); *see also New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (Parker, J.) (stating settlement "provides an immediate, significant, and certain recovery for Class members").

This litigation is complex. This case has been litigated for almost five years and has involved significant investigation and motion practice. The duration and expense have not been insignificant and would only grow if this case proceeded to trial. Absent settlement, the parties would be required to engage in significant fact and expert discovery, complex dispositive motion practice, and ultimately trial preparation. The Court finds that the Settlement Agreement provides a greater benefit to the Class Members than the risk, expense, and duration of continued litigation, and that this weighs in favor of final approval.

### 4. The amount of discovery engaged in by the parties

Generally, the parties must engage in "sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions." *Shy*, 2022 WL 2125574, at * 6. However, the "absence of formal discovery is not an obstacle to approving a settlement, so long as the parties have adequate information to evaluate their

positions." *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, No. 20-11643, 2023 WL 2309762, at *3 (E.D. Mich. Mar. 1, 2023) (citation omitted); *see also Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) (courts consider "not only court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."). Plaintiffs here undertook considerable efforts to investigate the claims prior to filing the initial complaint in this case. They also engaged in sufficient discovery, including written discovery and extended discussions with experts about the alleged Battery Defect, the recall remedies, and Plaintiffs' economic damages, prior the Settlement to permit Plaintiffs and Class Counsel to make an informed judgment regarding the fairness and adequacy of the Settlement. Accordingly, this factor weighs in favor of final approval.

### 5. Likelihood of success on the merits

The likelihood of success on the merits is the "most important of the factors to be considered" by the Court. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). The Court must "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. And courts must also determine "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

Here, while Plaintiffs prevailed on many of the claims subject to Defendants' motions to dismiss and contend that they believe they would ultimately prevail on the merits of the remaining claims, they acknowledge that risks are inherent in litigation, and especially in complex class actions such as this one. They further acknowledge that those risks are compounded by the Court's Order compelling arbitration of some of the Plaintiffs' claims. Considering the risks here of proceeding with litigation, the proposed Settlement ensures a non-reversionary common fund of $150 million, which the Court finds is fair and reasonable relief when weighed against the risks of litigation. The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial.

### 6. Opinions of class counsel and class representatives

"[W]hen experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022 WL 2125574, at *7 (quoting *Williams*, 720 F.2d at 922 (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered")); *see also Borders v. Alternate Sol. Health Network, LLC*, No. 2:20-CV-1273, 2021 WL 4868512, at *3 (S.D.

Ohio May 17, 2021) ("By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate," and "[t]he Court gives great weight to the beliefs of experienced counsel"). Similarly, courts in the Sixth Circuit defer to the recommendations made by class representatives who support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement"), *report and recommendation adopted*, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

Here, Class Counsel and the Class Representatives support approval of the Settlement. The parties are represented by highly experienced counsel with class and complex litigation, and the settlement was reached under the guidance of two experienced mediators. Defendants agree with the ultimate settlement. This factor weighs in favor of approval.

### 7. The reaction of absent class members

"Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001). This is because "[a] certain number of … objections are to be expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (Edmunds, J.). "If only a small number of

objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1018; *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair."). Further, those objecting to the proposed settlement have a heavy burden of proving the unreasonableness of the settlement. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1009.

The original Class Notice resulted in only three Objections, ECF Nos. 178, 179, 182, 185,[5] and there were no Objections to the supplemental Class Notice. ECF No. 283. None of the Objections raise issues sufficient to support denying final approval. *See Thomsen v. Morley Cos.*, No. 1:22-cv-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (Ludington, J.) (noting that "only three objections … 'indicates that the settlement is fair, reasonable and adequate in a class of this size.'") (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007)). Two of those Objectors—Sean Savage and Douglas Gordon Yule, Jr.—contend that there is "[n]o need for additional compensation," ECF No. 179, PageID.10338, or that "the proposed settlement of $700 … seems excessive to me," ECF No. 182, PageID.10589. Neither Yule nor Savage

---

[5]    As noted *supra*, Edith Sachs' objection appears on the Court's docket twice because she sent her letter two times. *See* ECF Nos. 178, 185.

otherwise complain about the Settlement, explain how it is unfair, or state that other Class Members should not receive compensation.

The other Objector, Edith Sachs, states that she "ha[s] already filed on the web site to be a member of the 'class' for this case, and [she] did NOT opt out," but that she nevertheless complains that Class Members, regardless of which recall remedy applies to their vehicle, should receive the "same warranty extension … so that all members of the class are treated equitably." ECF No. 178, PageID.10330–31. Plaintiffs assert that Defendants' recall remedies and the accompanying extended warranty provisions are beyond the scope of the Settlement. Plaintiffs note that Sachs' Objection does not address the terms of the Settlement, and it therefore may be overruled on that ground. *See Thomsen*, 2023 WL 3437802, at *2 (stating that the objectors' "general dissatisfaction with Defendant's handling of the data breach, the use of QR codes, and the internet-privacy issues exceed the scope of the case and thus to not relate to the fairness or adequacy of the Settlement Agreement.").

Plaintiffs further note that the Settlement's plan of allocation takes into account the two different recall remedies. Class Members like Sachs who do not need a new battery will receive a higher minimum payment than Class Members eligible for a battery replacement (and the accompanying new battery warranty). *See* ECF No. 157-5, PageID.9896–97 (explaining that "the Plan of Allocation provides different financial compensation to these two groups of claimants based on the different

20

remedies they will receive from Defendants" and the allocation is "fair, reasonable, and appropriate").

In addition, the original and supplemental Notices in this case resulted in only 1,825 valid requests for exclusion from the Settlement (about 1.2% of all potential Settlement Class Members). ECF No. 299, PageID.15095. This favors approval. *See In e Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D. Ohio 2016) (holding that this factor favors approval if only a small number of class members opt out). Even considering all attempted opt outs—valid and invalid (totaling approximately 3000)—that still represents only about 1.9% of all Settlement Class Members. *See In re Cardizem*, 218 F.R.D. at 527 ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'").

Accordingly, considering the reactions of Class Members, this factor weighs in favor of approval.

### 8. The public interest

There is a "strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation modified); *Whitlock*, 843 F.3d at 1094 (noting the "particularly muscular

21

presumption in favor of settlement in class-action litigation") (citation modified). Further, "the federal policy favor[s] settlement of class actions." *UAW*, 497 F.3d at 632. The Court finds it is in the public interest to pursue this action through settlement to promote the efficient administration of justice.

### B. Class Certification

Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 278 (6th Cir. 2018). Further, a class action must fit under at least one of the categories identified by Rule 23(b). In this case, the Court conducted a preliminary analysis of these issues when it conditionally certified the class under Rule 23(b)(3). ECF No. 174, PageID.10295–96. The Court now finds that the Class, consisting of current and former owners and lessees of more than 100,000 Class Vehicles should be certified for settlement purposes.

First, the Class is so numerous that joinder of all of them is reasonably impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (stating that while "there is no strict numerical test," a class in the thousands is sufficiently numerous). Next, there are common issues of fact and law because the Class's causes of action flow from the same alleged common defect and include common issues such as whether the Battery Defect exists in the Class Vehicles, whether Defendants had knowledge of the Battery

Defect, whether Defendants knowingly failed to disclose the existence and cause of the Battery Defect, and whether Defendants had a legal duty to disclose the Battery Defect in the Class Vehicles. *See Daffin*, 458 F.3d at 552 (commonality element satisfied based on an alleged uniform design defect in vehicles). Third, the typicality element is satisfied because the Settlement Class's claims arise from the same course of conduct and common Battery Defect. *See Dover*, 2023 WL 2309762, at \*4 (finding typicality satisfied where the claims arise from the same course of conduct based on the same legal theories). And finally, as discussed *supra*, the Named Plaintiffs have common interests with other Class Members and have actively engaged in protecting the Class Members' interests, including by assisting Class Counsel during investigation and mediation of the class claims.

In addition, certification is appropriate under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here. The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2008). Common issues here, including whether there is a Battery Defect, whether Defendants were aware of the existence of the

Battery Defect, whether Defendants concealed the existence of the Battery Defect, and whether Class Members sustained damages, predominate and thus resolution of the Settlement Class's claims is suitable for adjudication on a collective basis pursuant to Rule 23(b)(3). *See Daffin*, 458 F.3d 554; *Chapman v. Gen. Motors, LLC*, No. 2:19-CV-12333, 2023 WL 2746780, at *8–9 (E.D. Mich. Mar. 31, 2023). And class action is the superior method of adjudication here as the value of each individual Class Member's claims may be too low to incentivize most Class Members to litigate their claims individually, and the central issues related to battery integrity are common to all Class Members. Thus, resolution on a class-wide basis is the most efficient method of resolving the claims and will "achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes to 1966 Amendment) ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."); *see also Daffin*, 458 F.3d at 554.

And finally, Rule 23 requires that, for any class certified under Rule 23(b)(3), notice to the Settlement Class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

P. 23(c)(2)(B). The Sixth Circuit has held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Deja Vu Servs.*, 925 F.3d at 900 (citations omitted). Additionally, the CAFA requires that each Defendant provide notice of a proposed class action settlement to "appropriate" federal and state officials. *See* 28 U.S.C. § 1715.

As discussed *supra*, the Settlement Administrator mailed 57 CAFA Notice Packets by Priority Mail to the U.S. Attorney General, the Attorneys General of the various states, as well as the parties of interest to this Action. Dizon Decl., ECF No. 189-3, PageID.10709. The CAFA Notice Packets included the Complaints and Responses to the Complaints in this case, as well as the Motion for Preliminary Approval, supporting declarations, notices, claim forms, and the Settlement Agreement. *Id.* The Administrator also printed and a sent notice of the settlement to 157,465 class members via first class mail, and also emailed the Settlement Notice to 84,417 class members where an email address was available. *Id.* PageID.10710–11. The Administrator further sent a supplemental notice to owners and lessees of an additional approximately 5,308 vehicles. ECF No. 283. The Class Notice contains a brief description of the claims advanced in the lawsuit, a summary of the terms of the settlement agreement, a description of the plan of allocation, information about the final approval hearing, and information about how

to file objections to the settlement. 150,792 of the 157,555 mailed Short-Form Notices and Fleet Notices were successfully mailed to Class Members initially, and supplemental class notice was issued to additional Class Member owners and lessees of approximately 5,308 vehicles. ECF No. 189-3, PageID.10711; ECF No. 291, PageID.14289. And Verita maintains a settlement website, https://boltevbatterysettlement.com, where Class Members can access updated, detailed information about the Settlement, the Long-Form Notice, and other important documents, and where they can submit a claim. *Id.* PageID.10711–12. The Court finds that this notice constitutes the best notice practicable under the circumstances and reasonably calculated to provide the Class Members with due process, as required by Rule 23.

Accordingly, for all the reasons discussed above, the Court **APPROVES** the Parties' Settlement finding it to be fair, reasonable, adequate, and in the best interests of the Settlement Class in all respects and as to all parties. The Court will therefore **GRANT** Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. ECF No. 189.

## C. Plaintiffs' Motion for Attorney's Fees, Expenses, and Service Awards

Plaintiffs have filed a motion asking the Court to authorize payments of 33% of the Settlement Fund in attorney's fees and costs, and

award $2,000 Service Awards to each Named Plaintiff, to be paid out of the Settlement Fund. ECF No. 180. Defendant General Motors does not oppose the relief requested. Defendants LG Michigan, LG Energy, and LG Chem (collectively "LG Energy") filed a Response stating that they "will not formally oppose the Fee Petition" but nevertheless request that the Court "consider" certain "facts in determining the appropriate amount of attorneys' fees for Class Counsel." ECF No. 186. LG Energy contends that the Defendants have provided significant non-monetary remedies to the Settlement Class Members independent of this litigation, including a voluntary recall by GM before the case was filed, and the voluntary recall/replacement of batteries before this settlement was reached. LG Energy argues that Class Counsel should not receive credit for the efforts of Defendants independent of this litigation. LG Energy further contends that while the parties engaged in lengthy mediation leading up to the Settlement, Class Counsel conducted only limited, informal discovery in this case. LG Energy also suggests that a lodestar cross-check may be appropriate in this case to determine the reasonableness of the fee request. Plaintiffs filed a Reply in support of their fee request. ECF No. 188.

### 1. Attorney Fees and Expenses

In awarding attorney's fees, the Court must ensure that "counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (internal citations omitted). The

amount of work done and the results achieved may run in tension with one another. *Id.* One method of calculating attorney's fees, the "lodestar" method, takes account of the amount of work done and involves the Court multiplying the number of hours "reasonably expended" on the litigation by a reasonable hourly rate," then making adjustments for case-specific considerations. *Id.* A second method, the percentage-of-the-fund method, focuses more on the results achieved and requires the Court to determine an appropriate percentage of funds to be awarded to counsel. *Id.* The Court has discretion to select the method of calculating fees in a case. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). In common fund cases, whichever method is used, the award of attorneys' fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

The Court concludes that the percentage-of-the-fund method is appropriate for evaluating the reasonableness of the fees requested in this case. "This method of awarding attorneys' fees is preferred in this District because it conserves judicial resources and aligns the interests of class counsel and the class members." *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2020 WL 5653257, at *2 (E.D. Mich. Sept. 23, 2020) (Cox, J.) (collecting cases); *see also Rawlings*, 9 F.3d at 516 ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early

settlement, which avoids protracted litigation."). The Sixth Circuit has articulated six factors to guide the Court's consideration in determining whether a proposed fee is reasonable: "1) the value of the benefits rendered to the [class], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [(the lodestar cross-check)], 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *see also Moulton*, 581 F.3d at 352 (quoting *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

Here, Class Counsel request a combined fee and cost award of 33% of the Settlement Fund. They note that this request is less than the 35% of the Settlement Amount the parties negotiated under the Settlement Agreement. *See* ECF No. 157-2, PageID.9802. Courts in this District have awarded percentage-based fees of 33% or more in common fund cases. *See, e.g., Kain v. Economist Newspaper NA, Inc.*, No. 21-cv-11807, 2023 WL 2541318 (E.D. Mich. Mar. 16, 2023) (Leitman, J.) (awarding 35% of common fund, or $3,325,000, for attorney fees, including litigation expenses); *Dover*, 2023 WL 2309762, at *5 ("The 33.33% fee award [class counsel] have requested in addition to reimbursement of expenses falls within the range of percentage fees that have been previously approved in complex class actions."); *BleachTech LLC v. United Parcel Serv., Inc.*,

No. 14-12719, 2022 WL 2900796, at *2 (E.D. Mich. July 20, 2022) (Hood, J.) (finding class counsel's request for 33 1/3% of the common fund "well within the benchmark range and in line with what is often awarded in this Circuit"); *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) (Hood, J.) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line what is often awarded in this Circuit.").

The Court further finds that the *Ramey* factors favor approval of Plaintiffs' requested fee and costs award. First, the value of the benefit rendered to the Settlement Class supports the fee and cost request. This factor is "widely regard[ed]" as the "most important" of the six *Ramey* factors. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). The *Ramey* court evaluated this factor in terms of the number of individuals affected by the underlying allegations and the total settlement reached. *See Ramey*, 508 F.2d at 1196–98; *In re Cardinal Health*, 528 F. Supp. 2d at 765 (evaluating, in its analysis of the first *Ramey* factor, the total settlement amount and noting its accomplishment due to being one of the largest settlements of its type ever reached in the Sixth Circuit).

The Settlement here provides for a $150 million non-reversionary Settlement Fund awarding the over 100,000 Settlement Class Members, after deducting the notice and administration costs and requested fees, costs, and service awards, a minimum $700 or $1,400 payment

(depending on whether the Settlement Class Member is eligible for the Battery Replacement Final Remedy or Software Final Remedy). The Settlement also offered the early availability of the $1,400 Visa eReward benefit and the Software Final Remedy on an expedited basis even before the Settlement was finalized. Plaintiffs acknowledge that, as LG Energy argues in its Response brief, the Defendants provided significant defect remedies independent of the Settlement, and state that they are not seeking credit for those recall remedies. However, Plaintiffs contend that the fact that the Settlement Class Members are *also* receiving monetary awards from a $150 million non-reversionary common fund in addition to those recall remedies evidences the exceptional value and benefit to the Settlement Class Members. And the Settlement avoids the uncertainty and risk of proceeding to trial and obtaining an adverse jury finding or intervening change in the law.

The Court further notes that Class Counsel undertook the representation here on a contingent basis, funding all of the significant litigation costs while facing a risk of non-payment in pursuing these claims. They have received no compensation in the almost five years this litigation has been pending, attest that they incurred out-of-pocket expenses of $533,154.54 litigating for the benefit of the Class (at the time they filed their attorney's fees motion), and that they will expend substantial additional time going forward working on behalf of the Settlement Class. Joint Decl., ECF No. 181, PageID.10443. *See In re*

*Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503–04 (E.D. Mich. 2008) (Rosen, J.) (granting fee request where class counsel "prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment or at trial.").

The Court must also consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others. *See In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society."); *In re Telectronics*, 137 F. Supp. 2d at 1042–43 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources."). Class Counsel litigated this case for almost five years on behalf of a significant class, addressing technical claims, on a contingent fee basis. Rewarding Class Counsel under such circumstances furthers society's interests.

The complexity of this litigation also supports the reasonableness of fee and costs request. While the LG Defendants contend that the attorney fee request should consider that the parties only engaged in limited formal discovery, Plaintiffs explain that during the course of this action, they have conducted an extensive pre-suit investigation into the Battery Defect and the reports of vehicle fires, communicated with and

vetted dozens of potential plaintiffs, thoroughly investigated the Class's claims, coordinated the consolidation of eight related cases, drafted discovery requests, hired and consulted with liability and damages experts, collected and reviewed discovery from Plaintiffs, and participated in multiple formal mediation sessions with two mediators and numerous follow-up informal discussions, and negotiated and prepared the terms of the Settlement Agreement. Joint Decl., ECF No. 181, PageID.10440–41. In addition, there are multiple domestic and foreign Defendants in this case that filed six motions to dismiss, two motions to compel arbitration, and two motions to strike, all of which were all fully briefed and argued to the Court on July 20, 2022. The Court issued a 110-page Order resolving those substantive motions. ECF No. 118. And, continued litigation would have necessarily likely involved expert reports, discovery, depositions, dispositive motion practice, and pretrial preparation.

The professional skill and standing of counsel also supports the reasonableness of the fee and cost request. Class Counsel's law firms have national standing and extensive experience in litigating complex class actions, ECF Nos. 181-2 and 181-3, and they conducted extensive work resulting in a positive and beneficial result for the Settlement Class. The Defendants were also represented by experienced and successful law firms ranked among the largest in the country and by counsel with significant class action defense experience.

Finally, the value of the services on an hourly basis supports the fee and cost request. Although not required, and as the LG Defendants suggest, the Court may use Class Counsel's lodestar to "cross-check" that the amount with the fees and costs requested as a percentage of the fund. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (stating that a lodestar crosscheck "was *optional*.") (emphasis in original); *see also Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *8 (S.D. Ohio Nov. 5, 2020) ("[A] lodestar cross-check is not required."); *In re Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund method without addressing the "value of the services on an hourly basis"); *Fournier v. PFS Inv., Inc.*, 997 F. Supp. 828, 832–33 (E.D. Mich. 1998) (Gilmore, J.) (same). "For purposes of the lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Flint Water Cases*, 583 F. Supp. 3d 911, 941 (E.D. Mich. 2022) (Levy, J.) (quoting *Ramey*, 508 F.2d at 1196).

Class Counsel in this case attest that they have devoted over 16,200 hours in this litigation as of December 20, 2024 related to the investigation, prosecution, and resolution of this action, with a resulting lodestar attorney fee amount of $11,756.604.60. Joint Decl., ECF No. 181, PageID.10442. Class Counsel also anticipated, based on their past experience in other consumer class action settlements, that they will expend an additional 2,500 hours to complete the settlement approval

and administration process in this case, for a total of 18,744 hours, resulting in an additional $1,809,375 in attorney fees, for a total anticipated lodestar attorney fee amount of $13,566,015.60. *Id.* Plaintiffs also assert that they have incurred expenses in the amount of $533,154.54 through December 2024, which will be "[i]ncluded in [their] Fee and Cost Request of 33% of the Settlement Fund" (for a total of $14,099,170.10). ECF No. 180, PageID.10377. Obviously, this projected lodestar is much smaller than the percentage-of-fund fee request of 33% of the Common Fund, or $50,000,000. But in complex class actions like this one, courts routinely apply lodestar multipliers to determine the final award. As the Sixth Circuit has recognized, "enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings*, 9 F.3d at 516. Plaintiffs explain that, excluding expenses, the percentage-of-fund fee request of 33% of the Common Fund, or $50,000,000 represents a 4.25 multiplier of their $11,756,604.60 lodestar fee request incurred through December 2024, and a 3.60 multiplier of their estimated anticipated final lodestar fee amount, less expenses, of $13,566,015.[6] These multipliers are reasonable and consistent with those awarded in other courts. *See,*

---

[6]   At the September 29, 2025 Supplemental Fairness Hearing, Plaintiffs' counsel stated that the labor necessary to administer the settlement has in fact been significantly more than they estimated, which reduces the multiplier even more.

*e.g., Arp*, 2020 WL 6498956, at *8 (finding 5.29 is "an acceptable multiplier"); *Underwood v. Carpenters Pension Trust Fund–Detroit and Vicinity*, 13-cv-14464, 2017 WL 655622, at *14 (E.D. Mich. Feb. 17, 2017) (Michelson, J.) (stating that "a multiplier of at least three … is well within the normal range"); *In re Cardinal Health Ins. Sec. Litig.*, 528 F. Supp. 2d at 767–68 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (finding lodestar multiplier of 3.06 "very acceptable" and collecting multiple cases from other jurisdictions approving lodestar multipliers ranging from 4.3 to 8.74).

Accordingly, the Court will **GRANT** Plaintiffs' motion with respect to their request for attorneys' fees and costs in the amount of 33% of the Common Fund.

### 2. Service Awards

Plaintiffs have additionally requested "service" fees, or incentive awards, of $2,000 from the Common Fund to each of the Named Plaintiffs in this action: Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor,

Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker. ECF No. 180.

Courts have expressed concerns regarding the propriety of incentive awards, noting the existence of a "danger that the parties and counsel will bargain away the interests of unnamed class members ... to maximize their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). And the propriety of incentive awards is far from settled; the Sixth Circuit has neither approved of them nor expressly disapproved them. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016). Nonetheless, the Sixth Circuit has recognized that "there may be circumstances where incentive awards are appropriate," *Hadix v. Johnson*, 322 F.3d 895, 897–98 (6th Cir. 2003), and this Court has recognized that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Daoust v. Maru Rest. LLC*, No. 17-cv-13879, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019). *See also Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021) (affirming service awards because "those payments correlate to the substantial amount of time that the named plaintiffs actually spent producing documents and otherwise advancing the litigation of the case.").

According to Class Counsel's Joint Declaration, the Named Plaintiffs dedicated their personal time to the prosecution of this action on behalf of the Settlement Class and assisted with reviewing significant pleadings and briefs and communicated with Class Counsel regarding issues in the case, significant developments, and litigation strategy. In addition, they searched for and gathered documents in support of their claims and anticipated defenses by Defendants in preparation for production in discovery and as part of the settlement negotiation process, and they participated in reviewing and providing feedback on the Settlement. Joint Decl., ECF No. 181, PageID.10443–44.

The Court finds that an incentive award is appropriate in this case to recognize the efforts of the Named Plaintiffs expended in this case on behalf of the Class. Moreover, awards of $2000 per Plaintiff are comparable to or lower than awards in other class settlements. *See, e.g., Daoust*, 2019 WL 2866490, at *6 (awarding $5,000); *Arp*, 2020 WL 6498956, at *8 (awarding $10,000); *Persad v. Ford Motor Co.*, 2:17-cv-12599, 2021 WL 6198059, at *2 (E.D. Mich. Dec. 30, 2021) (awarding a total of $30,000 to three plaintiffs). Accordingly, the Court **GRANTS** Plaintiffs' motion and awards $2,000 Service Awards to each Class Representative, to be paid out of the Settlement Fund.

## IV.   CONCLUSION

For the reasons set forth above, the Court unconditionally certifies the settlement class, approves the settlement, allows the reimbursement

of fees and expenses from the common settlement fund, and approves the service awards to the Named Plaintiffs.

Accordingly, it is **ORDERED** that both Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, ECF No. 180, and Plaintiffs' Motion for Final Approval of the Class Settlement, ECF No. 189, are **GRANTED**.

Specifically, the Court **ORDERS**:

1.     All terms herein shall have the same meaning as defined in the Settlement Agreement.

2.     This Order incorporates and makes part hereof the Settlement Agreement.

3.     This Court has jurisdiction over the subject matter of this Litigation and over the Parties to this Litigation including all Settlement Class Members.

4.     The Court confirms its previous preliminary findings in the Preliminary Approval Order.

5.     For purposes of Settlement, the Litigation satisfies the applicable prerequisites for class action treatment under Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Settlement Class as defined below is so numerous that joinder of all members is not practicable, questions of law and fact are common to the Settlement Class, the claims of the Settlement Class Representatives are typical of the claims of the Settlement Class, and the Settlement Class Representatives have fairly

and adequately protected the interests of the Settlement Class. Questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members, and class action treatment is superior over individual actions.

6.     Notice to the Settlement Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, by mailing such Notice by first-class mail. The Settlement Administrator also placed the Notice on the settlement website. Thus, notice has been given in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.

7.     In accordance with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, the Settlement Administrator caused to be mailed a copy of the proposed class action settlement and all other documents required by law to the Attorney General of the United States and the Attorneys General in each of the jurisdictions where Settlement Class Members reside. None of the Attorneys General filed objections to the Settlement. The Court finds that the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the Action, have been satisfied.

8.     The Settlement was a result of arm's-length negotiation by experienced counsel with an understanding of the strengths and

weaknesses of their respective cases. The Settlement is fair, reasonable, and adequate, and serves the best interests of the Settlement Class in light of all the relevant factors including the benefits afforded to the Settlement Class, the complexity, expense, uncertainty, and duration of litigation, and the risks involved in establishing liability, damages, and in maintaining the class action through trial and appeal.

9.     The Parties and Settlement Class Members have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of this Settlement.

10.    It is in the best interests of the Parties and the Settlement Class Members, and consistent with principles of judicial economy, that any dispute between any Settlement Class Member (including any dispute as to whether any person is a Settlement Class Member) and any Released Party which in any way relates to the applicability or scope of the Settlement Agreement or this Final Order and Judgment should be presented exclusively to this Court for resolution.

11.    The Court certifies the following Settlement Class for purposes of Settlement only:

> Any person in the United States who purchased or leased, other than for resale, a 2017, 2018, 2019, 2020, 2021, or 2022 Model Year Chevrolet Bolt built and shipped to dealers on or before August 19, 2021 and who have not received a buyback of their vehicle from General Motors or a General Motors authorized dealer.

Excluded from the Settlement Class are: (i) Class Counsel; (ii) Defendants and Defendants' officers, directors, employees, agents and representatives, and their family members; (iii) the judges who have presided over this Action; (iv) any persons who have otherwise released their claims against Defendants set forth in the Action, except that persons who executed a release in connection with the E-Card Program remain part of the Settlement Class and may receive payments under the Settlement as expressly provided in the Settlement Agreement.

12.   The Settlement Agreement submitted by the Parties is **FINALLY APPROVED** pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Parties are directed to perform all obligations under the Settlement Agreement in accordance with its terms.

13.   The Court approves the Opt-Out List at ECF No. 299 and determines that this is a complete list of all Persons who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment *except* for members of the Settlement Class who opt out but subsequently elect to submit Claim Forms during the Claim Period as discussed in the next paragraph.

14.   The Parties and each person within the definition of the Settlement Class are hereby bound by the terms and conditions of the Settlement Agreement, except for those who have duly and timely

42

excluded themselves. A list of the names of each Settlement Class Member who has filed a timely and proper request for exclusion from the Settlement Class under the procedures set forth in the Settlement Agreement was ultimately submitted to the Court on November 10, 2025, ECF No. 299, consistent with this Court's separate order of October 17, 2025, resolving the motions challenging the administrator's determination that their requests for exclusion from the Settlement were invalid ("Opt-Out Motions"), ECF No. 287, the October 24, 2025 Stipulated Order, ECF No. 288, and the November 10, 2025 Stipulated Order, ECF No. 298. To the extent the Opt-Out Motions were denied, such movants ("Invalid Opt-Outs") may submit a claim pursuant to the Settlement Agreement, which claim will be considered timely if filed in accordance with the Court's previously issued instructions within ninety (90) days after the date of this Order. In addition, individuals or entities who previously timely and properly excluded themselves ("Valid Opt-Outs") may revoke their request for exclusion for the sole purpose of submitting a claim pursuant to the Settlement Agreement, which claim will be considered timely if filed in accordance with the Court's previously issued instructions within ninety (90) days after the date of this Order. All Invalid Opt-Outs (regardless of whether they submit a claim within ninety (90) days after the date of this Order) are members of the Settlement Class and bound by all terms and conditions of the Settlement Agreement, as confirmed by this Court's October 17, 2025 Order

resolving the Opt-Out Motions. Any Valid Opt-Out who submits such a claim within ninety (90) days after the date of this Order shall be a member of the Settlement Class and be bound by all terms and conditions of the Settlement Agreement, nunc pro tunc to the date of this Order. Any Valid Opt-Out who does not submit a claim within this 90-day period shall remain excluded from the Settlement Class. Following this 90-day period, the administrator shall submit to the Court an updated exclusion list that shall be the final exclusion list that includes all remaining excluded individual and entities, if any.

15. The Court hereby appoints the following persons as Settlement Class Representatives: Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor, Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker.

16. The Court hereby appoints The Miller Law Firm, P.C. and Keller Rohrback, L.L.P. as Co-Lead Class Counsel and and McCune Wright Arevalo, LLP, Fine, Kaplan and Black, RPC, Migliaccio & Rathod LLP, Law Offices of Todd M. Friedman, PC, and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Plaintiffs' Steering Committee.

17.    The Litigation is hereby and without costs. This Judgment has been entered without any admission by any Party as to the merits of any allegation in this Litigation and shall not constitute a finding of either fact or law as to the merits of any claim or defense asserted in the Litigation.

18.    The Released Claims of all Settlement Class Members are hereby fully, finally, and forever released, discharged, compromised, settled, relinquished, and dismissed with prejudice against all of the Released Parties.

19.    Members of the Settlement Class and their successors and assigns are hereby permanently barred and enjoined from asserting, commencing, prosecuting, or continuing to prosecute, either directly or indirectly, in any manner, any Released Claim against any one of the Released Parties in any forum, with the exception of any Settlement Class Members who have duly and timely excluded themselves.

20.    The Settlement Agreement, Settlement related documents, and/or the Court's approval thereof, does not constitute, and is not to be used or construed as any admission by Defendant or by any Released Party of any allegations, claims, or alleged wrongdoing.

21.    Without affecting the finality of this judgment, the Court's retained jurisdiction of this Settlement also includes the administration and consummation of the Settlement. In addition, without affecting the finality of this judgment, the Court retains exclusive jurisdiction of, and

the Parties and all Settlement Class Members are hereby deemed to have submitted to the exclusive jurisdiction of this Court for, any suit, action, proceeding, or dispute arising out of or relating to this Final Order and Judgment, the Settlement Agreement, or the Applicability of the Settlement Agreement. Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration, or other proceeding by a Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action, or proceeding arising out of or relating to this Order. Solely for purposes of such suit, action, or proceeding, to the fullest extent possible under applicable law, the Parties hereto and all persons within the definition of the Settlement Class are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

22. The Court finds that the Settlement Class Members were given a full and fair opportunity to object to the Settlement, to exclude themselves from the Settlement Class, and/or to appear at the final fairness hearing pursuant to the requirements set forth in the Settlement Agreement, Preliminary Approval Order, and Class Notice.

23.    The Court finds that no just reason exists for delay in entering this Final Order and Judgment. Accordingly, the Clerk is hereby directed to enter final judgment.

It is further **ORDERED** that Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards is **GRANTED** and payments from the settlement fund are approved as follows: Class counsel shall receive from the common settlement fund **$50,000,000** for attorneys' fees and litigation expense reimbursement.

It is further **ORDERED** that Service Awards in the amount of **$2,000** is approved for and may be distributed to the Named Plaintiffs, Robin Altobelli, F. Dayle Andersen, Bruce James Cannon, Mary Carr and Jan G. Wyers, Yohanes Chitra, Christine Chung, Daniel Corry, John DeRosa, William Dornetto and Russell Ives, Kevin Harris and Pamela Duprez, Michael Hickey, Michael and Denise Holbrook, Fred Kass, James Kotchmar, Robert Kuchar, Joseph Poletti, Edward and Janet Rock, Evi Schulz, Michael Smith, Ashley Strong, Alucard Taylor, Jason Vaaler, Tony Verzura, Shawn Walker, and Thomas and Carol Whittaker.

It is further **ORDERED** that this action will be **DISMISSED WITH PREJUDICE**. The Court will retain limited jurisdiction over the case for the purposes of enforcing the terms of the settlement.

**IT IS SO ORDERED.**

Dated: December 22, 2025   /s/Terrence G. Berg
_____
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE